IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

JULIUS OMAR ROBINSON,

              Petitioner,

v.

                  No.     2:20-CV-640-JPH-DLP

T.J. WATSON,

              Respondent.

**GOVERNMENT'S MOTION TO DISMISS**
**AND RESPONSE TO ROBINSON'S 28 U.S.C. § 2241 PETITION**

Respectfully submitted,

John Childress
Acting United States Attorney
Southern District of Indiana

*s/ Jonathan Bradshaw*
Jonathan Bradshaw
Special Assistant United States Attorney
Colorado Bar No. 43838
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8600
E-mail: jonathan.bradshaw@usdoj.gov

Attorneys for Respondent

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................... iv

GOVERNMENT'S MOTION TO DISMISS AND RESPONSE TO ROBINSON'S 28 U.S.C. §
    2241 PETITION....................................................................................................1

INTRODUCTION ............................................................................................................1

BACKGROUND ..............................................................................................................3

    1.    Robinson, a drug dealer, murders two men and is sentenced to death. ................. 3

    2.    The district court and the Fifth Circuit reject Robinson's numerous—often
        repetitive—attacks on his criminal judgment. ......................................... 6

        A.    The Fifth Circuit affirms Robinson's conviction and sentence on direct
            appeal. ................................................................................... 6

        B.    Robinson files a series of collateral attacks, including many of the same
            issues he presents again here, all of which are rejected. ............................ 7

LAW GOVERNING SECTION 2241 PETITIONS.................................................................. 11

DISCUSSION ............................................................................................................... 15

    1.    Because Robinson litigated—and lost—his defective-indictment claim on direct
        appeal, he cannot relitigate it here (Robinson's Claim I). .................................. 15

    2.    Robinson cannot show that a structural defect prevented him from raising his
        *Napue*, *Brady*, and *Strickland* claims under Section 2255, so he cannot raise them
        for the first time now under the Savings Clause (Robinson's Claim II)............... 20

        A.    *Webster* does not help Robinson here....................................................... 21

        B.    Robinson has otherwise failed to satisfy the Savings Clause. .................. 25

    3.    Because Robinson raised—and the court of conviction rejected—each of his
        remaining ineffective-assistance-of-counsel claims, he is barred from relitigating
        them here (Robinson's Claims III & IV). ............................................................ 26

        A.    Robinson already litigated—and lost—his ineffective-assistance claims. 26

        B.    Robinson's claims are an abuse of the writ. ........................................... 27

**Page**

      C.      Robinson cannot resort to the Savings Clause to relitigate these ineffective-assistance claims...................................................................... 28

    4.      As Robinson concedes, *Garza* forecloses his final claim (Robinson's Claim V). 31

CONCLUSION.....................................................................................................................33

CERTIFICATE OF SERVICE .............................................................................................34

iii

## TABLE OF AUTHORITIES

**Federal Cases**                                                                                                   **Page(s)**

*Alcorta v. Texas*, 355 U.S. 28 (1957)........................................................................................ 23

*Alleyne v. United States*, 570 U.S. 99 (2013)........................................................................... 17, 18

*Atkins v. Virginia*, 536 U.S. 304 (2002).................................................................................... 21

*Batson v. Kentucky*, 476 U.S. 79 (1986) ..................................................................................... 8

*Bourgeois v. Watson*, 977 F.3d 620 (7th Cir. 2020) ............................................................ passim

*Brady v. Maryland*, 373 U.S. 83 (1963) ................................................................................... 10

*Camacho v. English*, 872 F.3d 811 (7th Cir. 2017) .................................................................. 18

*Chazen v. Marske*, 938 F.3d 851 (7th Cir. 2019)....................................................................... 13

*Garza v. Lappin*, 253 F.3d 918 (7th Cir. 2001) ........................................................ 13, 25, 31, 32

*Gonzalez v. Crosby*, 545 U.S. 524 (2005)................................................................................. 10

*Gonzalez v. Thaler*, 565 U.S. 134 (2012) ................................................................................. 19

*Hall v. Watson*, 829 F. App'x 719 (7th Cir. 2020) .............................................................. passim

*Hall v. Watson*, 829 F. App'x 721 (7th Cir. 2020) .................................................................... 16

*Hall v. Watson, No. 2:17-cv-176-JPH-DLP*, 2020 WL 6701278 (S.D. Ind. Nov. 14, 2020)....... 11

*Hall v. Watson*, No. 2:20-cv-599-JPH-DLP, 2020 WL 6785383 (S.D. Ind. Nov. 17, 2020) ............................................................................................... 21, 24, 25, 27

*Higgs v. Watson*, ___ F. App'x ___, 2021 WL 147083 (7th Cir. Jan. 15, 2021) ........................ 14

*In re Davenport*, 147 F.3d 605 (7th Cir. 1998)...................................................................... 11, 12

*In re Robinson*, 917 F.3d 856 (5th Cir. 2019)..................................................................... passim

*Lee v. Watson*, 964 F.3d 663 (7th Cir. 2020)....................................................................... passim

*McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076 (11th Cir. 2017)............. 14

*Medellin v. Texas*, 552 U.S. 491 (2008) ................................................................................... 32

*Mitchell v. United States*, 971 F.3d 1081 (9th Cir. 2020)........................................................... 33

*Napue v. Illinois*, 360 U.S. 264 (1969) ..................................................................................... 10

**Federal Cases, continued**                                                    **Page(s)**

*Poe v. LaRiva*, 834 F.3d 770 (7th Cir. 2016).......................................................... 14, 18, 22, 29

*Prost v. Anderson*, 636 F.3d 578 (10th Cir. 2011)........................................................ 14

*Purkey v. United States*, 964 F.3d 603 (7th Cir. 2020)............................................. passim

*Purkey v. United States*, No. 2:19-cv-414-JPH-DLP, 2019 WL 6170069
    (S.D. Ind. Nov. 19, 2019)................................................................................... 21

*Purkey v. United States*, 964 F.3d 603 (7th Cir. 2020)................................................. 29

*Ring v. Arizona*, 536 U.S. 584 (2002)........................................................................ 6

*Robinson v. United States*, Nos. 4:05-CV-756-Y & 4:00-CR-260-Y-2, 2008 WL 4906272
    (N.D. Tex. 2008).............................................................................................. 1

*Robinson v. United States*, 140 S. Ct. 1128 (2020).................................................. 2, 10

*Robinson v. United States*, 543 U.S. 1005 (2004) ...................................................... 7

*Robinson v. United States*, 565 U.S. 827 (2011) ...................................................... 2, 9

*Roper v. Simmons*, 543 U.S. 551 (2005)................................................................... 22

*Roundtree v. Krueger*, 910 F.3d 312 (7th Cir. 2018)............................................... passim

*Shepherd v. Krueger*, 911 F.3d 861 (7th Cir. 2018) ................................................. 11, 30

*Smith v. United States*, 360 U.S. 1 (1959) ............................................................... 16, 18

*Stirone v. United States*, 361 U.S. 212 (1960)............................................................. 16

*Strickland v. Washington*, 466 U.S. 668 (1984) ......................................................... 10

*United States v. Cotton*, 535 U.S. 625 (2002)............................................................. 19

*United States v. Hayman*, 342 U.S. 205 (1952)........................................................... 11

*United States v. Johnson*, 223 F.3d 665 (7th Cir. 2000)................................................ 23

*United States v. Johnson*, No. 00-8520 (U.S., Aug. 10, 2001), *cert. denied*, 534 U.S. 829 (2001)
    ..................................................................................................................... 24

*United States v. Johnson*, No. 02 C 6998, 2010 WL 11668097 (N.D. Ill. Dec. 13, 2010)........... 23

*United States v. Robinson*, 367 F.3d 278 (5th Cir. 2004) ............................................. passim

**Federal Cases, continued** **Page(s)**

*United States v. Wheeler*, No. 18-420 (Sup. Ct.), 2018 WL 5017116 (denied Mar. 18, 2019).... 14

*Vialva v. Watson*, 975 F.3d 664 (7th Cir. 2020) ...................................................... 15, 30

*Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017)............................................................ 9

*Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015) ................................................. passim

**Federal Statutes and Rules**

28 U.S.C. § 2255(e) ......................................................................................................... 11

28 U.S.C. § 2255(h)(2) ................................................................................................. 2, 19

## INTRODUCTION

Julius Robinson personally committed at least two "senseless murders."   *United States v. Robinson*, 367 F.3d 278, 282 (5th Cir. 2004).   Robinson and his coconspirator followed the first victim—an unwitting stranger—onto a Texas highway, and shot him with automatic rifles. Robinson's second victim was standing in a driveway, and—after Robinson and his coconspirator shot him in the foot—they stood over him and continued to shoot him with automatic rifles at point-blank range, causing bullets to pass through his body, ricochet off the driveway below, and reenter his back.   *See id.* at 282-83.   For these crimes, and others, a jury convicted Robinson and recommended that he be sentenced to death.   Following that binding recommendation, the district court imposed three death sentences and two life sentences as well as an additional sentence of 300 months.   That was in 2002.   *See In re Robinson*, 917 F.3d 856, 859 (5th Cir. 2019).

