IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JULIUS OMAR ROBINSON,<br><br>        Petitioner<br><br>   v.<br><br>T.J. WATSON, WARDEN, FEDERAL CORRECTIONAL COMPLEX (FCC) TERRE HAUTE;<br>UNITED STATES OF AMERICA,<br><br>        Respondents. | **CAPITAL CASE**<br><br>Case No. 20-cv-00640-JPH-DLP |

---

**ROBINSON'S TRAVERSE AND OPPOSITION TO THE
WARDEN'S MOTION TO DISMISS**

---

CUAUHTEMOC ORTEGA
(Cal. Bar No. 257443)
Federal Public Defender
JONATHAN C. AMINOFF
(Cal. Bar No. 259290)
(E-Mail: jonathan_aminoff@fd.org)
CELESTE BACCHI
(Cal. Bar No. 307119)
(E-Mail: celeste_bacchi@fd.org)
Deputy Federal Public Defenders
Office of the Federal Public Defender
321 East Second Street
Los Angeles, California 90012
Telephone: (213) 894-5374
Facsimile: (213) 894-0310
Attorneys for Petitioner
**JULIUS OMAR ROBINSON**

# TABLE OF CONTENTS

Page

I. GENERAL ALLEGATIONS............................................................ 1

II. CLAIMS FOR RELIEF................................................................ 5

    A.    CLAIM ONE: The trial court lacked jurisdiction over the death-eligible offenses because the superseding indictment did not charge Robinson with a capital crime. .... 5

    B.    CLAIM TWO: Robinson is entitled to relief because the prosecutor presented false and misleading evidence and trial counsel unreasonably failed to challenge this evidence....................................................................... 15

    C.    CLAIMS THREE AND FOUR: Robinson has satisfied the savings clause and is entitled to relief on his Batson and penalty-phase Strickland claims. .............................. 20

    D.    Claim Five: Robinson's rights under the American Declaration of the Rights and Duties of Man have been violated in multiple ways warranting habeas relief with respect to both the guilt and penalty portions of his trial. ... 23

III. CONCLUSION......................................................................... 26

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Alleyne v. United States,*
570 U.S. 99 (2013) .............................................................. *passim*

*Apprendi v. New Jersey,*
530 U.S. 466 (2000) ............................................................. 6, 7, 8

*Atkins v. Virginia,*
536 U.S. 304 (2002) ................................................................ 1, 21

*Boumediene v. Bush,*
553 U.S. 723 (2008) ............................................................... 22, 23

*Brown v. Rios,*
696 F.3d 638 (7th Cir. 2012) ........................................................ 12

*Brumfield v. Cain,*
576 U. S 305 (2015) ............................................................... 6, 20

*Chazen v. Marske,*
938 F.3d 851 (7th Cir. 2019) .......................................................... 2

*In re Davenport,*
147 F.3d 605 (7th Cir. 1998) ..................................................... 1, 21

*Garza v. Lappin,*
253 F.3d 918 (7th Cir. 2001) ........................................................ 14

*Gonzalez v. Thaler,*
565 U.S. 134 (2012) ........................................................ 10, 11, 13

*Hall v. Watson,*
2020 WL 6785383 (S.D. IN, November 17, 2020) ................. 17, 18

*Haynes v. Rivers,*
2020 U.S. Dist. LEXIS 159688
(N.D. Il., Sept. 2, 2020) ................................................................ 3

# TABLE OF AUTHORITIES

Page(s)

*Lee v. Watson*,
   964 F.3d 663 (7th Cir. 2020) .......................................................... 21

*Miller-El v. Cockrell*,
   537 U.S. 322 (2003) ...................................................................... 11

*Montgomery v. Louisiana*,
   577 U.S. 190 (2016) ...................................................................... 13

*Oklahoma City v. Tuttle*,
   471 U.S. 808 (1985) ................................................................. 6, 20

*Poe v. LaRiva*,
   834 F.3d 770 (7th Cir. 2016) .......................................................... 13

*Purkey v. United States*,
   964 F.3d 603 (7th Cir. 2020) ..................................... 14, 18, 22, 23

