IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JULIUS OMAR ROBINSON,<br><br>     Petitioner<br><br>  v.<br><br>T.J. WATSON, WARDEN, FEDERAL CORRECTIONAL COMPLEX (FCC) TERRE HAUTE;<br>UNITED STATES OF AMERICA,<br><br>     Respondents. | **CAPITAL CASE**<br><br>Case No. 20-cv-00640-JPH-DLP |

## PETITIONER'S REPLY IN SUPPORT OF HIS AMENDED PETITION FOR WRIT OF HABEAS CORPUS

CUAUHTEMOC ORTEGA (No. 257443)
Federal Public Defender
JONATHAN C. AMINOFF
(Cal. Bar No. 259290)
(E-Mail: jonathan_aminoff@fd.org)
MICHAEL B. PETERSEN
(Cal. Bar No. 311729)
(E-Mail: michael_petersen@fd.org)
Deputy Federal Public Defenders
Office of the Federal Public Defender
321 East Second Street
Los Angeles, California 90012
Telephone:  (213) 894-2854
Facsimile:  (213) 894-0081
Attorneys for Petitioner
**JULIUS OMAR ROBINSON**

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ................................................. 8

II.    GENERAL ALLEGATIONS ..................................................... 9

III.    THE LAW GOVERNING SECTION 2241 PETITIONS............. 15

    A.    The Savings Clause Allows this Court to Considering Robinson's Petition. ........................................................ 15

    B.    Section 2241 Review is Not Limited to the Piecemeal Approach that the Warden Champions ............................. 17

IV.    CLAIMS FOR RELIEF ........................................................... 24

    A.    CLAIM ONE: The trial court lacked jurisdiction over the death-eligible offenses because the superseding indictment did not charge Robinson with a capital crime. .. 24

        1.    Robinson's claim is not barred as an abuse of the writ. ................................................................... 25

        2.    *Alleyne* confirms that Robinson was not indicted for a capital crime. ................................................ 28

        3.    Robinson's claim is jurisdictional .......................... 34

    B.    CLAIM TWO: Robinson is entitled to relief because the prosecutor presented false and misleading evidence and trial counsel unreasonably failed to challenge this evidence. .................................................................. 37

    C.    CLAIMS THREE AND FOUR: Robinson has satisfied the savings clause and is entitled to relief on his *Batson* and penalty-phase *Strickland* claims. ............................... 45

    D.    Claim Five: Robinson's rights under the American Declaration of the Rights and Duties of Man have been violated in multiple ways warranting habeas relief with respect to both the guilt and penalty portions of his trial. ... 49

# TABLE OF CONTENTS

Page

V.    CONCLUSION ......................................................................... 53

CERTIFICATE OF SERVICE ............................................................. 53

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Alleyne v. United States*,
570 U.S. 99 (2013) .................................................................... *passim*

*Apprendi v. New Jersey*,
530 U.S. 466 (2000) ...................................................................... 26

*Atkins v. Virginia*,
536 U.S. 304 (2002) ................................................................... 9, 46

*Boumediene v. Bush*,
553 U.S. 723 (2008) ................................................................. 47, 48

*Bourgeois v. Watson*,
977 F.3d 620 (7th Cir. 2020) .................................................... 15, 25

*Brown v. Rios*,
696 F.3d 638 (7th Cir. 2012) ......................................................... 30

*Brumfield v. Cain*,
135 S. Ct. 2269 (2015) ............................................................. 25, 45

*Chazen v. Marske*,
938 F.3d 851 (7th Cir. 2019) ........................................................ 10

*In re Davenport*,
147 F.3d 605 (7th Cir. 1998) ......................................... 9, 16, 17, 46

*Davis v. United States*,
817 F.3d 319 (7th Cir. 2016) ................................................... 18, 23

*Dhinsa v. Krueger*,
917 F.3d 70 (2d Cir. 2019) ........................................................... 15

*Garza v. Lappin*,
253 F.3d 918 (7th Cir. 2001) ........................................... 16, 17, 32

# TABLE OF AUTHORITIES

Page(s)

*Gonzalez v. Thaler*,
565 U.S. 134 (2012) ................................................................*passim*

*Hall v. Watson*,
2020 WL 6785383 (S.D. IN November 17, 2020).................. 41, 42

*Harris v. Warden*,
425 F.3d 386 (7th Cir. 2005) ........................................................ 15

*Haynes v. Rivers*,
2020 U.S. Dist. LEXIS 159688
(N.D. Ill., Sept. 2, 2020) .............................................................. 11

*Kees v. United States*,
304 F.2d 61 (7th Cir. 1962) .......................................................... 36

*Kees v. United States*,
304 F.2d 661 (7th Cir. 1962) ................................................... 29, 37

*Lee v. Watson*,
964 F.3d 663 (7th Cir. 2020) ........................................................ 46

*Miller-El v. Cockrell*,
537 U.S. 322 (2003) ...................................................................... 35

*Montgomery v. Louisiana*,
577 U.S. 190 (2016) ...................................................................... 31

*Myers v. Neal*,
975 F.3d 611 (7th Cir. 2020) ........................................................ 21

*Oklahoma City v. Tuttle*,
471 U.S. 808 (1985) ................................................................. 25, 45

*Poe v. LaRiva*,
834 F.3d 770 (7th Cir. 2016) ........................................................ 31

*Prevatte v. Merlak*,
865 F.3d 894 (7th Cir. 2017) ........................................................ 15

# TABLE OF AUTHORITIES

Page(s)

*Purkey v. United States*,
    964 F.3d 603 (7th Cir. 2020) ................................................. *passim*

*Ring v. Arizona*,
    536 U.S. 584 (2002) ..................................................... 26

*Robinson v. United States*,
    N.D. TX Case No. 00-CR-260 ..................................... 39

*Schriro v. Summerlin*,
    542 U.S. 348 (2004) ..................................................... 32

*Sebelius v. Auburn Reg'l Med. Ctr.*,
    568 U.S. 145 (2013) ..................................................... 49

*Smith v. United States*,
    360 U.S. 1 (1959) ................................................. *passim*

*Thompson v. City of Chicago*,
    722 F.3d 963 (7th Cir. 2013) ....................................... 21

*United States v. Bridgewater*,
    995 F.3d 591, 597 (7th Cir. 2021) ............................... 29

*United States v. Cotton*,
    535 U.S. 625 (2002) ..................................................... 34

*United States v. Dunkel*,
    927 F.2d 955 (7th Cir. 1991) ....................................... 19

*United States v. Johnson*,
    2010 WL 11668097 (N.D. IL December 13, 2010) .......... 37, 39, 40

*United States v. Johnson*,
    223 F.3d 665 (7th Cir. 2000) ....................................... 39

*United States v. Robinson*,
    2010 U.S. App. LEXIS 11675 (5th Cir. 2010) ............. 33

# TABLE OF AUTHORITIES

Page(s)

*United States v. Webster*,
  Case No. 4:94-cr-00121-Y (N.D. TX, May 26, 2021).................. 10