In the years since, Robinson has unsuccessfully attacked that judgment on direct appeal and in numerous collateral proceedings in district court and the Fifth Circuit.   Indeed, he repeats here several attacks that those courts have considered and rejected.   Since his direct appeal, Robinson has argued that his indictment was defective because the government did not present to the grand jury the factors that made him eligible for a death sentence.   *Robinson*, 367 F.3d at 282.   After the Fifth Circuit rejected that claim, Robinson tried to raise it again in a motion under 28 U.S.C. § 2255.   *See In re Robinson*, 917 F.3d at 860.   His Section 2255 motion also argued that his counsel was ineffective in various ways.   *See Robinson v. United States*, Nos. 4:05-CV-756-Y & 4:00-CR-260-Y-2, 2008 WL 4906272, at *1 (N.D. Tex. 2008).   The district court rejected those claims, Robinson was denied a certificate of appealability, and the Supreme

1

Court denied his petition for a writ of certiorari. *See Robinson v. United States*, 565 U.S. 827 (2011). Robinson then filed an unauthorized, successive collateral attack, raising *again* his defective-indictment claim, which he coupled with additional claims for relief. *See In re Robinson*, 917 F.3d at 859. Because Robinson did not obtain authorization before filing a second collateral attack, his motion was transferred to the Fifth Circuit, which affirmed the denial of relief and rejected Robinson's alternative request to file another Section 2255 motion under 28 U.S.C. § 2255(h)(2). *Id.* Once again, the Supreme Court denied certiorari. *Robinson v. United States*, 140 S. Ct. 1128 (2020).

Even that skeletal description of the procedural history shows that Robinson has litigated—and lost—numerous collateral attacks under Section 2255. After failing to obtain relief under Section 2255, he now petitions this Court for relief under 28 U.S.C. § 2241. He again raises his defective-indictment claim, along with (1) two other claims he already litigated and lost, (2) an additional claim he acknowledges could have been raised under Section 2255, and (3) a final claim that is foreclosed by Circuit precedent.

This Court should dismiss Robinson's first four claims for relief at Section 2241's threshold. Robinson has failed to show a structural defect that rendered Section 2255 inadequate or ineffective to test these claims. He cannot use Section 2241 to relitigate claims he already litigated and lost—indeed, those claims are a paradigmatic abuse of the writ. Nor can he raise claims that could have been—and should have been—adjudicated under Section 2255. Seventh Circuit precedent forecloses Robinson's attempts to evade those limitations by casting his numerous appellate and post-conviction proceedings as a "sham" that denied him—like all other capital offenders in the Fifth Circuit—their rights to due process. Thus, Claims I through

2

IV must be dismissed.   And Claim V should be denied because, as Robinson concedes, it fails under binding precedent.

## BACKGROUND

**1.      Robinson, a drug dealer, murders two men and is sentenced to death.**

"Proving true to his Hollywood namesake, Robinson, also known by names such as 'Scarface,' entangled himself in a sadistic world of narcotics and violence in which he personally committed at least two senseless murders."   *Robinson*, 367 F.3d at 282.   Robinson's victims were named Johnny Lee Shelton and Juan Reyes.

"The murder of Johnny Lee Shelton is a case of mistaken identity."   *Id.*   Shelton looked like a man who Robinson blamed for a robbery months earlier.   *Id.*   Robinson and his coconspirators believed that they had found him, so they followed the victim onto a Dallas highway.   *Id.*   As they caught up to Shelton's car, Robinson yelled "that's him," leaned out the window, and began firing an AK-47.   *Id.*   "Capone," one of Robinson's coconspirators, "did the same."   *Id.*

Shelton was shot in the stomach, and blood began to spread across his shirt.   (Appendix at 9.)   Shelton's passenger pulled the car over and tried to drive it to the hospital, but one tire was "shot out."   (Appendix at 9-13.)   The passenger then flagged down another motorist as Shelton writhed in his car, choking as blood came from his mouth.   (Appendix at 13-14.)   A good Samaritan took them to the hospital, where Shelton died.   (Appendix at 14.)   During this murder, another car was travelling down the highway, and a stray bullet struck the other car in the trunk, blew through the back seat, and hit the speedometer—shattering and hitting another victim in the face.   (Appendix at 23-28.)

3

Robinson later murdered Juan Reyes.  *Robinson*, 367 F.3d at 283.   Reyes was standing in a driveway with Isaac Rodriguez.   Robinson and another man walked up to Reyes "carrying automatic weapons, said something to him" and "then shot him in the foot."  *Id.*   Reyes fell to the ground.   He lay there as Robinson and a coconspirator shot him at least nine times at point blank range.  *Id.* (describing the distance as "less than five feet").   Reyes's wounds contained concrete fragments, suggesting that the bullets passed through his body, ricocheted off the pavement, and reentered his back.  *Id.*   Several children were playing in a yard near the driveway and later identified Robinson as the man who had murdered Reyes.   (Appendix at 53-54.)   In addition to killing Reyes, Robinson and his coconspirator shot Rodriguez three times, and they also shot a third person who was sitting in a car and "riddled" his car with bullets. *Robinson*, 367 F.3d at 283.

Beyond the two victims who Robinson personally murdered, he participated in a narcotics trafficking conspiracy that led to the murder of a third man.  *Id.*   And through this conspiracy, Robinson and his coconspirators possessed kilograms of cocaine and numerous firearms, including a .357 caliber pistol, a SKS 7.62x39 assault rifle, and an UZI.  *Id.*

The United States charged Robinson with the 16 crimes:

- conspiracy to distribute more than 100 kilograms of marijuana (Count One);

- conspiracy to distribute more than 5 kilograms of cocaine (Count Two);

- murder while engaging in a continuing criminal enterprise (Count Three);

- possession of a firearm in furtherance of a drug trafficking crime (Counts Four, Eight, and Seventeen);

- carrying/using a firearm during a drug trafficking crime (Counts Five, Nine, and Thirteen);

4

- carrying/using/discharging a firearm during a drug trafficking crime (Counts Six, Ten, and Fourteen);

- murder in the course of carrying/using a firearm during a drug trafficking crime (Counts Seven, Eleven, and Fifteen); and

- murder while engaged in possession of more than 5 kilograms of cocaine with intent to distribute (Count Twelve).

(*See* Pet. Ex. 3.)   The government filed notice of its intent to seek the death penalty on Counts Three, Seven, Eleven, Twelve, and Fifteen.   (*See* Pet. Ex. 5.)

The jury found Robinson guilty on all 16 charges.   *In re Robinson*, 917 F.3d at 859.   At the penalty phase, the jury heard evidence that, in 1995, "Robinson fired several shots from a handgun at a woman who failed to pay him $120 for crack cocaine."   *Robinson*, 367 F.3d at 283.   The jury also heard evidence that "Robinson, acting from his jail cell after his arrest in this case, arranged to have a government informant murdered."   *Id.*   At the conclusion of the penalty phase, the jury recommended a death sentence on Counts Three, Seven, and Eleven, and life sentences on Counts Twelve and Fifteen.   *In re Robinson*, 917 F.3d at 860.   The district court imposed those sentences as well as an additional 300-month sentence on Count Seventeen.[1]

*Id.*   Robinson appealed.

---

[1] The district court did not impose sentences on Counts One, Two, Four through Six, Eight through Ten, Thirteen, or Fourteen, because each of those convictions were lesser included offenses.   *See In re Robinson*, 917 F.3d at 860 n.2.   Although the indictment was 17 counts, Robinson was not charged in Count 16.   (*See* Pet. Ex. 3.)