*Ring v. Arizona*,
   536 U.S. 584 (2002) ..................................................................... 7, 8

*Robinson v. United States*,
   N.D. TX Case No. 00-CR-260 ....................................................... 16

*Schriro v. Summerlin*,
   542 U.S. 348 (2004) ...................................................................... 14

*Sebelius v. Auburn Reg'l Med. Ctr.*,
   568 U.S. 145 (2013) ...................................................................... 25

*Smith v. United States*,
   360 U.S. 1 (1959) ............................................................... 7, 9, 12

*United States v. Bridgewater,*
   995 F.3d 591 (7th Cir. 2021) ............................................................ 9

*United States v. Johnson*,
   2010 WL 11668097 (N.D. IL, December 13, 2010) ............... 15, 16

# TABLE OF AUTHORITIES

Page(s)

*United States v. Webster*,
   Case No. 4:94-cr-00121-Y (N.D. TX, May 26, 2021) .................... 2

*Vialva v. Watson*,
   975 F.3d 664 (7th Cir. 2020) .......................................... 4

*Webster v. Daniels*,
   784 F.3d 1123 (7th Cir. 2015) .................................... 13, 14, 18, 19

*Webster v. Watson*,
   975 F.3d 667 (7th Cir. 2020) ....................................... 1, 18, 19, 21

*Welch v. United States*,
   136 S. Ct. 1257 (2016) ................................................ 13

**Federal Statutes**

18 U.S.C. § 924 ........................................................ 6

18 U.S.C. § 3591 ...................................................... 6

21 U.S.C. § 848 ....................................................... 6

28 U.S.C. § 2241 .................................................. *passim*

28 U.S.C. § 2244 ..................................................... 24

28 U.S.C. § 2253 ..................................................... 11

28 U.S.C. § 2255 ............................................... 17, 24, 25

Federal Rule of Criminal Procedure 7 .......................... 11, 12

## I. GENERAL ALLEGATIONS

In his petition, Julius Robinson detailed why a section 2255 motion is inadequate or ineffective to test the legality of Robinson's convictions or sentences.  Dkt. 4, First Amended § 2241 Petition ("2241 Petition") at 7-20.  In addition to claim-specific arguments for satisfying the savings clause, Robinson demonstrated how courts in the Fifth Circuit, both systemically and specifically in his case, deny petitioners "a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of [their] conviction and sentence." *In re Davenport*, 147 F.3d 605, 609 (7th Cir. 1998).

Since Robinson filed his 2241 Petition, Fifth Circuit courts have continued to commit errors resulting in a denial of the process to which section 2255 movants are entitled.  For example, in *Webster v. Watson*, 975 F.3d 667, 688-89 (7th Cir. 2020), the Seventh Circuit affirmed the order of the Southern District of Indiana granting Webster's *Atkins*[1] claim and vacating his death sentence under 28

---

[1] *Atkins v. Virginia*, 536 U.S. 304 (2002) (holding that the Eighth Amendment's ban on cruel and unusual punishment prohibits the execution of persons with intellectual disabilities).

U.S.C. § 2241.  The district court and the Seventh Circuit deferred to the Northern District of Texas to conduct further sentencing proceedings in light of the relief granted under Section 2241. Accordingly, the parties filed a "Joint Advisory to the Court to Modify Bruce Carneil Webster's Sentence of Death to a Sentence of Life Imprisonment," asking the Northern District of Texas (Judge Means presiding) to modify Webster's sentence.  In response, and after a lengthy defense of the propriety of the underlying conviction and sentence, Judge Means found that the parties identified "no legal authority authorizing this Court to amend, modify, or otherwise revise the judgement of this Court or the sentence imposed based upon the jury's unanimous verdict of guilt and recommendation that a sentence of death be imposed." *United States v. Webster*, Case No. 4:94-cr-00121-Y, at *6 (N.D. TX, May 26, 2021).