*Vialva v. Watson*,
  975 F.3d 664 (7th Cir. 2020)......................................................... 13

*Webster v. Daniels*,
  784 F.3d 1123 (7th Cir. 2015)................................................ *passim*

*Webster v. Watson*,
  975 F.3d 667 (7th Cir. 2020)................................................. *passim*

*Welch v. United States*,
  136 S. Ct. 1257 (2016) ................................................................ 31

## Federal Statutes

18 U.S.C.§ 924.............................................................................. 25
18 U.S.C.§ 3591............................................................................ 25
21 U.S.C.§ 848......................................................................... 24, 25
28 U.S.C. § 2241.................................................................... *passim*
28 U.S.C.§ 2244..................................................................... *passim*
28 U.S.C.§ 2253..................................................................... *passim*
28 U.S.C.§ 2254..................................................................... *passim*
28 U.S.C.§ 2255..................................................................... *passim*

## Other Authorities

Federal Rule of Criminal Procedure 7(a)(1)................................. 36, 37

## I. PRELIMINARY STATEMENT

On December 4, 2020, Julius Robinson filed his amended habeas petition in this case. Dkt. No. 4 ("Petition"). On March 31, 2021, the Warden filed his response and motion to dismiss. Dkt. No. 15. In his 40-page response, the Warden focused significant time on reciting the facts of the case and crime, which were largely irrelevant to the claims in the petition. The Warden failed to meaningfully engage in the substance of several of Robinson's claims.

On July 1, 2021, Robinson filed a traverse pointing out the several instances in which the Warden failed to respond to Robinson's arguments. Dkt. No. 21. The Warden's response was so lacking that the Court provided the Warden a second opportunity to file a response to Robinson's petition. Dkt. No. 22. Over a year after Robinson filed his traverse, on July 8, 2021, the Warden filed his Amended Response to Robinson's Petition. Dkt. No. 27 ("Answer").

Despite its much longer length, the Warden still fails to respond to many of the same claims it failed to respond to in its initial response and totally ignores all of the issues raised in Robinson's original traverse (dkt. no. 21). For ease of the Court, Robinson has

8

copied the entirety of his previously filed traverse below and supplemented it where needed to rebut Respondent's new arguments.

## II. GENERAL ALLEGATIONS

In his Petition, Robinson detailed why a section 2255 motion is inadequate or ineffective to test the legality of his convictions or sentences. Petition at 7-20. In addition to claim-specific arguments for satisfying the savings clause, Robinson demonstrated how courts in the Fifth Circuit, both systemically and specifically in his case, deny petitioners "a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of [their] conviction and sentence." *In re Davenport*, 147 F.3d 605, 609 (7th Cir. 1998).

Since Robinson filed his Petition, Fifth Circuit courts have continued to commit errors resulting in a denial of the process to which section 2255 movants are entitled. For example, in *Webster v. Watson*, 975 F.3d 667, 688-89 (7th Cir. 2020), the Seventh Circuit affirmed the order of the Southern District of Indiana granting Webster's *Atkins*[1] claim and vacating his death sentence under 28

---

[1] *Atkins v. Virginia*, 536 U.S. 304 (2002) (holding that the Eighth Amendment's ban on cruel and unusual punishment prohibits the execution of persons with intellectual disabilities).

9

U.S.C. § 2241.  The district court and the Seventh Circuit deferred to the Northern District of Texas to conduct further sentencing proceedings in light of the relief granted under Section 2241. Accordingly, the parties filed a "Joint Advisory to the Court to Modify Bruce Carneil Webster's Sentence of Death to a Sentence of Life Imprisonment," asking the Northern District of Texas (Judge Means presiding) to modify Webster's sentence.  In response, and after a lengthy defense of the propriety of the underlying conviction and sentence, Judge Means found that the parties identified "no legal authority authorizing this Court to amend, modify, or otherwise revise the judgement of this Court or the sentence imposed based upon the jury's unanimous verdict of guilt and recommendation that a sentence of death be imposed." *United States v. Webster*, Case No. 4:94-cr-00121-Y, at *6 (N.D. TX, May 26, 2021).

Of course, the legal authority authorizing the relief granted by the Seventh Circuit is section 2241 itself; and as courts in this Circuit have recognized, it is appropriate to transfer cases back to the sentencing court to implement Section 2241 relief, even when that court lies outside of the circuit granting relief.  *See, e.g., Chazen v.*

10

*Marske*, 938 F.3d 851 (7th Cir. 2019) (granting relief under Section 2241 and remanding to the District of Minnesota in the Eighth Circuit for resentencing); *Haynes v. Rivers*, 2020 U.S. Dist. LEXIS 159688 (N.D. Ill., Sept. 2, 2020) (granting Section 2241 relief and transferring case back to the Western District of Oklahoma in the Tenth Circuit for resentencing).  Given the ways in which the Fifth Circuit routinely denies adequate or effective process to post-conviction litigants, as laid out in detail in Robinson's Petition at 7-21, it is not surprising that it was incumbent upon Webster to seek relief via section 2241, and that notwithstanding the relief granted by the Northern District of Indiana and affirmed by the Seventh Circuit, the Northern District of Texas continues to resist enforcing a post-conviction litigant's constitutional rights.

Despite Robinson's detailed showing of the systematic denial of meaningful 2255 process in the Fifth Circuit, the Warden fails to meaningfully respond to Robinson's arguments.  The Warden attempts to frame Robinson's argument as a new categorical rule that all federal capital defendants from the Fifth Circuit would automatically satisfy the savings clause.  Response at 61.  That is not

accurate.  Robinson did provide a specific detailed analysis indicating that the Fifth Circuit routinely deprives capital defendants of the process to which they are constitutionally and statutorily entitled. Against this backdrop, Robinson then demonstrated that he has personally suffered from the Fifth Circuit's bias.  Specifically, he established that the district court denied him an evidentiary hearing notwithstanding the Government's concession that he was entitled to a hearing.  Petition at 12.  The district court then denied Robinson's section 2255 motion, and rejected his request for a certificate of appealability.  The Fifth Circuit affirmed without granting Robinson a certificate of appealability.  Section 2255 relief was not available to Robinson because the Fifth Circuit denied him the process to which he was entitled to develop his claims and prove his entitlement to relief.

Instead of engaging with the facts, the Warden cites to denied 2241 petitions filed in this district from litigants convicted in the Fifth Circuit.[2]  Response at 63-64.  The Warden believes this to be

---

[2] The Warden also devotes a considerable portion of his brief to reciting the facts of Robinson's crimes and actually filed additional exhibits for the sole purpose of detailing Robinson's crimes.  This

12

compelling evidence that Robinson's argument fails. However none

of those cases raised the issue presently at bar, specifically whether

the Fifth Circuit's systemic denial of process constitutes a structural

defect rendering section 2255 relief inadequate or unavailable under

section 2255(e). Of the cases cited by the Warden, perhaps the most

analogous argument was raised in *Vialva v. Watson*, 975 F.3d 664 (7th

Cir. 2020). There, Petitioner Vialva argued that the Fifth Circuit erred

in denying *him* a certificate of appealability ("COA"). *Id*. at 665-66.