**2.     The district court and the Fifth Circuit reject Robinson's numerous—often repetitive—attacks on his criminal judgment.**

   **A.     The Fifth Circuit affirms Robinson's conviction and sentence on direct appeal.**

Robinson raised several claims on direct appeal.   Notable here, he argued that the indictment failed to allege the statutory aggravating factors that made him death eligible. *Robinson*, 367 F.3d at 283-89.[2]   The Fifth Circuit accepted the government's concession that the indictment was infirm in light of *Ring v. Arizona*, 536 U.S. 584 (2002).   *Id.* at 283-84.   But the court also agreed with the government that the error was harmless beyond a reasonable doubt. *Id*. at 285-88.   That is because any rational grand juror would have found probable cause to charge Robinson with at least one of the statutory aggravating factors omitted from his indictment.   *Id.* at 288-89.   The Fifth Circuit explained:

> Robinson killed Shelton by firing an AK–47 assault rifle from the window of a moving vehicle on a public highway, directly endangering Shelton's passenger and anyone else in range.   The record also shows that in the course of killing Reyes, Robinson and his co-assailant managed to shoot Rodriguez three times and to fire enough times at Marques's car fleeing the scene to leave it riddled with bullets.   All this took place in a residential neighborhood in close proximity to at least two adolescent eyewitnesses playing on a nearby porch, and across the street from a barbecue attended by at least ten people.
>
> No rational grand jury would fail to find that this evidence constituted anything less than probable cause to believe that, in the course of committing each murder, Robinson created a grave risk of death to someone other than the victim. As a result, and beyond a reasonable doubt, the failure to charge those factors in an indictment did not contribute to Robinson's conviction or death sentence.

---

[2] Robinson further: (1) argued that the Federal Death Penalty Act (FDPA) violated the Eighth Amendment's ban on cruel and unusual punishment and the Fifth Amendment's Indictment Clause and guarantee of due process; (2) challenged the admission of certain evidence at sentencing; (3) made "two challenges to the aggravating factors used against him"; (4) argued that two of the statutory aggravating factors were "unconstitutionally duplicative"; and (5) claimed that the FDPA did not authorize the use of non-statutory aggravating factors.   *Robinson*, 367 F.3d at 289-92.

*Id.* at 289 (footnote 17 omitted).

The Fifth Circuit also rejected the balance of Robinson's claims summarized in note 2.

*See id.* at 293.   The Supreme Court denied certiorari.   *Robinson v. United States*, 543 U.S. 1005

(2004).

**B.      Robinson files a series of collateral attacks, including many of the same issues he presents again here, all of which are rejected.**

Robinson timely filed a Section 2255 motion.   *See Robinson*, 2008 WL 4906272, at *1.

He raised "a number of issues in various claims for relief."   *Id.* at *8.   The Section 2255 court

described his claims as follows:

A.  The Court should vacate the death sentence based [on Robinson] having received ineffective assistance of counsel ("Ground I").

B.  The Court should vacate Robinson's convictions because they were obtained in violation of Robinson's equal-protection rights ("Ground II").

C.  The Court should vacate Robinson's convictions because the federal death-penalty act, as applied in Texas, violates Robinson's equal-protection rights ("Ground III").

D.  The Court should vacate Robinson's convictions because Robinson received ineffective assistance of appellate counsel ("Ground IV").

E.  The Court should vacate Robinson's convictions because the prosecution pursued fundamentally inconsistent theories at seriatim capital trials ("Ground V").

F.  The Court should vacate Robinson's convictions because the prosecution knowingly used false and misleading testimony to secure Robinson's death sentence ("Ground VI").

*Id.*

Within those six broad categories, Robinson raised numerous issues and sub-issues.

Specifically, Robinson claimed that his trial counsel was ineffective for:

7

(1) Failing to hire a "skilled" investigator;

(2) Failing to adequately rebut the government's case of future dangerousness by

    a.  Failing to investigate and rebut evidence "regarding the attempt on Michael 'One Love' Williams's Life," *id.* at *10;

    b.  Failing to adequately investigate and rebut the government's evidence regarding the alleged attempt to murder Sarah Tucker, *id.* at *11;

    c.  Failing to hire a mitigation expert or failing to sufficiently investigate mitigation factors, *id.* at *12, including "Robinson's mental state as well as his social history, including Robinson's life as a young child and teenager as well as alleged pesticide exposure and in utero exposure to dangerous substances," *id.* at *13.

Robinson further alleged that his counsel was ineffective on appeal for failing to argue that the government violated the rule of *Batson v. Kentucky*, 476 U.S. 79 (1986), "when the government used peremptory challenges to prevent three African-American females, Charline Boulet, Dorothy Jean DeBose, and Marchesia Amarh from sitting on the jury and failed to articulate a credible race-neutral explanation for the challenges." 2008 WL 4906272, at *18. Robinson later sought leave to add an additional claim for relief—that the indictment was defective because the government failed to include in it the aggravating factors that rendered Robinson death eligible. *See In re Robinson*, 917 F.3d at 861 & n.3.

The district court denied leave to amend, however, because Robinson had litigated—and lost—that issue on direct appeal. *See id.* The district court also denied the balance of Robinson's Section 2255 claims, his motions for a new trial, and his request for an evidentiary

8

hearing.  *Robinson*, 2008 WL 4906272, at \*25.   The district court later denied his motion under Federal Rule of Civil Procedure 59(e) for reconsideration, and it declined to issue a certificate of appealability.  *In re Robinson*, 917 F.3d at 861.

Robinson appealed, but the Fifth Circuit denied his request for a certificate of appealability.  *See Robinson v. United States*, No. 09-70020 (5th Cir. June 8, 2010).   The Fifth Circuit also denied Robinson's petition for en banc review, *Robinson v. United States*, No. 09-70020 (5th Cir. Aug. 24, 2010), and the Supreme Court denied certiorari in 2011.  *Robinson*, 565 U.S. at 827.

In 2018, Robinson returned to the district court and moved to set aside the decision denying his Section 2255 motion under Rule 60(b)(6).  *See In re Robinson*, 917 F.3d at 861. He alleged that the "lack of due process in his post-conviction proceedings constituted an extraordinary circumstance that justified re-opening the judgment in his case."  *Id.*   He urged that the district court: (1) "wrongly denied his ability to appeal" by applying "an erroneously high standard for obtaining" a certificate of appealability; (2) erroneously barred him from conducting a reasonable investigation; and (3) erroneously denied his "right to amend his § 2555 motion to include his defective-indictment claim."  *Id.* (cleaned up).   Regarding the latter, Robinson attacked the Fifth Circuit's holding (on direct appeal) that his defective-indictment claim was subject to the constitutional harmless-error standard.  *See Robinson v. United States*, No. 4:05-CV-756-Y, Dkt. No. 10 at 16 (N.D. Tex.).   He also claimed that *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017), "cast[] serious doubt" on the Fifth Circuit's decision to reject his argument that the indictment error was structural.  *Id.* at 16-17.   The district court

9

correctly treated Robinson's motion as an unauthorized Section 2255 motion and transferred it to the Fifth Circuit. *See In re Robinson*, 917 F.3d at 861.

In the Fifth Circuit, Robinson sought to argue that the Fifth Circuit had erred (on direct appeal) by holding that his indictment-error claim was harmless error 'beyond a reasonable doubt.'" *In re Robinson*, 917 F.3d at 866 (quoting *Robinson*, 367 F.3d at 289). But the Fifth Circuit explained that it had rejected that claim nearly 15 years earlier, and it refused to let Robinson relitigate that issue under Rule 60(b)—an impermissible end-run around AEDPA's bar on successive collateral attacks. *Id*. at 867-68 ("AEDPA forecloses such a claim here because it potentially circumvents § 2255's successive-petition requirements."). The Fifth Circuit also rejected the balance of Robinson's arguments—*i.e.*, that the district court had erred in treating his other claims as successive collateral attacks under *Gonzalez v. Crosby*, 545 U.S. 524 (2005)—and it denied his alternative request for authorization to file another motion under Section 2255. 917 F.3d at 863-66, 870. The Supreme Court again denied certiorari. *Robinson*, 140 S. Ct. 1128.

Robinson now petitions for relief under Section 2241. Once again, he raises his defective-indictment claim, (Claim I). (Pet. at 21-31.) He also claims that his counsel was ineffective on direct appeal, (Claim III), and at sentencing, (Claim IV)—claims that are both based on the same arguments and evidence already rejected by the court of conviction. (Pet. at 74-146.) To these already-rejected claims, Robinson adds claims under *Napue v. Illinois*, 360 U.S. 264 (1969), *Strickland v. Washington*, 466 U.S. 668 (1984), and *Brady v. Maryland*, 373 U.S. 83 (1963), (Claim II)—claims that he acknowledges could have been—but were not— raised in his first Section 2255 motion. (Pet. at 36-71.) Finally, Robinson raises the foreclosed

10

claim that this Court should grant him relief because the Inter-American Commission on Human Rights has concluded that the United States violated his rights under the American Declaration, (Claim V).   (Pet. at 153-54.)