Of course, the legal authority authorizing the relief granted by the Seventh Circuit is Section 2241 itself; and as courts in this Circuit have recognized, it is appropriate to transfer cases back to the sentencing court to implement Section 2241 relief, even when that court lies outside of the circuit granting relief. *See, e.g., Chazen v.*

2

*Marske*, 938 F.3d 851 (7th Cir. 2019) (granting relief under Section 2241 and remanding to the District of Minnesota in the Eighth Circuit for resentencing); *Haynes v. Rivers*, 2020 U.S. Dist. LEXIS 159688 (N.D. Ill., Sept. 2, 2020) (granting Section 2241 relief and transferring case back to the Western District of Oklahoma in the Tenth Circuit for resentencing). Given the ways in which the Fifth Circuit routinely denies adequate or effective process to post-conviction litigants, as laid out in detail in Robinson's 2241 Petition at 7-21, it is not surprising that it was incumbent upon Webster to seek relief via section 2241, and that notwithstanding the relief granted by the Northern District of Indiana and affirmed by the Seventh Circuit, the Northern District of Texas continues to resist enforcing a post-conviction litigant's constitutional rights.

Despite Robinson's detailed showing of the systematic denial of meaningful 2255 process in the Fifth Circuit, the Warden fails to meaningfully respond to Robinson's arguments. Instead, the Warden largely focuses on the fact that prior 2241 petitions from litigants

3

convicted in the Fifth Circuit have been denied.[2]  Response at 28-31.

However, in those cases, the structural defect stemming from the Fifth Circuit's systemic denial of process was not raised.  Perhaps the most analogous argument was raised in *Vialva v. Watson*, 975 F.3d 664 (7th Cir. 2020), wherein Petitioner Vialva argued that the Fifth Circuit erred in denying *him* a certificate of appealability ("COA").  *Id*. at 665-66.  In contrast, Robinson does not simply argue that the Fifth Circuit erroneously denied him a COA and therefore he is entitled to Section 2241 review; rather, Robinson establishes that the Fifth Circuit routinely misapplies the COA standard generally, thereby depriving post-conviction litigants, including himself, of meaningful appellate review.  2241 Petition at 13-16.

If the Fifth Circuit had a black-letter rule barring anyone convicted and sentenced to death within the Fifth Circuit from filing a

---

[2] The Warden also devotes a considerable portion of his brief to reciting the facts of Robinson's crimes and actually filed additional exhibits for the sole purpose of detailing Robinson's crimes.  As Robinson is not claiming innocence or attempting to diminish his conduct, the Warden's detailed factual recitation and accompanying exhibits are irrelevant to the issues at bar.

section 2255 motion in any court, then obviously section 2255 would be inadequate or ineffective to test the legality of a would-be movant's detention.  The Fifth Circuit's systemic denial of process under Section 2255 is the functional equivalent of a black-letter prohibition.  Instead of a black-letter rule, the Fifth Circuit guts the process by denying movants discovery, evidentiary hearings, certificates of appealability, and use of post-judgment motions.  The systemic nature of the denial of process renders section 2255 inadequate or ineffective to test the legality of Robinson's detention. The Warden does not respond to these systemic allegations or challenge any of the figures Robinson has proffered in support of his allegations.  But to the extent the Warden offers any additional factual allegations, Robinson disputes them.

## II. CLAIMS FOR RELIEF

A.    **CLAIM ONE: The trial court lacked jurisdiction over the death-eligible offenses because the superseding indictment did not charge Robinson with a capital crime.**

5

In his 2241 Petition, Robinson established that he was never indicted for a capital crime, and therefore the district court for the Northern District of Texas did not have jurisdiction over counts 3, 7, 11, 12, and 15, the death-eligible counts.  2241 Petition at 22-28.  It should be clear that although Robinson was indicted for violations of 21 U.S.C. § 848 and 18 U.S.C. § 924, he was not indicted for the separated aggravated offense of capital murder under 21 U.S.C. §  848(e) + 848(n)(1) + 848(N)(2-12) or 18 U.S.C. § 924(j) + 18 U.S.C. § 3591(a)(2) + 3592.  *See* 2241 Petition at 24.

It is notable that the Warden does not dispute the substance of this claim.  He does not contend that Robinson was, in fact, indicted for a capital crime; and he does not contend that indictment can be waived in a capital case.  These omissions should be considered concessions, or at the very least waiver.  *See Oklahoma City v. Tuttle*, 471 U.S. 808, 815-16 (1985) (failure to argue point in brief-in-opposition is a waiver of argument); *Brumfield v. Cain*, 135 S. Ct. 2269, 2282 (2015) (same).