In contrast, Robinson does not simply argue that the Fifth Circuit

erroneously denied him a COA and therefore he is entitled to Section

2241 review; rather, Robinson establishes that the Fifth Circuit

routinely misapplies the COA standard generally, thereby depriving

post-conviction litigants, including himself, of meaningful appellate

review. Petition at 13-16. To put it another way: Robinson does not

just argue that the Fifth Circuit was simply wrong in denying him a

COA, rather he establishes that COAs *are not available* to petitioners,

like him, in the Fifth Circuit.

---

factual recitation and accompanying exhibits are irrelevant to the
issues at bar.

13

If the Fifth Circuit had a rule requiring that all section 2255 motions filed by movants sentenced to death be promptly denied without hearings or certificates of appealability, then obviously section 2255 would be inadequate or ineffective to test the legality of a would-be movant's detention. But instead, the Fifth Circuit has a *de facto* rule, born out by the statistics, that denies movants a fair opportunity to challenge their convictions and sentences via section 2255. The Fifth Circuit effectively guts the process by denying movants discovery, evidentiary hearings, certificates of appealability, and use of post-judgment motions. Petition at 7-20. The systemic nature of the denial of process renders section 2255 inadequate or ineffective generally, and specifically as regards to Robinson's convictions and sentences.

The Warden does not respond to these systemic allegations or challenge any of the figures Robinson has proffered in support of his allegations. But to the extent the Warden offers any additional factual allegations, Robinson disputes them.

14

## III. THE LAW GOVERNING SECTION 2241 PETITIONS

### A.     The Savings Clause Allows this Court to Considering Robinson's Petition.

The Warden misstates the law as it pertains generally to section 2241 petitions.  Answer at 11-16.

First, the Warden announces that this Court has no judication over a claim that fails to satisfy section 2241.  Response at 12.  Given the context of the Warden's statement, and his citation to *Dhinsa v. Krueger*, 917 F.3d 70, 81 (2d Cir. 2019), the Warden appears to mean that unless a petitioner satisfies the requirements of section 2255(e), a district court does not have jurisdiction to consider a section 2241 petition.  The Seventh Circuit has continually rejected this argument, repeatedly holding that section 2255(e) is non-jurisdictional.  *Harris v. Warden*, 425 F.3d 386, 388 (7th Cir. 2005); *Prevatte v. Merlak*, 865 F.3d 894, 901 (7th Cir. 2017); *Bourgeois v. Watson*, 977 F.3d 620, 629 n. 4 (7th Cir. 2020).

Next, the Warden attempts to limit the occasions where section 2255(e) in satisfied.  The Warden argues that the savings clause can only be satisfied if the petitioner falls under a similar category to the

15

Seventh Circuit's decisions in *Davenport*, *Garza*, *Webster* or establishes "some of kind of structural problem with section 2255." Response at 16 (quoting *Higgs v. Watson*, 841 F. App'x 995, 997 (7th Cir. 2021) (citing *Webster*, 784 F.3d at 1186) (internal quotation marks omitted, emphasis in original)). The Warden misstates the law.

The Seventh Circuit has been clear that there are not rigid categories of cases that might meet section 2255(e). Indeed, in *Purkey* the Seventh Circuit rejected the district court's analysis, which examined Purkey's claim, distinguished it from *Davenport*, *Garza*, and *Webster*, and thus concluded that Purkey did not meet the savings clause. *Purkey v. United States*, 964 F.3d 603, 611-12 (7th Cir. 2020). Instead, the *Purkey* Court explained that, where section 2255 proves to be inadequate or ineffective to test the legality of a petitioner's convictions and sentences, a petitioner may bring his claims via section 2241. *Id*. at 611-12. *Davenport*, *Garza*, and *Webster* are merely examples where a petitioner has satisfied the burden of establishing that section 2255 is inadequate or ineffective to vindicate the petitioner's rights. *Id*. at 615 (noting after discussing the holdings in *Davenport*, *Garza*, and *Webster* that "We need not speculate on

16

what other scenarios might satisfy the safety valve, other than to say that there must be a compelling showing that, as a practical matter, it would be impossible to use section 2255 to cure a fundamental problem.").

The Seventh Circuit's jurisprudence has been abundantly clear that the availability of section 2241 relief is a case-by-case analysis which depends on whether the individual petitioner can establish that section 2255 is unavailable, not simply because the court reviewing the section 2255 motion denied relief, but because of some structural issue. *Id*. at 614-15 ("Although we do not believe that *Davenport*, *Garza*, and *Webster* create rigid categories delineating when the safety valve is available—and such a finding would be inconsistent with the standard-based language of section 2255(e)—we do think that the words "'inadequate or ineffective,'" taken in context, must mean something more than unsuccessful.").

B.    **Section 2241 Review is Not Limited to the Piecemeal Approach that the Warden Champions**

In the same way that the Seventh Circuit has applied section 2241 on a case-by-case basis, the savings clause is similarly applied in

17

a case-by-case, rather than a claim-by-claim, manner.  This is evident,

in part, by the drafting of section 2255(e).  Section 2255(e) speaks

specifically to "[a]n application for writ of habeas corpus," rather than

an individual claim.  This language is contrasted with the language in

section 2255(f), which governs the statute of limitations for filing a

section 2255 motion.  Section 2255(f)(4), for example, speaks

specifically to "the date on which the facts supporting *the claim or*

*claims* presented could have been discovered through the exercise of

due diligence."  The distinction is obvious: while section 2255(e)

speaks to the petition at large, a timeliness evaluation under

subsection (f) is a claim-by-claim analysis.  *Davis v. United States*,

817 F.3d 319, 327-28 (7th Cir. 2016) ("But as every other circuit to

have considered the question has concluded, and we now hold, the

timeliness of each claim asserted in either a section 2255 motion or a

petition challenging a state-court conviction under 28 U.S.C. § 2254

must be considered independently.").

The Warden makes a series of unavailing arguments to try to

prompt a different result.  First, the Warden claims that Robinson

failed to adequately develop this argument.  Answer at 23.  The

Warden's argument is rather disingenuous given that the Warden

failed to respond to Robinson's argument in its initial Answer,

prompting this Court to order the Warden to file an amended Answer.

Dkt. No. 22. Regardless, Robinson made his argument, supported it

with reference to the statute itself, and flagged it for the Court and

opposing counsel with a sub-heading. Petition at 154. Nevertheless,

the Warden relies on *United States v. Dunkel*, 927 F.2d 955 (7th Cir.

1991), for its position that an assertion does not preserve a "claim."

Answer at 23. The quotation the Warden cites to is actually referring

to the defendant's failure to preserve an objection in an appellate brief

to the lower court's ruling. In response, the Seventh Circuit noted that

courts should not be put in the position of having to search for a

party's arguments. That, of course, is not the case here as Robinson's

argument was clearly labeled and this Court obviously did not have

difficulty finding the argument as it is the subject of this Court's prior

order (dkt. no. 22). Moreover, *Dunkel* ultimately stands for the

proposition that the Government, in failing to respond to the

defendant's argument, waived its argument in opposition. *Id*. at 956.