## LAW GOVERNING SECTION 2241 PETITIONS

Congress chose to steer almost all challenges to federal criminal judgments to Section 2255.   *Shepherd v. Krueger*, 911 F.3d 861, 862 (7th Cir. 2018).   And in the "great majority" of cases, Section 2255 is the "exclusive" remedy.   *Bourgeois v. Watson*, 977 F.3d 620, 632 (7th Cir. 2020) (internal quotation marks omitted).   "The purpose behind the enactment of section 2255 was to change the venue of postconviction proceedings brought by federal prisoners from the district of incarceration to the district in which the prisoner had been sentenced."   *In re Davenport*, 147 F.3d 605, 609 (7th Cir. 1998) (citing *United States v. Hayman*, 342 U.S. 205, 212-19 (1952)).

A federal prisoner may resort to 28 U.S.C. § 2241, the general habeas statute, only where he shows that Section 2255 is "inadequate or ineffective to test the legality of his detention."   28 U.S.C. § 2255(e); *see also Hall v. Watson*, 829 F. App'x 719, 720 (7th Cir. 2020) (explaining that Section 2255(e) "opens a narrow pathway to § 2241, but to proceed down that path there must be something structurally inadequate or ineffective about § 2255 as a vehicle for the arguments raised in the § 2241 petition") (cleaned up, and citing *Lee v. Watson*, 964 F.3d 663, 666 (7th Cir. 2020)).   Where a prisoner cannot make that showing, the district court should reject the petition at the threshold, without reaching its merits.   *Webster v. Daniels*, 784 F.3d 1123, 1124 (7th Cir. 2015) (en banc) (petition "must be dismissed at the threshold" if § 2255(e) is not satisfied); *see also, e.g.*, *Hall v. Daniels*, No. 2:17-cv-176-JPH-DLP, 2020 WL 6701278,

11

*4 (S.D. Ind. Nov. 14, 2020) (granting the government's motion to dismiss Hall's Section 2241 motion because he could not satisfy Section 2255(e)).

Although the Seventh Circuit has declined to define "rigid categories delineating when the safety valve is available," *Purkey v. United States*, 964 F.3d 603, 614-15 (7th Cir. 2020), the Court has decided three cases "central" to the narrow limits of relief under the savings clause. The first case, *In re Davenport*, involved appeals by two federal prisoners.   In that case, while one prisoner, Davenport, could not use Section 2241 to challenge his sentence under 18 U.S.C. § 924(e) because he could have raised his challenge on direct appeal and in a Section 2255 motion, another prisoner, Nichols, unsuccessfully attacked his conviction in a Section 2255 motion before the Supreme Court narrowed Section 924(c)'s "use" requirement.   *In re Davenport*, 147 F.3d at 609.   For Nichols, Section 2255 was inadequate and ineffective to test the legality of his detention.   *Id.* at 610-12.

Put simply, Nichols was "being held in prison for a nonexistent crime," and he could not have raised his claim on direct appeal or in his first Section 2255 motion because of then-binding precedent later abrogated by the Supreme Court.   *Id.* at 610.   Nor could he raise his "use" claim in a second or successive Section 2255 motion because that claim did not rely on either newly discovered evidence of his innocence or a new rule of constitutional law.   *Id.*   The Seventh Circuit thus held that Nichols's "use" claim could proceed under the savings clause because "he had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence" as "the law changed after his first [Section] 2255 motion" and the change is both retroactive and "eludes the permission in section 2255 for successive motions." *Id.*

12

Following *Davenport*, the Seventh Circuit has clarified that this exception is satisfied only where "(1) the claim relies on a statutory interpretation case, not a constitutional case, and thus could not have been invoked by a successive § 2255 motion; (2) the petitioner could not have invoked the decision in his first § 2255 motion and the decision applies retroactively; and (3) the error is grave enough to be deemed a miscarriage of justice." *Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019) (internal quotation marks omitted).

The second case is *Garza v. Lappin*, 253 F.3d 918 (7th Cir. 2001). There, the defendant relied on a report from the Inter-American Commission on Human Rights, which concluded "that Garza's death sentence was a violation of international human rights norms to which the United States had committed itself." *Id.* at 920. The Seventh Circuit concluded that—because Garza could not have filed his petition with the Commission until he had first exhausted his national remedies—his situation was analogous to *Davenport* in that "it was literally impossible for him to have raised [his claim] at any time earlier than [] the date of the Commission's decision," and "[t]he argument therefore could not have been raised in his direct appeals or in his first § 2255 motion." *Id.* at 922-23. Notably, although Garza could raise his claim under the savings clause, the Seventh Circuit declined to stay Garza's execution so that he could pursue that ultimately meritless claim in federal district court. Because reports from the Commission do not create "privately enforceable rights," Garza "had not presented any substantial ground on which relief could be granted in his habeas corpus petition." *Id.* at 925.

Third, in *Webster*, the defendant obtained new evidence in support of his intellectual-disability claim—evidence that existed at the time of his trial but had been purportedly unavailable to him. 784 F.3d at 1132-34. Because Webster could not satisfy

13

Section 2255(h)'s gatekeeping requirements for a successive motion—he did not rely on new evidence of innocence or a new rule of constitutional law—he filed a Section 2241 petition claiming that he was categorically ineligible for the death penalty based on that new evidence. *Id.* at 1134-35.   In that "rare case," the Seventh Circuit (en banc) held that there was a "structural problem" or "lacuna" in Section 2255, and therefore Webster could invoke the savings clause.   *Id.* at 1135-44.[3]   *Webster* "took great care to assure that its holding was narrow in scope."   *Poe v. LaRiva*, 834 F.3d 770, 774 (7th Cir. 2016); *see also Webster*, 784 F.3d at 1140 n.9 (noting that the holding would have a "limited effect on future habeas corpus proceedings"). Indeed, "there is nothing in *Webster* to suggest that its holding applies outside the context of new evidence."   *Poe*, 834 at 774.

Beyond the limited circumstances presented in those three central cases, a prisoner can resort to the savings clause only if he shows "some kind of *structural* problem with section 2255."   *Higgs v. Watson*, ___ F. App'x ___, 2021 WL 147083, *2 (7th Cir. Jan. 15, 2021) (citing *Webster*, 784 F.3d at 1186) (internal quotation marks omitted, emphasis in original). "[A] § 2241 petition may not proceed under the Savings Clause absent 'a compelling showing' that it was 'impossible' to use § 2255 to cure the defect identified in the § 2241 petition."   *Lee*,

---

[3] The government believes that the Seventh Circuit's cases applying the Savings Clause—including *Davenport*, *Garza*, and *Webster*—are incorrectly decided.   The government agrees with the Tenth Circuit's decision in *Prost v. Anderson*, 636 F.3d 578 (10th Cir. 2011) (Gorsuch, J.), the Eleventh Circuit's en banc decision in *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076 (11th Cir. 2017) (en banc), and the dissent in *Webster*, 784 F.3d at 1146-54 (Easterbrook, J., dissenting), which concluded that the Savings Clause does not permit a defendant to challenge his conviction or sentence in a Section 2241 habeas petition.   *See* Pet. for Cert., *United States v. Wheeler*, No. 18-420 (Sup. Ct.), 2018 WL 5017116 (denied Mar. 18, 2019).   The government recognizes that binding Seventh Circuit precedent forecloses this argument but notes the government's position to preserve the issue for further appellate review if warranted.

14

964 F.3d at 666.   "It is not enough that proper use of the statute results in a denial of relief."

*Purkey*, 964 F.3d at 615; *see also Vialva v. Watson*, 975 F.3d 664, 665 (7th Cir. 2020) ("Vialva's

contentions were entertained and resolved under § 2255," and "[t]he fact that Vialva lost does

not entitle him to another collateral attack under § 2241"); *Hall*, 829 F. App'x at 720 ("[Hall]

challenged his § 924(c) conviction in light of *Davis* and lost.   There's nothing structurally

inadequate or ineffective about § 2255 as a vehicle for this claim.").