Instead, the Warden characterizes this claim as the same "defective indictment claim" or "indictment error" claim as was raised

6

and rejected in Robinson's section 2255 proceedings. This is not accurate. On appeal, Robinson raised a claim pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Ring v. Arizona*, 536 U.S. 584 (2002), which argued that a fact which increases a possible criminal sentence must be presented to the grand jury and petit jury, and any such failure to properly present such facts cannot be harmless. This is the claim the Fifth Circuit denied in depth on direct appeal, and which Robinson attempted to revive in his section 2255 proceedings.

The claim Robinson now advances to this Court is whether, under *Smith v. United States*, 360 U.S. 1 (1959), the failure to include the aggravating factors that made Robinson eligible for the death penalty resulted in the failure to indict Robinson for a capital offense, thus leaving the district court without jurisdiction to hear the capital charges. *Id*. at 10 (holding that the trial court lacked the power to hear a potentially death-eligible case prosecuted by information despite the defendant's waiver of indictment.) The absence of jurisdiction is among the most fundamental defects for which the writ of habeas corpus is designed to safeguard. Yet, the Fifth Circuit focused its attention only on the *Apprendi*/*Ring* issue.

7

As the Government concedes, an intervening change in the law permits a petitioner to rely on Section 2241 to relitigate an issue decided on direct appeal. Response at 16 (citing *Roundtree v. Krueger*, 910 F.3d 312 (7th Cir. 2018)); *see also* 2241 Petition at 35-36 (citing *Beason v. Marske*, 926 F.3d 932 (7th Cir. 2019) for this same proposition). The Government argues that Robinson has not cited a change in the law and is instead focusing on cases decided before his direct appeal was denied. Response at 16 and 16 n.4. However, as Robinson explicitly states in his 2241 Petition, the "intervening judicial decision is *Alleyne* [*v. United States*, 570 U.S. 99 (2013)]." 2241 Petition at 36. *Alleyne* was issued 9 years after Robinson's direct appeal was decided, and 3 years after Robinson's section 2255 motion was denied.

The Warden contends that *Alleyne* does not cast doubt on the Fifth Circuit's decision that the *Apprendi*/*Ring* error was harmless. Response at 17. However, the Warden is responding to a claim that Robinson has not made in this Court. To be clear: the Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99 (2013), establishes that the capital crimes for which Robinson was convicted

8

are separate aggravated offenses from the non-capital crimes for which Robinson was indicted. *See id*. at 114-15 ("When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury.") As such, Robinson was held to answer for capital crimes none of which were alleged in his indictment, in violation of the Fifth Amendment. *Smith*, 360 U.S. at 9-10. This Fifth Amendment violation is non-waivable, and thus the district court for the Northern District of Texas lacked jurisdiction over the death-eligible charges. 2241 Petition at 24-25; 31-36. Indeed, in its recent decision in *United States v. Bridgewater*, a case concerning the waivability of certain rights, the Seventh Circuit actually cited to *Smith* as an example of how "Congress knows how to create certain non-waivable rights for the accused when it wishes." 995 F.3d 591, 597 (7th Cir. 2021). The Warden's focus on the Fifth Circuit's decision regarding the application of harmless error review to a *Ring/Apprendi* claim is misplaced as that claim is not presently at issue.

9

The Warden next argues that because *Alleyne* is not retroactive, Robinson cannot rely on it to challenge a conviction that is final. Response at 18. The Warden's argument is a red herring. The retroactivity of *Alleyne* is of no consequence: if the district court lacked subject matter jurisdiction over the death-eligible offenses, then this issue can never be waived and Robinson is permitted to raise this issue at any time. *Gonzalez v. Thaler*, 565 U.S. 134 (2012); 2241 Petition at 36.