Although Robinson previously argued that the Warden has waived his

opposition to Robinson's argument, and the Court rejected that view

(dkt. no. 22), Robinson preserves his argument for appellate review.

Next the Warden cites to cases in which the Seventh Circuit

found that the petitioner failed to satisfy the savings clause. Answer

at 24-27. The Warden apparently believes it is compelling that in

each of those cases, the Seventh Circuit found that the petitioner failed

to establish that each claim satisfied the savings clause. The Warden

misunderstands Robinson's argument. Robinson does not claim that

he does not need to satisfy the savings clause. The issue is whether

his petition can proceed under section 2241 if just one claim in his

petition satisfies the savings clause, or whether each individual claim

must satisfy the savings clause. The *Davenport*/*Garza*/*Webster*

trilogy does not clarify this point because each of the petitioners in

those cases only presented a single claim for relief, which satisfied the

savings clause, and thus was considered under section 2241. If Garza,

for example, had presented multiple claims for relief in addition to the

claim found to satisfy the savings clause, then Robinson's position is

that the entire petition could have been considered under section 2241,

not simply the single claim.

Although the Warden believes that this outcome would be "absurd," Robinson's reading of section 2255(e) makes logical sense. Consider, for example, Robinson's five-claim petition presently before the Court, and assume this Court finds that only claim number four (trial counsel rendered ineffective assistance of counsel at the penalty trial) meets the savings clause. It would not make logical sense to consider claim four in isolation, but rather in conjunction with the other claims for purposes of cumulative prejudice. *Thompson v. City of Chicago*, 722 F.3d 963, 979-80 (7th Cir. 2013); *Myers v. Neal,* 975 F.3d 611, 623 (7th Cir. 2020) (collecting cases and explaining that a *Strickland* prejudice requires a cumulative prejudice analysis). Under the Warden's analysis, no other claim could be considered and thus the Court would be barred from conducting the required cumulative prejudice analysis.

The Warden then argues that the Seventh Circuit has already rejected Robinson's argument because the Seventh Circuit has adhered to the text of 28 U.S.C. section 2244(d)(1). Specifically, the Warden argues that because the Seventh Circuit requires a claim-by-claim analysis of timeliness under section 2244, the Seventh Circuit

must also require such an analysis under section 2255. The Warden oversimplifies the law. If section 2244 establishes anything, it is that Congress recognizes the distinction between *claims* and *petitions or applications for writ of habeas corpus*. It further establishes that Congress knows how to require a claim-by-claim analysis. For example, in the rules regarding successive petitions, section 2244(b)(1) states that a "claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." The statute goes on to specify that a claim-by-claim analysis is required section 2244(b)(4), stating: "district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section." These are clear examples of Congress' ability to create claim-by-claim analyses to ensure that various claims meet a specified standard. No such language is present in section 2255(e), and therefore there is no basis to believe that a claim-by-claim analysis is required.

The Warden relies on section 2244(d)(1) in support of his view, but the text of 2244(d)(1) belies the Warden's argument.  Section 2244(d)(1) is effectively split into two categories. Section 2244(d)(1)(A) and (B) provide that an application for writ of habeas corpus is timely if filed within 1-year of: (A) the day the judgment became final or (B) the date of removal of an impediment to filing the application, then the application at large is timely.  28 U.S.C. § 2244(d)(1)(A)-(B).  This analysis is not claim-specific, i.e. if the petition is filed within one-year of the judgment becoming final, the petition is timely.  This is contrasted with the latter portion of the statute, which refers to claim-specific impediments that then require a claim-by-claim analysis.  Specifically, section 2244(d)(1)(C) refers to claims based on newly recognized constitutional rights made retroactively applicable and section 2244(d)(1)(D) refers to claims based on newly discovered facts.  In both of these latter contexts, obviously a claim-by-claim analysis would be required because timeliness is based on claim-specific issues.  *See Davis,* 817 F.3d at 327-28 (applying a claim-by-claim analysis to a petition establishing timeliness under section 2244(d)(1)(C)).

All of this again demonstrates that Congress has the ability and understanding of how to require the analysis it deems appropriate. And with the backdrop of detailed statutes like section 2244 or section 2255(f), Congress drafted section 2255(e) to simply refer to an "application for writ of habeas corpus." As much as the Warden can hazard guesses as to Congressional intent (Answer at 30-32), the Court need look no further than the text of the statutes to determine that Congress intended the savings clause to allow consideration of a petition in its entirety if a single claim meets the standard set forth in section 2255(e).

## IV. CLAIMS FOR RELIEF

A.    **CLAIM ONE: The trial court lacked jurisdiction over the death-eligible offenses because the superseding indictment did not charge Robinson with a capital crime.**

In his Petition, Robinson established that he was never indicted for a capital crime, and therefore the district court for the Northern District of Texas did not have jurisdiction over the death-eligible counts, specifically counts 3, 7, 11, 12, and 15. Petition at 22-28. Although Robinson was indicted for violations of 21 U.S.C. § 848 and

18 U.S.C. § 924, he was not indicted for the separate aggravated offenses of capital murder under 21 U.S.C. § 848(e) + 848(n)(1) + 848(N)(2-12) or 18 U.S.C. § 924(j) + 18 U.S.C. § 3591(a)(2) + 3592. *See* Petition at 24.

### 1.    Robinson's claim is not barred as an abuse of the writ.

The Warden does not dispute the substance of this claim. He does not contend that Robinson was, in fact, indicted for a capital crime. He also does not contend that indictment can be waived in a capital case. These omissions should be considered concessions, or at the very least any future arguments to the contrary should be considered forfeited. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 815-16 (1985) (failure to argue point in brief-in-opposition is a waiver of argument); *Brumfield v. Cain*, 135 S. Ct. 2269, 2282 (2015) (same); but *see Bourgeois*, 977 F.3d 620, 629 (7th Cir. 2020) (stating that the failure to timely make an arguments results in forfeiture of that argument, not waiver.).

Instead, the Warden characterizes this claim as the same "defective indictment claim" or "indictment error" claim as was raised

and rejected in Robinson's section 2255 proceedings.  Answer at 18-19.  This is not accurate.  On appeal, Robinson raised a claim pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Ring v. Arizona*, 536 U.S. 584 (2002), wherein he argued that a fact which increases a possible criminal sentence must be presented to the grand jury and petit jury, and any such failure to properly present such facts cannot be harmless.  This is the claim the Fifth Circuit denied in depth on direct appeal, and which Robinson attempted to revive in his section 2255 proceedings and in his Rule 60 motion.