## DISCUSSION

Robinson's Section 2241 petition is meritless.   His first four claims should be dismissed

at the threshold because Robinson cannot pass them through the Savings Clause.   Robinson has

identified no structural defect that made Section 2255 inadequate or ineffective to test the

legality of his detention.   Indeed, his Section 2241 motion simply repeats three claims—Claims

I, III, and IV—that he has already litigated and lost.   He cannot use Section 2241 as a surrogate

appeal, and those claims are a textbook example of an abusive writ.   Claim II—his *Brady*,

*Napue*, and *Strickland* claims—cannot proceed under Section 2241 because he could and should

have raised it in his Section 2255 motion.   Although Robinson argues that all four claims can

proceed under Section 2241 because Section 2255 proceedings in the Fifth Circuit are simply a

"sham," his argument is foreclosed by Seventh Circuit precedent.   So, too, is Robinson's Claim

V.   For these reasons, Robinson cannot overturn his convictions or capital sentences under

Section 2241.

1.    **Because Robinson litigated—and lost—his defective-indictment claim on direct appeal, he cannot relitigate it here (Robinson's Claim I).**

The Fifth Circuit, on direct appeal, rejected Robinson's claim that the defective

indictment entitles him to relief.   *Robinson*, 367 F.3d at 286-89.   That claim was rejected again

15

as meritless in Robinson's Section 2255 motion, and it was rejected years later in his successive

Section 2255 motion, which he disguised as a Rule 60(b) motion.   *See In re* Robinson, 917 F.3d

at 867-68 & n.3.   Having litigated and lost that claim no fewer than three times, Robinson tries

again here.   This Court should dismiss this claim because it constitutes an abuse of the writ and

fails to satisfy the Savings Clause.

Absent an intervening change in the law, a prisoner cannot resort to Section 2241 to

relitigate an argument that he lost on direct appeal.   *Roundtree v. Krueger*, 910 F.3d 312, 313-14

(7th Cir. 2018).   Even before Congress passed the AEDPA, which imposed statutory limitations

on successive post-conviction attacks, "[a]n attempt to relitigate a theory, in the absence of an

intervening change of law, was taken as a paradigm abuse of the writ."   *Id.* at 314.   The same is

true for claims already litigated—and rejected—under Section 2255.   *See id.* at 313; *see also,*

*e.g.*, *Hall v. Watson*, 829 F. App'x 721, 722 (7th Cir. 2020) (affirming this Court's rejection of a

"meritless" argument where Hall attempted to relitigate a claim that he "long ago raised and lost

. . . in his first round of § 2255 litigation in the Northern District of Texas").

Robinson concedes that he raised his Fifth Amendment claim on direct appeal.   (*See* Pet.

at 35 ("Robinson had already raised the claim on direct review no avail.").)   But now—relying

heavily on cases decided before his direct appeal[4]—he wants this Court to conclude that the Fifth

Circuit erred in denying him relief.   (Pet. at 34 ("The Fifth Circuit's view of 'functional

equivalents' as inferior to 'formal elements' necessarily, and improperly, colored its view of

Robinson's indictment claim.").)   This Court should reject Robinson's effort—his *fourth*—to

---

[4] For example, Robinson cites to *Stirone v. United States*, 361 U.S. 212 (1960), and *Smith v. United States*, 360 U.S. 1 (1959), (Pet. at 21,) which had been on the books for decades before Robinson committed his first murder.

16

relitigate that claim here.   It is an abuse of the writ.   *Roundtree*, 910 F.3d at 314 ("An attempt to relitigate a theory, in the absence of an intervening change of law, was taken as a paradigm abuse of the writ.").   And this Court should dismiss it for that reason alone.

Moreover, Robinson has identified no "structural defect" in Section 2255 that would allow him to raise this claim again under Section 2241.   *Hall*, 829 F. App'x at 720.   The district court denied the claim under Section 2255 because the Fifth Circuit had rejected it on direct appeal.   Robinson had an opportunity to test the legality of his detention.   *Roundtree*, 910 F.3d at 313.   Robinson's "problem lies not in § 2255" but in the fact that he has already litigated and lost this claim, "plus the [Fifth] Circuit's conclusion" on direct appeal that the defective-indictment error was not structural.   *Id.*   Under clear Seventh Circuit precedent, Robinson cannot use Section 2241 to relitigate this claim.

There is also no merit to Robinson's attempt to work around that binding case law by relying on *Alleyne v. United States*, 570 U.S. 99 (2013).   Robinson argues that *Alleyne* "dispensed with" the distinction between "functional equivalents" of an element and "formal elements" and, because the Fifth Circuit "relied on the so-called distinction," this Court should find that his *Alleyne* claim satisfies Section 2241, disagree with the Fifth Circuit's holding that the error was harmless, and overturn three death sentences and two life sentences.   (Pet. at 32-35.)   *Alleyne* did no such thing, and Robinson's argument fails for numerous reasons.

First, *Alleyne* casts no doubt on the Fifth Circuit's holding that the indictment error was harmless beyond a reasonable doubt.   Since *Ring*,[5] there has been no dispute that there was

---

[5] *Ring*, which changed the law, was decided after Robinson was tried, convicted, and sentenced, but before his direct appeal was decided.   *See Robinson*, 367 F.3d at 284.

17

indictment error.   Aggravating factors that render a defendant eligible for the death penalty—whether cast as "formal elements" or the "functional equivalents" thereof—must be submitted to the grand jury in capital cases.   *See Robinson*, 367 F.3d at 284.   Although Robinson focuses on language from *Alleyne* about the Sixth Amendment violation that results when facts that increase the statutory-mandatory minimum are not put before a jury, *Alleyne* says nothing about the type of indictment error that occurred here, much less the Fifth Circuit's determination that this error was harmless beyond a reasonable doubt.   *Alleyne*, 570 U.S. at 116.   Nor does *Alleyne*—which dealt with neither capital sentencing nor errors in indictments in capital cases—undermine the Fifth Circuit's conclusion that such indictment error in capital cases is not structural error.

If there were any doubt, however, Robinson's prior submissions in other courts belie the notion that *Alleyne* makes all the difference.   Indeed, when Robinson attempted to relitigate his claim of indictment error in 2018, he did not mention *Alleyne*.   *Robinson*, No. 4:05-CV-756-Y, Dkt. No. 10 at 25-28.   Instead, he tried to argue that *Weaver*, which was decided years after *Alleyne*, constituted an "intervening change in the law" entitling him to relief on his defective-indictment claim.   *Id.* at 18.   *Alleyne* is not an intervening change of law that would open the door to the Savings Clause.

Second, Robinson cannot rely on *Alleyne* here because it does not apply retroactively to convictions—like his—that are final.   *See Poe*, 834 F.3d at 773.

Third, Robinson cannot rely on *Alleyne* because it is a decision interpreting the Constitution, not a statute.   *Camacho v. English*, 872 F.3d 811, 815 (7th Cir. 2017); *Poe*, 834 F.3d at 773 (making clear that a claim relying on *Alleyne* cannot satisfy the savings clause because "*Alleyne* is a constitutional case, not a statutory-interpretation case").   Section 2255

18

provides an avenue for raising constitutional claims even in successive motions, *see* 28 U.S.C. § 2255(h)(2), and the Seventh Circuit has made clear that Section 2241 cannot be used "to end-run around Section 2255(h)." *Bourgeois*, 977 F.3d at 637. Thus Section 2255 contains no structural defect that would allow Robinson to proceed with an *Alleyne* claim.

At bottom, Robinson asks this Court to reverse the Fifth Circuit's decision that the indictment error was harmless beyond a reasonable doubt. The Supreme Court on certiorari review—not this Court under Section 2241—was the "right forum for his argument that the [Fifth] Circuit erred." *Roundtree*, 910 F.3d at 314. Seventh Circuit precedent is clear that Section 2241 is not the right avenue for such relief. *Id.*; *Hall*, 829 F. App'x at 720 (because the Fifth Circuit considered Hall's "claim on the merits and rejected it," there was "nothing *structurally* inadequate or ineffective about § 2255 as a vehicle for this claim") (emphasis in original).

Finally, Robinson relies on *Gonzalez v. Thaler*, 565 U.S. 134 (2012), to argue that (1) his claim is "jurisdictional in nature," so (2) he can raise it again any time, in any court, regardless of either AEPDA's restrictions on successive collateral attacks or the fact that he has litigated and lost it repeatedly. (Pet. at 36.) Not so. *Gonzalez* makes clear that "truly jurisdictional rules" govern a court's authority to adjudicate disputes. *Id.* at 141. The indictment error in Robinson's case did not strip federal courts of jurisdiction over his crimes, so his claim is not "jurisdictional" within the meaning of *Gonzalez*. *See Robinson*, 367 F.3d at 286 ("[T]he absence of an indictment on the aggravating factors used to justify a death sentence is not structural error and is susceptible to harmless error review."); *see also United States v. Cotton*, 535 U.S. 625, 631 (2002) ("[D]efects in an indictment do not deprive a court of its power to

19

adjudicate a case.").   In any event, *Gonzalez* does not hold that a federal prisoner may cast an argument as jurisdictional and thus raise it repeatedly in every court with jurisdiction over his case.   To the contrary, as Seventh Circuit precedent makes clear, Robinson cannot relitigate this claim now.   *Roundtree*, 910 F.3d at 314.