The Warden asserts that the "indictment error in Robinson's case did not strip federal courts of jurisdictions over his crimes, so his claim is not 'jurisdictional' within the meaning of *Gonzalez*." at 19. In support of this position, the Warden merely cites to the Fifth Circuit's opinion in Robinson's direct appeal, wherein the court found that the absence of aggravating factors in the indictment was subject to harmless error review. *Id*. The Warden's response on this point is notably terse, given that the absence of jurisdiction is the essence of Robinson's claim; but the response is also wrong.

A closer reading of *Gonzalez* reveals the Warden's erroneous argument. The *Gonzalez* Court explained that "we have pressed a

10

stricter distinction between truly jurisdictional rules, which govern 'a court's adjudicatory authority,' and nonjurisdictional 'claim-processing rules,' which do not." *Gonzalez*, 565 U.S. at 141 (quoting *Kontrick v. Ryan*, 540 U.S. 443, 454-455 (2004)).  Establishing a test, the Court continued: "A rule is jurisdictional '[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional.'" *Id*. (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006)).  The Court then applied the test to the COA standards set forth at 28 U.S.C. § 2253.  The Court examined § 2253(c)(1), which states that, "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals…."  The Court had previously interpreted § 2253(c)(1) to require that "until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  Accordingly, the Court concurred with the parties that Section 2253(c)(1) is jurisdictional within the more refined definition of *Gonzalez*.

11

Applying the same standard here, Federal Rule of Criminal Procedure 7(a)(1) states that: "An offense (other than criminal contempt) must be prosecuted by an indictment if it is punishable: (A) by death…." The Court has previously found this rule, and its roots in the Fifth Amendment, to be jurisdictional. *Smith,* 360 U.S. at 10 ("Under our view of Rule 7(a), the United States Attorney did not have authority to file an information in this case and the waivers made by petitioner were not binding and did not confer power on the convicting court to hear the case."). In the same way that an appellate court lacks jurisdiction over an appeal absent the issuance of a COA, a trial court lacks jurisdiction over a capital case unless the defendant has been indicted. The Warden fails to refute this point.

The Warden additionally argues that the savings clause bars this claim because *Alleyne* is a decision interpreting the constitution, not a statute and so section 2555 is an available means of seeking redress. Specifically, the Warden argues that because section 2255 offers a pathway to resolve constitutional claims, relief is not available under section 2241. This argument is based on a line of Seventh Circuit decisions holding that a petitioner can only satisfy the savings clause

12

by relying on a new rule of statutory interpretation made retroactive by the Supreme Court to alleviate an error that resulted in a miscarriage of justice. *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012). However, this analytical framework does not apply in cases where the petitioner asserts that the particular sentence is constitutionally forbidden, rather than just outside the scope of the statute. *Webster v. Daniels*, 784 F.3d 1123, 1137 (7th Cir. 2015) (en banc).

Here, Robinson has established that a capital sentence was constitutionally barred pursuant to the Fifth Amendment because he was not indicted for a capital offense. Individuals not indicted for capital crimes constitute a subset of criminal defendants who, like those who suffer from intellectual disability or who were minors at the time of the offense, are constitutionally exempt from capital prosecution, as they are beyond the Government's power to punish. *See Montgomery v. Louisiana*, 577 U.S. 190 (2016); *Welch v. United States*, 136 S. Ct. 1257 (2016). Thus, whether *Alleyne* is a

13

constitutional or statutory decision is not relevant to this Court's

analysis.[3]

---

[3] Although the Seventh Circuit has found that *Alleyne* is not retroactive, *Poe v. LaRiva*, 834 F.3d 770 (7th Cir. 2016), the Supreme Court has not addressed whether *Alleyne* is retroactive. As argued above, the retroactivity of *Alleyne* is not at issue in this case because Robinson's claim addresses a jurisdictional violation which may be raised at any time. *Gonzalez*, 565 U.S. 134. However, *Alleyne's* reasoning makes clear that the new rule announced by the Supreme Court in that case is substantive, not procedural, and therefore retroactive. The *Alleyne* Court held that "the core crime" and any fact triggering a mandatory minimum sentence "together constitute a new, aggravated crime, each element of which must be submitted to the jury." *Alleyne*, 570 U.S. at 113. Because the existence of that fact alters the prescribed range of punishment, "[i]t is no answer to say that the defendant could have received the same sentence with or without that fact." *Id.* at 115. Analogously, the fact that the petit jury in Robinson's case convicted and sentenced him to death is "beside the point" when the Fifth Amendment guarantees that his grand jury be presented with each element of an aggravated crime exposing him to a death sentence. *Id.* As a result, the *Alleyne* Court's definition of elements creating new, aggravated crimes creates a substantive rule placing a certain class of persons (i.e., those whose aggravated crimes were not properly presented to a grand or petit jury) beyond the power of the Government to punish. *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004).