The claim Robinson now advances to this Court is whether, under *Smith v. United States*, 360 U.S. 1 (1959), the failure to include the aggravating factors that made Robinson eligible for the death penalty resulted in the failure to indict Robinson for a capital offense, thus leaving the district court without jurisdiction to hear the capital charges.  *Id*. at 10 (holding that the trial court lacked the power to hear a potentially death-eligible case prosecuted by information despite the defendant's waiver of indictment.)  The absence of jurisdiction is among the most fundamental defects for which the writ of habeas corpus is designed to safeguard.  Although Robinson raised the *Smith*

claim on direct appeal, the Fifth Circuit focused its attention only on the *Apprendi/Ring* issue and summarily denied the *Smith* claim. Seeing no fundamental change in the law, Robinson did not re-raise the claim in his section 2255 motion. The Warden, apparently misinterpreting the claim presently before the Court, continues to refer to Robinson's *Apprendi/Ring* defective indictment claim and argues that Robinson has raised this claim five times. Answer at 18. The record in this case belies the Warden's arguments. Robinson raised this claim on direct appeal, and not again until now. Because Robinson's *Smith* claim is presently before the Court, and not the *Apprendi/Ring* claim, the Warden's abuse-of-the-writ arguments are irrelevant and should be disregarded.

As the Warden concedes, an intervening change in the law permits a petitioner to rely on section 2241 to relitigate an issue decided on direct appeal. Answer at 18 (citing *Roundtree v. Krueger*, 910 F.3d 312 (7th Cir. 2018)); *see also* Petition at 35-36 (citing *Beason v. Marske*, 926 F.3d 932 (7th Cir. 2019) for this same proposition). The Warden argues that Robinson has not cited an intervening change in the law and is instead focusing on cases decided

before his direct appeal was denied.  Answer at 18 and 18 n.5.

However, as Robinson explicitly states in his Petition, the

"intervening judicial decision is *Alleyne* [*v. United States*, 570 U.S. 99

(2013)]."  Petition at 36.  *Alleyne* was issued 9 years after Robinson's

direct appeal was decided, and 3 years after Robinson's section 2255

motion was denied.

### 2.    *Alleyne* confirms that Robinson was not indicted for a capital crime.

The Warden contends that *Alleyne* does not cast doubt on the

Fifth Circuit's decision that the *Apprendi*/*Ring* error was harmless.

Response at 18, 20.  However, the Warden is again responding to a

claim that Robinson has not made in this Court.  To be clear: the

Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99

(2013), establishes that the capital crimes of which Robinson was

convicted are separate aggravated offenses from the non-capital

crimes for which Robinson was indicted.  *See id*. at 114-15 ("When a

finding of fact alters the legally prescribed punishment so as to

aggravate it, the fact necessarily forms a constituent part of a *new*

*offense* and must be submitted to the jury." (emphasis added))  As

such, Robinson was held to answer for capital crimes none of which

28

were alleged in his indictment, in violation of the Fifth Amendment, and thereby depriving the district court of jurisdiction over the case. *Smith*, 360 U.S. at 9-10; *see also Kees v. United States*, 304 F.2d 661, 663 (7th Cir. 1962) ("Because we conclude that the offense charged [by information not indictment] was a capital offense, we decide that Rule 7(a) gives no support to the District Court's assumption of jurisdiction in this case.  We hold that the court had no jurisdiction to try the alleged violation of the Kidnapping Act by information.").

This Fifth Amendment violation is non-waivable, and thus the district court for the Northern District of Texas lacked jurisdiction over the death-eligible charges.  Petition at 24-25; 31-36.  In its recent decision in *United States v. Bridgewater*, a case concerning the waivability of certain rights, the Seventh Circuit actually cited to *Smith* as an example of how "Congress knows how to create certain non-waivable rights for the accused when it wishes."  995 F.3d 591, 597 (7th Cir. 2021).

The Warden next argues that because *Alleyne* is not retroactive, Robinson cannot rely on it to challenge a conviction that is final. Response at 21.  The Warden's argument is a red herring.  The

29

retroactivity of *Alleyne* is of no consequence: if the district court lacked subject matter jurisdiction over the death-eligible offenses, then this issue can never be waived and Robinson is permitted to raise this issue at any time. *Gonzalez v. Thaler*, 565 U.S. 134 (2012); Petition at 36.

The Warden then argues that the savings clause bars this claim because *Alleyne* is a decision interpreting the constitution, not a statute and so section 2555 is an available means of seeking redress. Answer at 21. Specifically, the Warden argues that because section 2255 offers a pathway to resolve constitutional claims, relief is not available under section 2241. This argument is based on a line of Seventh Circuit decisions holding that a petitioner can only satisfy the savings clause by relying on a new rule of statutory interpretation made retroactive by the Supreme Court to alleviate an error that resulted in a miscarriage of justice. *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012). However, this analytical framework does not apply in cases where the petitioner asserts that the particular sentence is constitutionally forbidden, rather than just outside the scope of the

statute. *Webster v. Daniels*, 784 F.3d 1123, 1137 (7th Cir. 2015) (en banc).

Here, Robinson has established that a capital sentence was constitutionally barred pursuant to the Fifth Amendment because he was not indicted for a capital offense. Individuals not indicted for capital crimes constitute a subset of criminal defendants who, like those who suffer from intellectual disability or who were minors at the time of the offense, are constitutionally exempt from capital prosecution, as they are beyond the Government's power to punish. *See Montgomery v. Louisiana*, 577 U.S. 190 (2016); *Welch v. United States*, 136 S. Ct. 1257 (2016). Thus, whether *Alleyne* is a constitutional or statutory decision is not relevant to this Court's analysis.[3]

---

[3] Although the Seventh Circuit has found that *Alleyne* is not retroactive, *Poe v. LaRiva*, 834 F.3d 770 (7th Cir. 2016), the Supreme Court has not addressed whether *Alleyne* is retroactive. As argued above, the retroactivity of *Alleyne* is not at issue in this case because Robinson's claim addresses a jurisdictional violation which may be raised at any time. *Gonzalez*, 565 U.S. 134. However, *Alleyne's* reasoning makes clear that the new rule announced by the Supreme Court in that case is substantive, not procedural, and therefore retroactive. The *Alleyne* Court held that "the core crime" and any fact triggering a mandatory minimum sentence "together constitute a new, aggravated crime, each element of which must be submitted to the

Further, as discussed above, the Seventh Circuit has repeatedly stated that it does not apply "rigid categories delineating when the safety valve is available." *Purkey v. United States*, 964 F.3d 603, 614-15 (7th Cir. 2020). Indeed, in *Webster*, 784 F.3d 1123, the Seventh Circuit held, en banc, that Webster was entitled to bring his Eighth Amendment intellectual-disability claim under section 2241. And in *Garza v. Lappin*, 253 F.3d 918 (7th Cir. 2001), the Seventh Circuit found that the petitioner could avail himself of 2241 jurisdiction when seeking to enforce a judgment by the Inter-

---

jury." *Alleyne*, 570 U.S. at 113. Because the existence of that fact alters the prescribed range of punishment, "[i]t is no answer to say that the defendant could have received the same sentence with or without that fact." *Id.* at 115. Analogously, the fact that the petit jury in Robinson's case convicted and sentenced him to death is "beside the point" when the Fifth Amendment guarantees that his grand jury be presented with each element of an aggravated crime exposing him to a death sentence. *Id.* As a result, the *Alleyne* Court's definition of elements creating new, aggravated crimes creates a substantive rule placing a certain class of persons (i.e., those whose aggravated crimes were not properly presented to a grand or petit jury) beyond the power of the Government to punish. *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004).