This Court should dismiss Robinson's first claim for relief.

**2.      Robinson cannot show that a structural defect prevented him from raising his *Napue*, *Brady*, and *Strickland* claims under Section 2255, so he cannot raise them for the first time now under the Savings Clause (Robinson's Claim II).**

This Court should dismiss Robinson's second claim for relief because he has failed to show that he may raise it under the Savings Clause.   "To repeat: The Savings Clause is unavailable absent a structural defect in § 2255."   *Hall*, 829 F. App'x at 719 (citing *Lee*, 964 F.3d at 666).   Robinson has failed to identify any structural defect in Section 2255 that would open the gate to the Savings Clause.   Moreover, he misplaces his heavy reliance on *Webster* because he could have presented each of his grounds for relief under Section 2255.   The Court should thus reject Robinson's second claim at the threshold.   *Webster*, 784 F.3d at 1124 (explaining that petitions that fail to satisfy the savings clause "must be dismissed at the threshold").

Robinson's second claim is based on the argument that Peter Carlson, a former Assistant Director of the Bureau of Prisons (BOP), gave factually correct—but misleading—testimony. (*See* Pet. at 54.)   Specifically, at the penalty phase, Carlson testified about the various federal-prison classifications, his opinion on how the BOP might classify Robinson if he were sentenced to life, and the typical operations within high-security prisons.   (Pet., Ex. 7 at 95-107.) Robinson now alleges that Carlson's testimony gave the "false impression" that the BOP would

20

be unable to prevent Robinson from committing future crimes.    (*See* Pet. at 54.)    And on that

premise, Robinson argues that the prosecutor violated *Napue* and *Brady*, and that, under

*Strickland*, his trial counsel was ineffective for failing to cross-examine Carlson effectively or

call an expert witness to rebut Carlson's "false" testimony.

Before this Court can reach the merits of these claims, however, Robinson must make "'a

compelling showing' that it was 'impossible' to use § 2255 to cure the defect identified in the

§ 2241 petition."    *Lee*, 964 F.3d at 666 (quoting *Purkey*, 964 F.3d at 615).    Because Robinson

could have raised—but did not raise—each or all of these claims under Section 2255, he cannot

satisfy the Savings Clause.

### A.    *Webster* does not help Robinson here.

There is no merit to Robinson's attempt to rely on the path that the Seventh Circuit

described in *Webster*.    (*See* Pet. at 71-72.)    There, "the Seventh Circuit held for the first and

only time that the Savings Clause was met for a constitutional claim."    *Purkey v. United States*,

No. 2:19-cv-414-JPH-DLP, 2019 WL 6170069, *6 (S.D. Ind. Nov. 19, 2019) (Hanlon, J.); *Hall

v. Watson*, No. 2:20-cv-599-JPH-DLP, 2020 WL 6785383, at *4 (S.D. Ind. Nov. 17, 2020)

(same).    Webster sought to challenge the implementation of his death sentence—not his

underlying conviction—as barred by *Atkins v. Virginia*, 536 U.S. 304 (2002).    Although he had

raised a claim under *Atkins* in his original Section 2255 motion, he turned to Section 2241 to

present "newly discovered evidence" in support of that claim.    *Webster*, 784 F.3d at 1125.

The *Webster* court identified two structural flaws in Section 2255 that precluded Webster

from raising his claims there: (1) Section 2255(h)(1) only provides for subsequent collateral

attacks where new evidence shows that the prisoner is actually innocent of the conviction, not

21

constitutionally ineligible to receive a sentence, and (2) the cases on which the petitioner relied, *Atkins* and *Roper v. Simmons*, 543 U.S. 551 (2005), were not decided until after Section 2255 was enacted.   *Webster*, 784 F.3d at 1134-35, 38.   But the Seventh Circuit "took great care to assure that [*Webster*'s] holding was narrow in scope."   *Poe*, 834 F.3d at 774.   That court specifically limited its holding to the narrow factual and legal circumstances presented in that unique case, and it acknowledged explicitly its "limited effect on future habeas corpus proceedings."   *Webster*, 784 F.3d at 1140 n.9.

Indeed, "there is nothing in *Webster* to suggest that its holding applies outside the context of new evidence."   *Poe*, 834 F.3d at 774.   To be considered "new" within the meaning of *Webster*, evidence must satisfy three conditions:

> First, the evidence sought to be presented must have existed at the time of the original proceedings. . . .   Second, the evidence must have been unavailable at the time of the trial despite diligent efforts to obtain it.   Third, and most importantly, the evidence must show that the petitioner is constitutionally ineligible for the penalty he received.   Because the Supreme Court has declared only two types of persons (minors and the intellectually disabled) categorically ineligible for a particulate type of punishment, our ruling is as a matter of law limited to that set of people—those who assert that they fall into one of those categories at the time of the offense.

*Webster*, 784 F.3d at 1140 n.9.   The *Webster* court explained that "[t]hese three limitations are more than adequate to prevent the dissent's feared flood of section 2241 petitions."   *Id.*

Robinson cannot rely on *Webster* because none of his "evidence" is new.   To support his claim that Carlson's trial testimony was "misleading" to the point of leaving a false impression, Robinson argues that Carlson should have also told the jury about special housing, management, and confinement units; SAMs restrictions; "[t]he Court's ability to order special restrictive conditions pursuant to 18 U.S.C. [§] 3582"; and "[t]he BOP's ability to create an individualized

22

confinement plan to suit Robinson's individualized needs." (Pet. at 52.) But such information certainly existed at the time of Robinson's trial, and thus reasonably diligent counsel could have been aware of specialized prison units, BOP policies, and sections of the United States Code. *Webster*, 784 F.3d at 1140 n.9. Indeed, Robinson admits that "[i]nformation rebutting Carlson's testimony, admissible either via cross-examination of Carlson or through a sur-rebuttal expert, *was readily available* to [Robinson's trial] counsel." (Pet. at 63 (emphasis added).) Robinson further concedes that his "counsel could have retained an expert with the same knowledge of BOP procedures and policies to rebut and correct Carlson's false testimony." *Id.* These concessions conclusively defeat his reliance on *Webster* because they prove nothing "formally prevented" him from seeking relief on direct appeal or under Section 2255. *Purkey*, 964 F.3d at 615.

Robinson also argues that he was "unaware of the nature" of his claims until a district court in an unrelated case granted Section 2255 relief on a claim that Robinson casts as "strikingly similar." (Pet. at 43, 71 (citing *United States v. Johnson*, No. 02 C 6998, 2010 WL 11668097 (N.D. Ill. Dec. 13, 2010).) Setting aside that Robinson relies on no *new evidence* from Johnson's case to argue that Carlson's testimony was false in his case, Robinson's argument fails because "the nature" of Johnson's "strikingly-similar" claim was briefed and decided on direct appeal, in an opinion published years before Robinson was ever sentenced. *See United States v. Johnson*, 223 F.3d 665, 671-76 (7th Cir. 2000). Moreover, the Supreme Court cases on which Robinson (and Johnson) relied were all decided decades earlier. (*See, e.g.*, Pet. at 51, 55 (citing *Alcorta v. Texas*, 355 U.S. 28 (1957).) Robinson cannot proceed via Section 2241 simply by claiming that he was "unaware" of *Napue*, *Brady*, or *Strickland* until a

23

different district court decided a different Section 2255 motion.   The same is true with respect to the government's concession in opposition to the grant of certiorari in Johnson's case, on which Robinson now relies.   (Pet. at 46.)   That concession—which has no application here[6]—was publicly filed on August 10, 2001.   *See* Opposition to Certiorari, *United States v. Johnson*, No. 00-8520 (U.S., Aug. 10, 2001), *cert. denied*, 534 U.S. 829 (2001).   In short, there is nothing "new" about the *Brady*, *Napue*, and *Strickland* claims that Robinson seeks to raise for the first under the Savings Clause.   *See, e.g.*, *Hall*, 2020 WL 6785383, at *6 (rejecting Section 2241 petitioner's reliance on *Webster* because "Mr. Hall's situation is not comparable to Mr. Webster's, where defense counsel sought the relevant Social Security records but was told they did not exist when in fact they did").