Again, Robinson recognizes that this Court's binding precedent forecloses an argument that *Alleyne* is retroactive, but includes his position here to preserve the issue for further appellate review.

14

Further, the Seventh Circuit has repeatedly stated that it does not apply "rigid categories delineating when the safety valve is available." *Purkey v. United States*, 964 F.3d 603, 614-15 (7th Cir. 2020). Indeed, in *Webster*, 784 F.3d 1123, the Seventh Circuit held, en banc, that Webster was entitled to bring his Eighth Amendment intellectual-disability claim under section 2241. And in *Garza v. Lappin*, 253 F.3d 918 (7th Cir. 2001), the Seventh Circuit found that the petitioner could avail himself of 2241 jurisdiction when seeking to enforce a judgment by the Inter-American Commission on Human Rights. Neither case was limited by the analytical framework the Warden claims to be mandatory.

**B.    CLAIM TWO: Robinson is entitled to relief because the prosecutor presented false and misleading evidence and trial counsel unreasonably failed to challenge this evidence.**

Although the Warden attempts to minimize the factual basis of this claim, he does not rebut the following facts: (1) Carlson's testimony was, at best, grossly misleading; (2) Vanyur's virtually-identical testimony in the *Johnson* case resulted in the DOJ conceding that the testimony was misleading; (3) Johnson was granted relief

15

under section 2255; and (4) DOJ dismissed its appeal and settled Johnson's case for a life sentence.

Rather than grapple with the import of the foregoing undisputed facts, the Warden urges this Court to ignore the merits of Robinson's claim solely based on an argument that Robinson cannot satisfy the savings clause. The Warden's principle argument is that Robinson should have raised these issues in his initial section 2255 motion. However, because the issues did not fully come to light until the district court's decision in *United States v. Johnson*, 2010 WL 11668097 (N.D. IL December 13, 2010), which was decided two years after Robinson's section 2255 motion was denied (*Robinson v. United States*, N.D. TX Case No. 00-CR-260 at Dkt. 2454), Robinson could not have raised this issue as part of his initial section 2255 motion.

The Warden responds that because this information was readily available at the time of trial, the issuance date of *Johnson* is not relevant and Robinson was not prevented from raising these issues on direct appeal or under section 2255. Response at 23. The circumstances surrounding these proceedings refutes the Warden's

16

claims.  The Fifth Circuit permitted Robinson's trial counsel to also serve as his appellate counsel.  This led to the obvious problem that the issues trial counsel failed to raise at trial were likewise not raised on appeal.  When Robinson contacted the Fifth Circuit to raise issues he was having with his lawyers and seeking the court's intervention, the Fifth Circuit took no action.  2241 Petition at 88-89.  Thus, Robinson did not have a reasonable opportunity to raise the issue given his deprivation of independent appellate counsel.

Robinson's post-conviction counsel similarly lacked a reasonable opportunity to raise the issue.  The Federal Public Defender ("FPD") was given just four months to prepare and file Robinson's section 2255 motion, and the district court rejected efforts to amend the petition with any additional claims after that deadline passed. 2241 Petition at 42-43.

In response, the Warden cites to this Court's decision in *Hall v. Watson*, 2020 WL 6785383 (S.D. IN November 17, 2020) wherein the Court explained that there are certain limitations on counsel in every case, and those limitations do not automatically satisfy the savings clause.  *Id*. at *8.  However, the normal limitations on counsel are not

17

at issue here.  Counsel in capital section 2255 proceedings enjoy a one-year period to investigate and present claims on behalf of their death-sentenced clients.  28 U.S.C. § 2255(f).  Here, Robinson's primary counsel, the FPD, received one third of that amount of time and no opportunity to amend his section 2255 motion.  Moreover, appellants in direct capital appeals typically enjoy conflict-free counsel and at least some input on the contents of the appeal, yet Robinson received no such benefit and the Fifth Circuit ignored his timely requests for intervention.  These are not the kinds of limitations the Court contemplated in *Hall*.