Again, Robinson recognizes that this Court's binding precedent forecloses an argument that *Alleyne* is retroactive, but includes his position here to preserve the issue for further appellate review.

American Commission on Human Rights.  Neither case was limited by the analytical framework the Warden claims to be mandatory.

Finally, Respondent's contention that because this is a constitutional claim, there is a pathway to relief via section 2255 is disingenuous.  *Alleyne* was decided in 2013, three years after the Fifth Circuit affirmed the district court's summary denial of Robinson's section 2255 motion. *United States v. Robinson*, 2010 U.S. App. LEXIS 11675 (5th Cir. 2010).  As such, Robinson could not have raised this issue in his section 2255 proceedings.  Moreover even if Robinson could have raised the issue in section 2255, the Fifth Circuit continues to draw a distinction between formal elements and the functional equivalent of elements, which although rejected by the Supreme Court, would foreclose relief to Robinson in the Fifth Circuit.  Petition at 31-36.  And finally, although Robinson is legally innocent of the capital crimes, and as such should be permitted to pursue relief under section 2241, *Webster,* 784 F.3d 1123, he cannot establish factual innocence under section 2255(h)(1) thereby barring him from bringing a successive motion.  Therefore section 2255 is

inadequate to vindicate Robinson's Fifth Amendment rights, and he should be permitted to pursue his rights under section 2241.

### 3.    Robinson's claim is jurisdictional

The Warden asserts that the "indictment error in Robinson's case did not strip federal courts of jurisdictions over his crimes, so his claim is not 'jurisdictional' within the meaning of *Gonzalez*."  Answer at 22.  In support of this position, the Warden merely cites to the Fifth Circuit's opinion in Robinson's direct appeal, wherein the court found that the absence of aggravating factors in the indictment was subject to harmless error review.  *Id*.  That holding is irrelevant because the Fifth Circuit did not address the claim at bar.  The Warden also cites to *United States v. Cotton*, 535 U.S. 625 (2002), a non-capital case that speaks to defective indictments charging non-capital crimes. Because *Cotton*'s holding is limited to non-capital cases, and *Smith* is the governing law concerning capital cases, the Warden's reference to *Cotton* is misplaced.  The Warden does not attempt to reconcile *Cotton* with *Smith*, fails to note that *Cotton* did not overrule *Smith*, and does not respond to Robinson's discussion of *Cotton* (Petition 26-27).  The Warden's response on this point is notably terse, given that

the absence of jurisdiction is the essence of Robinson's claim; but the response is also wrong.

A closer reading of *Gonzalez* reveals that the Warden's argument is erroneous.  The *Gonzalez* Court explained that "we have pressed a stricter distinction between truly jurisdictional rules, which govern 'a court's adjudicatory authority,' and nonjurisdictional 'claim-processing rules,' which do not."  *Gonzalez*, 565 U.S. at 141 (quoting *Kontrick v. Ryan*, 540 U.S. 443, 454-55 (2004)).  Establishing a test, the Court continued: "A rule is jurisdictional '[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional.'"  *Id.* (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006)).  The Court then applied the test to the COA standards set forth at 28 U.S.C. § 2253.  The Court examined § 2253(c)(1), which states that, "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals…."  The Court had previously interpreted § 2253(c)(1) to require that "until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners."  *Miller-El v. Cockrell*, 537 U.S. 322, 336

(2003). Accordingly, the Court concurred with the parties that Section 2253(c)(1) is jurisdictional within the more refined definition of *Gonzalez*.

Applying the same standard here, Federal Rule of Criminal Procedure 7(a)(1) states that: "An offense (other than criminal contempt) must be prosecuted by an indictment if it is punishable: (A) by death…." The Court has previously found this rule, and its roots in the Fifth Amendment, to be jurisdictional. *Smith,* 360 U.S. at 10 ("Under our view of Rule 7(a), the United States Attorney did not have authority to file an information in this case and the waivers made by petitioner were not binding and did not confer power on the convicting court to hear the case."). The Seventh Circuit's jurisprudence is consistent with *Smith*, and is similarly binding on this Court. *Kees v. United States*, 304 F.2d 61 (7th Cir. 1962). In the same way that an appellate court lacks jurisdiction over an appeal absent the issuance of a COA, a trial court lacks jurisdiction over a capital case unless the defendant has been indicted. While the Warden claims, without support, that Robinson is "wrong" that this claim is jurisdictional, Answer at 22, the Warden has not, and cannot,

36

refute the blackletter law that is *Smith*, *Kees*, and Federal Rule of Criminal Procedure 7(a)(1)(A).

**B.    CLAIM TWO: Robinson is entitled to relief because the prosecutor presented false and misleading evidence and trial counsel unreasonably failed to challenge this evidence.**

Although the Warden attempts to minimize the factual basis of this claim, he does not rebut the following facts: (1) Carlson's testimony was, at best, grossly misleading; (2) Vanyur's virtually-identical testimony in the *Johnson* case resulted in the DOJ conceding that the testimony was misleading; (3) Johnson was granted relief under section 2255; and (4) DOJ dismissed its appeal and settled Johnson's case for a life sentence.

Robinson has detailed the facts of Carlson's testimony in his Petition at pages 38-43, and the similar facts in the *Johnson* case at 43-47. Robinson will not re-hash those facts here, but would respectfully remind the Court that the Government's penalty-phase presentation focused on its argument that Robinson presented a future danger. In support of this argument, the Government highlighted an incident wherein Robinson allegedly used the jail telephone to call out

a hit on a Government witness.[4]  Carlson testified that if Robinson were not sentenced to death, he would have ready access to the telephone and could essentially call whoever he wanted (Petition at 40 (*citing* Ex. 7 at 106-07)).  The prosecutor reiterated these sentiments in his closing argument and argued that "with the telephone available to him as will be available to him at any prison setting, [Robinson] is prepared to carry out whatever it takes to seek revenge on anybody." Petition at 41 (quoting Ex. 8 at 150).  Carlson's testimony, and the prosecutor's argument, are false.  If the Government actually believed, or the Bureau of Prisons determined, that Robinson posed a threat, he could be prohibited from accessing the telephone regardless of a death sentence.  Petition at 48 (*citing* Ex. 12 at 128).