Robinson's reliance on *Webster* also falters at the "most important[]" step in the analysis. *Webster*, 784 F.3d at 1140 n.9.   While Webster's new evidence ultimately proved that he was *constitutionally ineligible* for the death penalty, *see id.* at 1125, Robinson's claims under *Brady*, *Napue*, and/or *Strickland*—even if successful on their merits—would not preclude him from receiving a death sentence.   At most, Robinson would get a new proceeding, after which he could again be sentenced to death.   *See, e.g.*, *Hall*, 2020 WL 6785383, at *8 (rejecting Hall's reliance on *Webster* because "Mr. Hall cannot satisfy the third *Webster* factor because he is not categorically ineligible for the death penalty").)   For these reasons, Robinson cannot proceed under to the Savings Clause under the path set out in *Webster*.

---

[6] To be sure, the government does not concede here that Carlson's testimony was false or misleading.   It was not.   But this Court need not—and indeed should not—evaluate the merits of Robinson's allegations because he cannot raise them under Section 2241 for all of the reasons explained herein.

24

**B.      Robinson has otherwise failed to satisfy the Savings Clause.**

Binding precedent from the Seventh Circuit forecloses Robinson's additional attempts to satisfy the Savings Clause.   Robinson argues that Section 2255's one-year statute of limitations hindered his ability to "conduct an adequate investigation and present all viable claims for relief."   (Pet. at 72.)   Although *Webster* and other cases do not "rigidly define[]" the bounds of the Savings Clause, the law is settled that the prisoner must make "a compelling showing that, as a practical matter, it would [have been] impossible to use section 2255 to cure a fundamental problem."   *Purkey*, 964 F.3d at 611, 615.   Robinson, who was represented by counsel on direct appeal and for the entirety of his Section 2255 proceedings, claims that the Federal Public Defender was not appointed until four months before his Section 2255 motion was due.   (Pet. at 72.)   "These limitations, while real, did not make it *practically impossible* for [Robinson] to litigate his [*Napue*, *Brady*, and *Strickland*] claims.   Instead, they forced counsel to make difficult strategic decisions about how to litigate . . . with limited resources, including choosing which claims to bring and which claims to forgo."   *Hall*, 2020 WL 6785383, at *8.   Allowing Robinson to present these claims for the first time now would nullify Congress's choice to steer post-conviction attacks to Section 2255 and to limit repetitive, successive collateral attacks.   *See Garza*, 253 F.3d at 922.   The Savings Clause cannot be interpreted so expansively that it undermines "the careful structure Congress has created."   *Id*. at 921.

Finally, this Court should reject Robinson's alternative argument—that he can satisfy the Savings Clause by claiming here that his Section 2255 counsel was ineffective for failing to argue that his trial or appellate lawyers were ineffective—because that argument is foreclosed. (*See* Pet. at 73 (acknowledging that the argument is foreclosed but "preserv[ing] this argument

25

for later review")); *see Purkey*, 964 F.3d at 614-15 ("[A]s the law now stands, once a Sixth Amendment claim of ineffective assistance of counsel has been raised, as happened in Purkey's case, that is the end of the line.").

**3.      Because Robinson raised—and the court of conviction rejected—each of his remaining ineffective-assistance-of-counsel claims, he is barred from relitigating them here (Robinson's Claims III & IV).**

The Court should dismiss the balance of Robinson's ineffective-assistance-of-counsel claims for two, independent reasons.   First, by attempting to relitigate claims that he has previously litigated and lost, Robinson is abusing the writ.   Second, Robinson cannot use the Savings Clause to relitigate claims that the court of conviction rejected.   There is no merit to Robinson's argument that the Northern District of Texas and the Fifth Circuit deprive all federal capital defendants of due process and their rights under the Constitution.   This Court should reject Robinson's invitation to grant him relief on claims already rejected by those courts because doing so would contravene AEDPA and Seventh Circuit precedent.   Under settled law, this Court should dismiss his third and fourth claims for relief.

**A.      Robinson already litigated—and lost—his ineffective-assistance claims.**

Although Robinson does not say so explicitly, he raised each of his remaining ineffective-assistance claims in his Section 2255 motion.   The court of conviction already rejected Robinson's post-conviction argument that his counsel was ineffective on direct appeal for failing to press a *Batson* claim.   *Compare Robinson*, 2008 WL 4906272, at *18 ("Robinson alleges that he was denied his constitutional rights by his counsel's failure to raise a *Batson* challenge on direct appeal," arguing that the government impermissibly "prevent[ed] three African-American females, Charline Boulet, Dorothy Jean DeBose, and Marchesia Amarh from

26

sitting on the jury"), *with* (Pet. at 77-88 (claiming again that his counsel was ineffective on appeal for failing to press a *Batson* claim about the same three jurors).)   The same is true for Robinson's claim that his counsel was deficient at the penalty phase.   *Compare Robinson*, 2008 WL 4906272, at \*9 ("Robinson alleges several deficiencies on his trial counsel's part, including (1) failure to hire a skilled investigator, (2) failure to adequately investigate and rebut the government's evidence of the penalty-phase aggravating factor of future dangerousness; [and] (3) failure to adequately investigate and present evidence of mitigation at the penalty phase"), *and id.* at \*9-18 (rejecting Robinson's claims that his lawyers were deficient at the penalty phase), *with* (Pet. at 94-145 (presenting the same arguments, and relying on the same evidence, rejected by the court of conviction).)

Robinson has litigated and lost all of these claims.   Indeed, Robinson makes no argument here that he has new evidence to offer in support of these claims or that the governing law has changed in his favor.   (*See, e.g.*, Pet. at 89-90 (acknowledging that he "raise[d] the *Batson* issues as ineffective-assistance-of-appellate-counsel claims in his section 2255 motion" but arguing that the district court erred when it "denied Robinson's section 2255 motion without a hearing"); Pet. at 146-47 (acknowledging that the court of conviction rejected his claims that his counsel was ineffective at the penalty stage but arguing that "the District Court's ruling is astonishing and a clear denial of Robinson's rights under section 2255").)

### B.    Robinson's claims are an abuse of the writ.

As discussed, Robinson cannot use Section 2241 to relitigate an argument that he raised and lost in his Section 2255 motion.   *Roundtree*, 910 F.3d at 313-14.   Robinson points to no intervening change in law or fact.   Rather, he simply asks this Court to review his claims anew,

even though they were already rejected by the court of conviction and the Fifth Circuit.  His attempt to "relitigate [these] theor[ies], in the absence of an intervening change of law," is "a paradigm abuse of the writ."  *Id.* at 314.  This Court should dismiss his third and fourth claims for relief on that basis alone.

### C.     Robinson cannot resort to the Savings Clause to relitigate these ineffective-assistance claims.

Robinson argues that he is entitled here to a full review on the merits, even though the court of conviction rejected the same ineffective-assistance claims as meritless more than a decade ago.  That is so, his argument goes, because in adjudicating motions under Section 2255, every district judge in every district within the Fifth Circuit, along with the United States Court of Appeals for the Fifth Circuit, "violate[s]" the rights of capital defendants.  (Pet. at 7.)  He urges further that, in his case, the district court denied his Section 2255 motion without an evidentiary hearing, misapplied settled standards from *Strickland*, and—along with the Fifth Circuit—applied the wrong standards when it denied him a certificate of appealability—a result he calls "astonishing."  (Pet. at 146-50.)  Against this backdrop, Robinson advances a categorical rule: Federal capital prisoners convicted in the Fifth Circuit can always satisfy the Savings Clause for any subsequent collateral attack because that Circuit categorically denies them due process in "sham procedures," where "their post-conviction rights are honored in name only."  (*See* Pet. at 20.)  Robinson is wrong, and this Court should reject his argument because it is squarely foreclosed by this Circuit's precedent.