The Warden spends considerable time disputing the meaning of the Seventh Circuit's decision in *Webster*, 784 F.3d 1123 (7th Cir. 2015).  The Warden urges the Court to take a hyper-narrow view of *Webster* and find that it only permits petitioners to use the savings clause in very limited circumstances.  As an initial matter, this would fly in the face of the Seventh Circuit's rule that it does not apply "rigid categories delineating when the safety valve is available." *Purkey*, 964 F.3d at 614-15.  Moreover, the Warden urges the Court to find that Robinson's evidence is not "new" within the meaning of

18

*Webster* because Robinson should have known of the information at the time of trial.  In doing so, the Warden overlooks the character of the "new evidence" prompting section 2241 relief in *Webster*.  In that case, Webster presented social security records showing that he was diagnosed as intellectually disabled and receiving benefits based on that diagnosis.  Of course, Webster himself had filled out the social security application and was receiving the benefits, and therefore he obviously knew of the records in question.  Trial counsel requested the records from the Social Security Administration, but they were not furnished.  It does not appear that counsel attempted to file a subpoena for the records, nor a motion to compel production of the records, but simply dropped the issue when the records were not swiftly provided in response to his request.  *Webster*, 784 F.3d at 1132-35.

Unlike Webster, Robinson did not know of the existence of evidence that would prove the misleading nature of Carlson's testimony and the falsity of the prosecutor's closing argument.  If trial counsel should have subpoenaed Bureau of Prisons records as part of a reasonable investigation into the issue, Robinson is in the same position as Webster.

19

Ultimately, the Seventh Circuit in *Webster* remanded the case for an evidentiary hearing to determine whether the newly discovered evidence was available at the time of trial.  If the Court has doubts about whether Robinson satisfies the savings clause, an evidentiary hearing on the issue of trial counsel's efforts to investigate Carlson's testimony could be helpful to establish that Robinson satisfies the savings clause.

**C.    CLAIMS THREE AND FOUR: Robinson has satisfied the savings clause and is entitled to relief on his Batson and penalty-phase Strickland claims.**

As with Claims One and Two, the Warden does not dispute the substance of Claims Three (ineffective assistance of appellate counsel for failing to raise a *Batson* claim) and Four (ineffective assistance of penalty phase counsel).  Robinson will not reiterate here his arguments in support of substantive relief on those claims as raised in his petition (2241 Petition at 74-152), but notes his position that the Warden's failure to respond to the substance of his claims should be deemed a concession, or at the very least waiver.  *See Oklahoma City*, 471 U.S. at 815-16; *Brumfield*, 135 S. Ct. at 2282.

20

Instead, the Warden raises two procedural arguments in support of dismissing Claims Three and Four: first, that Robinson is abusing the writ by raising claims that he previously litigated and lost; and second, that he cannot use the savings clause to relitigate claims the court of conviction rejected. Response at 26. Both of these contentions are without merit.

In support of his argument that Robinson is "abusing the writ," and perhaps in an effort to discredit Robinson's 2241 Petition, the Warden accuses Robinson of failing to "explicitly" acknowledge that he raised his *Batson* and penalty phase *Strickland* claim in his Section 2255 motion. Response at 26-27. This is false. *See* 2241 Petition at 12, 89, 91. Indeed, Robinson's argument that he satisfies the savings clause for these claims is based on the fact that he attempted to utilize 2255 proceedings, but was denied "a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." *In re Davenport*, 147 F.3d at 609. Raising these claims again here is not a "paradigm abuse of the writ," as the Warden asserts. Response at 28 (quoting *Roundtree*, 910 F.3d at 314. Instead, like the petitioner in *Webster*, who raised a previously-

21

litigated *Atkins* claim in a 2241 petition, Robinson asks this Court to find the savings clause satisfied where it was "impossible" to use section 2255 "to cure the defect identified in the § 2241 petition." *Lee v. Watson*, 964 F.3d 663, 666 (7th Cir. 2020).