Rather than grapple with the import of the foregoing undisputed facts, the Warden urges this Court to ignore the merits of Robinson's claim solely based on an argument that Robinson cannot satisfy the savings clause.  The Warden's principle argument is that Robinson

---

[4] Robinson has consistently denied the veracity of this allegation.  In his section 2255 proceedings, Robinson put forth significant, unrebutted evidence to establish his innocence of this allegation. Petition at 43.

should have raised these issues in his initial section 2255 motion. However, because the issues did not fully come to light until the district court's decision in *United States v. Johnson*, 2010 WL 11668097 (N.D. IL December 13, 2010), which was decided two years after Robinson's section 2255 motion was denied (*Robinson v. United States*, N.D. TX Case No. 00-CR-260 at Dkt. 2454), Robinson could not have raised this issue as part of his initial section 2255 motion.

The Warden argues that the direct appeal in *Johnson* was decided prior to Robinson's sentencing, and therefore Robinson should have been aware of this claim. Answer at 37 (*citing United States v. Johnson*, 223 F.3d 665, (7th Cir. 2000)). Of course, the direct appeal decision in *Johnson* found no error with respect to Vanyur's testimony, *Johnson,* 223 F.3d at 671-76, and therefore did not put Robinson on notice of this claim. Indeed, the misleading nature of Vanyur's testimony was not fully exposed until Johnson was able to provide extra-record evidence in support of his claim as part of his section 2255 proceedings. The Warden also claims that Robinson should have been on notice of this claim by Johnson's publicly filed

petition for writ of certiorari and the Government's opposition.

Answer at 37-38. Robinson is unaware of, and the Warden certainly

does not cite, any authority that establishes that a petitioner or his

counsel are on notice of all issues raised in unrelated cases in the

certiorari briefing. Finally the Warden argues that because the

Supreme Court authority that Robinson relies on for his claim all

predated his trial, then he should have been on notice of this claim.

Answer at 37. This, of course, is a red herring in that Robinson has

established that he was unaware of the factual basis of the claim, not

the legal basis.

The Warden argues that because this information was readily

available at the time of trial, the issuance date of *Johnson* is not

relevant and Robinson was not prevented from raising these issues on

direct appeal or under section 2255. Response at 36-37. The

circumstances surrounding these proceedings refutes the Warden's

claims. The Fifth Circuit permitted Robinson's trial counsel to also

serve as his appellate counsel. This led to the obvious problem that

the issues trial counsel failed to raise at trial were likewise not raised

on appeal. When Robinson contacted the Fifth Circuit to raise issues

40

he was having with his lawyers and seeking the court's intervention, the Fifth Circuit took no action. Petition at 88-89. Thus, Robinson did not have a reasonable opportunity to raise the issue given his deprivation of independent appellate counsel.

Robinson's post-conviction counsel similarly lacked a reasonable opportunity to raise the issue. The Federal Public Defender ("FPD") was given just four months to prepare and file Robinson's section 2255 motion, and the district court rejected efforts to amend the petition with any additional claims after that deadline passed. Petition at 42-43.

In response, the Warden cites to this Court's decision in *Hall v. Watson*, 2020 WL 6785383 (S.D. IN November 17, 2020) wherein the Court explained that there are certain limitations on counsel in every case, and those limitations do not automatically satisfy the savings clause. *Id*. at *8; *see* Answer at 39. However, the normal limitations on counsel are not at issue here. Counsel in capital section 2255 proceedings enjoy a one-year period to investigate and present claims on behalf of their death-sentenced clients. 28 U.S.C. § 2255(f). Here, Robinson's primary counsel, the FPD, received one third of that

41

amount of time and no opportunity to amend his section 2255 motion. Moreover, appellants in direct capital appeals typically enjoy conflict-free counsel and at least some input on the contents of the appeal, yet Robinson received no such benefit and the Fifth Circuit ignored his timely requests for intervention. These are not the kinds of limitations the Court contemplated in *Hall*.

The Warden is deeply concerned about "Congress's choice to steer post-conviction attacks to Section 2255 and to limit repetitive, successive collateral attacks," Answer at 39, and argues that Robinson's rights should be denied in observance of Congressional preference. Yet the Government is remarkably unconcerned about Congress' choice to allow post-conviction counsel one year to investigate and present their claims (section 2255(f)), Congress' choice to create a presumption in favor of granting section 2255 movants an evidentiary hearing (section 2255(b)), and Congress' standards for issuing a certificate of appealability (28 U.S.C. section 2253(c)(2)), and the fact that all of those Congressional desires were not honored in this case.

The Warden spends considerable time disputing the meaning of the Seventh Circuit's decision in *Webster*, 784 F.3d 1123 (7th Cir. 2015). The Warden urges the Court to take a hyper-narrow view of *Webster* and find that it only permits petitioners to use the savings clause in very limited circumstances. As an initial matter, this would fly in the face of the Seventh Circuit's rule that it does not apply "rigid categories delineating when the safety valve is available." *Purkey*, 964 F.3d at 614-15. Moreover, the Warden urges the Court to find that Robinson's evidence is not "new" within the meaning of *Webster* because Robinson should have known of the information at the time of trial. In doing so, the Warden overlooks the character of the "new evidence" prompting section 2241 relief in *Webster*. In that case, Webster presented social security records showing that he was diagnosed as intellectually disabled and receiving benefits based on that diagnosis. Of course, Webster himself had filled out the social security application and was receiving the benefits, and therefore he obviously knew of the records in question. Trial counsel requested the records from the Social Security Administration, but they were not furnished. It does not appear that counsel attempted to file a subpoena

for the records, nor a motion to compel production of the records, but simply dropped the issue when the records were not swiftly provided in response to his request. *Webster*, 784 F.3d at 1132-35.

Unlike Webster, Robinson did not know of the existence of evidence that would prove the misleading nature of Carlson's testimony and the falsity of the prosecutor's closing argument. If trial counsel should have subpoenaed Bureau of Prisons records as part of a reasonable investigation into the issue, Robinson is in the same position as Webster.

Ultimately, the Seventh Circuit in *Webster* remanded the case for an evidentiary hearing to determine whether the newly discovered evidence was available at the time of trial. If the Court has doubts about whether Robinson satisfies the savings clause, an evidentiary hearing on the issue of trial counsel's efforts to investigate Carlson's testimony could be helpful to establish that Robinson satisfies the savings clause.

**C.   CLAIMS THREE AND FOUR: Robinson has satisfied the savings clause and is entitled to relief on his *Batson* and penalty-phase *Strickland* claims.**

In his initial response to Robinson's Petition, the Warden did not dispute the substance of Claims Three (ineffective assistance of appellate counsel for failing to raise a *Batson* claim) and Four (ineffective assistance of penalty phase counsel).   Robinson noted this failure in his initial reply, and argued that the Warden's failure to respond to the substance of his claims should be deemed a concession, or at the very least waiver.  *See Oklahoma City*, 471 U.S. at 815-16; *Brumfield*, 135 S. Ct. at 2282.   Robinson understands that the Court has rejected this argument, but preserves it for later review.