First, Robinson's categorical rule runs afoul of the fundamental principles of this Circuit's Savings Clause jurisprudence.  The Seventh Circuit has taken care not to open the doors of the Savings Clause—which by its plain text applies only where "the remedy by [Section

28

2255] motion is inadequate or ineffective to test the legality of his detention"—to all comers. The Court has repeatedly emphasized that the path is "narrow." *Bourgeois*, 977 F.3d at 624; *Lee*, 964 F.3d at 666 (quoting *Purkey*, 964 F.3d at 611); *see also, e.g.*, *Poe*, 834 F.3d at 774 (explaining that the en banc court in *Webster* "took great care to assure that its holding was narrow in scope"). To proceed down it, the prisoner must show "something more" than a rejected collateral attack under Section 2255. *Webster*, 784 F.3d at 1186; *Purkey*, 964 F.3d at 615. Robinson's proposed rule—that a capital prisoner need only show that he was convicted and sentenced to death in any district court in the Fifth Circuit—finds no support anywhere. Indeed, it would represent a return to the era of unlimited collateral attacks—an approach the Seventh Circuit expressly rejected in *Webster*. *Webster*, 784 F.3d at 1140 n.9.

Similarly, this Court should reject Robinson's invitation for it—or the Seventh Circuit— to sit in judgment of the jurisprudence of courts in the Fifth Circuit. By requiring that a federal prisoner show "something structurally inadequate or ineffective about section 2255 as a vehicle," *Purkey*, 964 F.3d at 636, Congress necessarily precluded courts in the district of incarceration from sitting in judgment of the courts from the district of conviction. The Seventh Circuit has repeatedly declined to interpret the Savings Clause in a way that would allow it to overrule the law of other circuits. *See, e.g.*, *Bourgeois*, 977 F.3d at 636 ("In the end, though, it is not for us to decide whether the § 2255 court got it right or wrong.") Contrary to Robinson's argument, Congress did not create the Savings Clause as "simply another avenue for appeal." *Id.*

Second, Robinson fails to cite a single authority from the Seventh Circuit (or any federal court) adopting such a categorical rule—or anything like it. And he ignores a long line of cases in which the Seventh Circuit has held that a federal capital prisoner convicted in a court in the

29

Fifth Circuit cannot bring his claims under the Savings Clause.   For example, the Seventh

Circuit recently rejected a similar argument—"that the Fifth Circuit did not give [the capital

petitioner's] arguments the consideration they deserved"—because the Court does "not sit in

judgment on the decisions of our sister circuits."   *Vialva*, 975 F.3d at 665-66.   Likewise, the

Court rejected as irrelevant Bourgeois's arguments that the United States District Court for the

Southern District of Texas erred in rejecting his Section 2255 motion.   *Bourgeois*, 977 F.3d at

636; *see also id.* ("In the end, though, it is not for us to decide whether the § 2255 court got it

right or wrong.   That point seems lost on Bourgeois, who goes on at length about why, in his

view, the § 2255 court was wrong.").   The same was true for Hall.   The Seventh Circuit

recently affirmed this Court's denial of Hall's seriatim Section 2241 petitions, where he had

previously litigated his Section 2255 claims in the Fifth Circuit—before the very same district

judge who presided over Robinson's capital trial and denied Robinson's Section 2255 motion.

*Hall*, 829 F. App'x at 719 (rejecting Hall's attempt to relitigate his theory under Section 2241

where "the Fifth Circuit thoroughly addressed the claim on the merits and rejected it"); *id*. at 721

(rejecting Hall's attempt to relitigate two additional theories under Section 2241 where he

"litigated a *Batson* challenge, lost, and dropped further review of that claim on direct appeal and

through multiple rounds of collateral litigation under § 2255," and "long ago raised and lost the

systemic-bias claim in his first round of § 2255 litigation in the Northern District of Texas").

Third, Robinson's rule would impermissibly circumvent Congress's choice to route

collateral attacks to the court of conviction, AEDPA's restrictions on successive collateral

attacks, *and* the common-law bar on abusive writs—approaches that the Seventh Circuit has

rejected repeatedly.   *See Shepherd*, 911 F.3d at 862 (explaining that Congress chose to steer

30

almost all challenges to federal criminal judgments to 28 U.S.C. § 2255); *Bourgeois*, 977 F.3d at 637 (rejecting a capital prisoner's attempt to "end-run" around Congress's limitations on successive motions under Section 2255); *Roundtree*, 910 F.3d at 314 ("What he now wants is to use § 2241 in circumstances that would have been called an abuse of the writ before the 1996 Act replaced that common-law doctrine with § 2255(f) and (h). . . .   The 1996 changes were designed to curtail relitigation of collateral attacks, yet Roundtree wants something that would have been unavailable even before 1996.   That's not permissible.") (cleaned up).

In sum, binding precedent forecloses Robinson's argument that post-conviction proceedings in the Fifth Circuit are such "shams" that a prisoner may always litigate or relitigate his theories under Section 2241.   Robinson's complaints boil down to frustration with the district court that denied his Section 2255 motion, the Fifth Circuit that denied him a certificate of appealability, and the Supreme Court that denied his petition for a writ of certiorari.   But a lack of success does not entitle Robinson to proceed under Section 2241, and "[t]he savings clause is not simply another avenue for appeal."   *Bourgeois*, 977 F.3d at 620.   Because Robinson has failed plainly failed to show a defect that rendered Section 2255 "inadequate or ineffective" to test his claims, this Court should dismiss his third and fourth claims for relief.

**4.       As Robinson concedes, *Garza* forecloses his final claim (Robinson's Claim V).**

In his final claim for relief, Robinson states that the Inter-American Commission on Human Rights (IACHR) found that the United States violated the American Declaration, and he petitions this Court to grant him "relief for each" such "violation."   (Pet. at 153-54.)   But, as Robinson correctly acknowledges, the Seventh Circuit's decision in *Garza* forecloses his attempt to translate the IACHR's decision into a cognizable claim in federal court.   (Pet. at 153 (citing

31

*Garza*, 253 F.3d at 925).)

In *Garza*, a federal death-row inmate petitioned a federal district court under Section 2241 to enforce his rights under the American Declaration. 253 F.3d at 920. The district court denied relief, and the Seventh Circuit affirmed. The Seventh Circuit explained that the American Declaration was merely "an aspirational document that, in itself, creates no directly enforceable rights." *Id.* at 923. That court further held that decisions from the IACHR do not create "judicially cognizable rights in individuals." *Id.* at 926. Thus, the federal prisoner could not use Section 2241 to vindicate his rights under the American Declaration in federal court.

*Garza* controls here, and it forecloses Robinson's attempt to petition this court to enforce his rights under the American Declaration. Robinson is correct to concede as much. (*See* Pet. at 153.)

Despite his concession, Robinson cites *Medellin v. Texas*, 552 U.S. 491 (2008), but that Supreme Court decision affirms—not undermines—the Seventh Circuit's logic in *Garza*. In *Medellin*, the Court confirmed that, where an international treaty creates no "binding federal law in the absence of implementing legislation," parties cannot use domestic courts to enforce their rights under that treaty. *Id.* at 506. The Supreme Court's explanation confirms what the Seventh Circuit held in *Garza*: "[A]n international agreement can be considered to create judicially-enforceable private rights only where such rights are contemplated in the agreement itself." 253 F.3d at 924; *see also id.* at 926 ("By their very nature, non-binding recommendations to a government on how to conduct its affairs would appear to be addressed to the executive and *legislative* branches of the government, not to the courts.") (emphasis added). The treaties on which Garza relied (and on which Robinson attempts to rely) create no such

32

rights.   *Id.* at 924 ("We can find no indication in the treaties Garza relies on that the parties to the treaties intended for the Inter–American Commission's reports to create privately-enforceable rights, and ample evidence that they did not.").   Thus, *Medellin* provides no basis to depart from the binding decision in *Garza*.   *See Mitchell v. United States*, 971 F.3d 1081, 1084 (9th Cir. 2020) (collecting cases and explaining that "every federal court of appeals that has addressed this issue has concluded that IACHR decisions do not have domestic legal force." (internal citation and quotation marks omitted)).   *Garza* squarely forecloses Robinson's final claim for relief.

## CONCLUSION

This Court should dismiss claims I through IV because they fail to satisfy the Savings Clause.   The Court should deny claim V as meritless.

Respectfully submitted,

John Childress
Acting United States Attorney
Southern District of Indiana

*s/ Jonathan Bradshaw*
Jonathan Bradshaw
Assistant United States Attorney
Colorado Bar No. 43838
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8600
jonathan.bradshaw@usdoj.gov

Attorneys for Respondent

33

## CERTIFICATE OF SERVICE

I certify that on March 31, 2021 this response was filed electronically.   Notice of this filing will be sent to all ECF-registered counsel of record via email generated by the Court's ECF system.

*s/ Jonathan Bradshaw*
Jonathan Bradshaw
Special Assistant United States Attorney