It is true that "[i]t is not enough [to satisfy the savings clause] that proper use of the statute results in a denial of relief." *Purkey*, 964 F.3d at 615. However, the key issue here is whether the prior denial was premised on a "proper use of the statute." It is "uncontroversial . . . that the privilege of habeas corpus entitles the prisoner to a *meaningful* opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 726 (2008) (internal citations omitted) (emphasis added). Robinson has presented detailed evidence (2241 Petition at 7-20) demonstrating that the Northern District of Texas and the Fifth Circuit have systematically denied him that meaningful opportunity. This is not just "frustration" (Response at 31) with the courts that have denied him relief. Rather, Robinson has demonstrated that there is "something structurally inadequate or ineffective about section 2255 as a vehicle" in his case, *Purkey*, 964

22

F.3d at 636, due to the systemic failures and errors exhibited by the district courts and Fifth Circuit in exercising the power granted to them by section 2255. While this Circuit has not yet found that systemic failures—such as those exhibited by the Fifth Circuit generally and specifically in Robinson's case—may satisfy the savings clause does not mean that such a finding is uncountenanced by Section 2255(e) and Section 2241. Habeas corpus is "above all, an adaptable remedy," and its "precise application and scope change[] depending upon the circumstances." *Boumediene*, 553 U.S. at 779; *see also Purkey*, 964 F.3d at 614-615.

**D.   Claim Five: Robinson's rights under the American Declaration of the Rights and Duties of Man have been violated in multiple ways warranting habeas relief with respect to both the guilt and penalty portions of his trial.**

The Warden concedes that Robinson satisfies the savings clause with respect to this claim, yet argues that the Court should deny the claim on its merits. Response at 31-33. The Warden does not contest, and therefore waives objection to, Robinson's argument that because

23

Claim Five satisfies the savings clause, the entire petition is cognizable under the savings clause.  2241 Petition at 154.

As established in his 2241 Petition, the savings clause does not address individual claims, but rather states that an application for writ of habeas corpus will not be considered unless a motion brought under section 2255 is inadequate to test the legality of the petitioner's detention.  *See* 28 U.S.C. § 2255(e); *see also* 2241 Petition at 154. Nowhere in section 2255(e) is there reference to an individual claim or claims.  This is contrasted with section 2255(f), which addresses the limitations periods, and notes that the one-year limitation period shall run from "(4) the date on which the facts supporting the *claim or claims* presented could have been discovery through the exercise of due diligence."  28 U.S.C. § 2255(f)(4) (emphasis added).  Moreover, section 2255(h) governs second or successive motions and applies the rules contained in 28 U.S.C. section 2244.  Section 2244 subsection (b) makes clear that each individual claim contained in a second or successive habeas corpus application must meet the standard set forth in subsections (b)(1) and (b)(2).  This language is particularly

24

noteworthy because it contemplates that a "habeas corpus application" will contain multiple claims for relief.

The differences in these sections demonstrates that the drafters were aware that applications for writ of habeas corpus would contain multiple claims, and made specific decisions regarding standards applicable to individual claims contained within a single application. In other words, Congress could have specified that the savings clause applies to individual claims, but it did not. "We consider context, including this Court's interpretations of similar provisions . . . as probative of" Congress' intent. *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153-54 (2013) (internal quotation marks omitted). Thus, section 2255(e) is not claim specific, and Congress intended that if any portion of the application for writ of habeas corpus establishes that section 2255 is not adequate to test the legality of the petitioner's detention, the petitioner has satisfied the savings clause. Because the Warden concedes that Claim Five satisfies the savings clause, Robinson's petition at-large meets the standards set forth in section 2255(e) and this Court may consider all five claims on their merits.

25

## III. CONCLUSION

For the foregoing reasons, Robinson respectfully requests that the court deny the Warden's motion to dismiss, and grant Robinson relief as detailed in his 2241 Petition at page 155.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: July 1, 2021   By:   */s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders

Attorneys for Julius Robinson

26