In his amended Response, the Warden does respond to Robinson's claims, but largely just parrots the denials from the Northern District of Texas and the Fifth Circuit.  For the reasons Robinson has cited in his Petition at pages 74-153, these decisions are wrong and result from a process that was ineffective to test the legality of Robinson's convictions and sentences.  Specifically, with respect to Robinson's ineffective assistance of counsel claims, in his section 2255 motion, Robinson made specific factual allegations and

45

legal arguments, which were supported by records and declarations of numerous witnesses, to establish that trial counsel was ineffective. Robinson requested an evidentiary hearing to prove his entitlement to relief. The Government opposed Robinson's section 2255 motion and attached affidavits from Robinson's trial counsel and trial investigator denying Robinson's accusations. The district court simply accepted trial counsel's statements as true, without affording Robinson an opportunity to cross-examine these witnesses or even requiring live testimony to make a credibility determination for itself. *United States v. Robinson*, ND TX Case No. 00-CR-260 at Dkt. 2453.

Similarly, with respect to the *Batson* claim, the district court accepted a declaration from the prosecuting attorney wherein he provided race-neutral reasons for his strikes. *Id*. And, again, Robinson was afforded no opportunity to cross-examine the prosecutor, or even to speak with him. The court's acceptance of the Government's witnesses' declarations as true, without subjecting them to cross-examination, and then simply denying Robinson's petition on the perceived strength of those declarations rendered the section 2255 procedure a sham. Accordingly, the district court's and Fifth Circuit's

denials of Robinson's claims do not bar this Court from reaching the merits of those decisions.

The Warden also raises two procedural arguments in support of dismissing Claims Three and Four: first, that Robinson is abusing the writ by raising claims that he previously litigated and lost; and second, that he cannot use the savings clause to relitigate claims the court of conviction rejected. Response at 58. Both of these contentions are without merit.

In support of his argument that Robinson is "abusing the writ," and perhaps in an effort to discredit Robinson's Petition, the Warden accuses Robinson of failing to "explicitly" acknowledge that he raised his *Batson* and penalty phase *Strickland* claim in his Section 2255 motion. Response at 58-59. This is false. *See* Petition at 12, 89, 91. Indeed, Robinson's argument that he satisfies the savings clause for these claims is based on the fact that he attempted to utilize 2255 proceedings, but was denied "a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." *In re Davenport*, 147 F.3d at 609. Raising these claims again here is not a "paradigm abuse of the writ," as the

Warden asserts.  Response at 60 (quoting *Roundtree*, 910 F.3d at 314.)  Instead, like the petitioner in *Webster*, who raised a previously-litigated *Atkins* claim in a 2241 petition, Robinson asks this Court to find the savings clause satisfied where it was "impossible" to use section 2255 "to cure the defect identified in the § 2241 petition." *Lee v. Watson*, 964 F.3d 663, 666 (7th Cir. 2020).

It is true that "[i]t is not enough [to satisfy the savings clause] that proper use of the statute results in a denial of relief." *Purkey*, 964 F.3d at 615.  However, the key issue here is whether the prior denial was premised on a "proper use of the statute."  It is "uncontroversial . . . that the privilege of habeas corpus entitles the prisoner to a *meaningful* opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 726 (2008) (internal citations omitted) (emphasis added).  Robinson has presented detailed evidence (Petition at 7-20) demonstrating that the Northern District of Texas and the Fifth Circuit have systematically denied him that meaningful opportunity.  This is not just "frustration" (Response at 64-65) with the courts that have denied him relief.  Rather, Robinson has

48

demonstrated that there is "something structurally inadequate or ineffective about section 2255 as a vehicle" in his case, *Purkey*, 964 F.3d at 636, due to the systemic failures and errors exhibited by the district courts and Fifth Circuit in exercising the power granted to them by section 2255.  While this Circuit has not yet found that systemic failures—such as those exhibited by the Fifth Circuit generally and specifically in Robinson's case—may satisfy the savings clause does not mean that such a finding is uncountenanced by Section 2255(e) and Section 2241.  Habeas corpus is "above all, an adaptable remedy," and its "precise application and scope change[] depending upon the circumstances." *Boumediene*, 553 U.S. at 779; *see also Purkey*, 964 F.3d at 614-15.

**D.    Claim Five: Robinson's rights under the American Declaration of the Rights and Duties of Man have been violated in multiple ways warranting habeas relief with respect to both the guilt and penalty portions of his trial.**

The Warden concedes that Robinson satisfies the savings clause with respect to this claim, yet argues that the Court should deny the claim on its merits.  Response at 75-76.  The Warden argues that *Garza* forecloses relief on this claim and the Supreme Court's

decision in *Medellin v. Texas*, 552 U.S. 491 (2008).  Robinson conceded in his Petition that *Garza* foreclosed relief on this claim, but after the filing date of that Petition, the United States Government has made statements which calls into question its position vis-à-vis decisions from the IACHR.

Robinson appropriately named T.J. Watson as the Respondent in this case in his official capacity as Warden of the Federal Correction Complex at Terre Haute, where Robinson is housed.  The Warden is a employee of the Bureau of Prisons, which is a branch of the Department of Justice.  Federal Rule of Evidence 801(d)(2) establishes that an opposing party's statement, when offered against the party, is not hearsay.  That statement need not be made by the party personally, but rather can be made by a person authorized by the party to make such statements or by an agent or employee of the party concerning a matter within the scope of that relationship.  Fed.R.Evid. 801(d)(2)(C) and (D).  As such, admissions by members of the Department of Justice authorized to speak on the department's behalf are attributable to the Respondent in this case.

Earlier this year, the IACHR held a hearing on the death penalty in the United States with respect to nine cases, including Robinson's case, in which the Commission had issued a published merits report. At that hearing, DOJ representative Bradley Freden testified that the U.S. Government "strongly supports the work of the IACHR" and that the US Government "regard[s] the institution as vital to the promotion and protection of human rights in the Western Hemisphere."[5]  And while Mr. Freden stated that he considers the IACHR's reports to not be binding on the United States domestic courts, the Government nevertheless takes its obligations to the IACHR seriously.

The Government's public statements obviously clash with its performance in this case.  While the Government has remained consistent that the IACHR's obligations are non-binding, the Government shows no regard whatsoever for the IACHR's decision. Given the Government's contradictory statements concerning the importance and value of the IACHR's decisions, the Warden should

---

[5] Video coverage of the hearing is available here: https://www.oas.org/en/iachr/sessions/default.asp?S=184#d21

be foreclosed from arguing that the IACHR's decision in favor of Robinson has no impact on his convictions and sentences whatsoever.

Robinson has argued that his IACHR claim should, at least, allow the Court to consider his petition at large. Petition at 154. Given the Government's public admissions about the importance of the IACHR in protecting human rights, if nothing else, the Warden should be foreclosed from arguing to the contrary.

## V. CONCLUSION

For the foregoing reasons, Robinson respectfully requests that the Court grant Robinson relief as detailed in his 2241 Petition at page 155, and vacate his convictions and sentences.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 11, 2022  By: */s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
Deputy Federal Public Defender

## CERTIFICATE OF SERVICE

I certify that on October 11, 2022, I electronically filed this reply with the clerk of court for the U.S. District Court, Southern District of Indiana, via ECF, which will serve counsel for Respondent.

*/s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
Deputy Federal Public Defender