UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JULIUS OMAR ROBINSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 2:20-cv-00640-JPH-MG |
| | ) |
| WARDEN, et al. | ) |
| | ) |
| Respondents. | ) |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Julius Omar Robinson is a federal prisoner on death row. After a jury found Mr. Robinson guilty, his convictions and sentence were affirmed on direct appeal, his § 2255 petition for post-conviction relief was denied and that decision was affirmed on appeal, and Mr. Robinson's petitions for certiorari to the United States Supreme Court were denied. Before the Court is Mr. Robinson's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. Mr. Robinson alleges that his convictions and sentence violate the Constitution, and that § 2255 is inadequate and ineffective to test the legality of his convictions and sentence. Because § 2255(e) precludes the Court from adjudicating the petition, it is **DISMISSED** for lack of jurisdiction.

I.
Background

**A. Mr. Robinson's Conviction at Trial and Direct Appeal**

**1. Trial proceedings**

While the details of Mr. Robinson's offenses of conviction are not relevant to the ultimate resolution of his legal claims, a brief summary is appropriate for

1

context.  Mr. Robinson was indicted in the Northern District of Texas for numerous crimes related to drug trafficking, unlawful use of firearms, and murder.  A jury found him guilty of having personally murdered two people: Johnny Lee Shelton, who Mr. Robinson murdered because he mistakenly believed that Mr. Shelton was responsible for an armed hijacking that cost him $30,000, and Juan Reyes, who Mr. Robinson murdered in retaliation for a fraudulent drug transaction that cost Mr. Robinson $17,000.  *United States v. Robinson*, 367 F.3d 278, 282-83 (5th Cir. 2004).  The jury also found Mr. Robinson guilty of being part of a conspiracy that was responsible for the murder of Rudolfo Resendez.  *Id.* at 283; *see* dkt. 16 at 35–36.

The indictment charging Mr. Robinson did not allege any statutory aggravating factors required for death penalty eligibility.  *Robinson*, 367 F.3d at 283 ("[T]he government concedes the indictment is constitutionally deficient because it fails to allege the statutory aggravating factors that make Robinson eligible for the death penalty.").  Nevertheless, he received three death sentences for two counts of murder in the course of using or carrying a firearm during a drug trafficking crime and one count of murder while engaging in a continuing criminal enterprise.  *Id.* at 282.

### 2.  Direct Appeal

On direct appeal, Mr. Robinson argued, among other things, that his death sentences, combined with the omission of aggravating factors in his indictment, violated the Sixth Amendment.  *Id.* at 284.  The Fifth Circuit agreed that Mr. Robinson's indictment was deficient under *Ring v. Arizona*, 536 U.S.

584 (2002) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), but held that the error was not structural and was harmless beyond a reasonable doubt. *Robinson*, 367 F.3d at 285–89.  In reaching that conclusion, the Court analyzed whether the two primary functions of an indictment—(1) that the indictment provided requisite notice of the crime for which the defendant had been charged, and (2) that the public is involved in "the charging decision, such that a defendant is not subject to jeopardy for a crime alleged only by the prosecution"—were met in this case.  *Id.* at 287.

As to the first function, the Court concluded that Mr. Robinson received adequate notice because the government had filed notice under 18 U.S.C. § 3593(a) of intent to seek a death sentence four months before trial, and Mr. Robinson did not argue that the content or timing of the notice rendered him unable to prepare a defense.  *Id.*

As to the second function, the Court applied the test announced in *Chapman v. California*, 386 U.S. 18, 23 (1967), which asked "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'"  *Id.* at 286–87.  The Fifth Circuit concluded that the indictment error was harmless beyond a reasonable doubt. It explained:

> No categorical rule is needed to convince us that any rational grand jury would find probable cause to charge Robinson with at least one of the statutory aggravating factors omitted from his indictment. In addition to the petit jury's unanimous findings— which we consider to be, at minimum, persuasive evidence of how a grand jury would find—the evidence overwhelmingly shows that

3

> there existed probable cause to charge Robinson with the aggravating factors used in his sentencing.
>
> All three death sentences involved the aggravating factor that in the killings of Shelton and Reyes, Robinson "knowingly created a grave risk of death to one or more persons in addition to ... the victim." *Cf.* 18 U.S.C. § 3592(c)(5). Robinson killed Shelton by firing an AK–47 assault rifle from the window of a moving vehicle on a public highway, directly endangering Shelton's passenger and anyone else in range. The record also shows that in the course of killing Reyes, Robinson and his co-assailant managed to shoot Rodriguez three times and to fire enough times at Marques's car fleeing the scene to leave it riddled with bullets. All this took place in a residential neighborhood in close proximity to at least two adolescent eyewitnesses playing on a nearby porch, and across the street from a barbecue attended by at least ten people.
>
> No rational grand jury would fail to find that this evidence constituted anything less than probable cause to believe that, in the course of committing each murder, Robinson created a grave risk of death to someone other than the victim. As a result, and beyond a reasonable doubt, the failure to charge those factors in an indictment did not contribute to Robinson's conviction or death sentence.

The United States Supreme Court denied Mr. Robinson's petition for writ of certiorari. *Robinson v. United States*, 543 U.S. 1005 (2004).

### B. Mr. Robinson's § 2255 Proceedings

#### 1. Initial § 2255 Motion

In 2005, Mr. Robinson filed a 28 U.S.C. § 2255 motion challenging his convictions and sentences. *See In re Robinson*, 917 F.3d 856, 860 (5th Cir. 2019). In that motion, Mr. Robinson raised the following issues: (1) ineffective assistance of counsel during the penalty phase; (2) a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), to the prosecutor's use of peremptory challenges; (3) a claim that the Federal Death Penalty Act, as applied in Texas, violated the Equal Protection Clause; (4) a claim of ineffective

assistance of counsel on appeal; (5) a due process claim related to the prosecutor's alleged pursuit of inconsistent theories at seriatim capital trials; and (6) a due process claim related to the prosecutor's alleged use of false and misleading testimony during the penalty phase. *Id.* Mr. Robinson then tried to amend his motion to add a seventh ground of relief—a claim that the indictment was defective because the prosecutor failed to include aggravating factors for the capital charge. The district court denied permission to add that claim because it had been decided on direct appeal, but it permitted the amendment insofar as it allowed Mr. Robinson to "add documentary evidence and corresponding argument relating back to his original petition." *Id.*

The district court denied Mr. Robinson's request for an evidentiary hearing, finding that "the record before [it], including the exhibits submitted by Robinson with his motion, do[es] not create any contested fact issues that must be resolved in order to decide Robinson's claims." *Id.* In deciding Mr. Robinson's claims, the court assumed that Mr. Robinson's factual contentions were true, or that his claims were "based on legal, not factual bases." *Id.*

The district court denied the petition, finding that his claims lacked merit. *Robinson v. United States*, 2008 WL 4906272, at *8–25 (N.D. Tex. Nov. 7, 2008) (unreported). The court found that Mr. Robinson's ineffective assistance of trial counsel claims failed for the following reasons:

- Mr. Robinson's claim that trial counsel failed to hire a skilled investigator was contradicted by the fact that counsel retained an investigator with whom the team had worked on previous occasions, and that investigator interviewed Mr. Robinson and Mr. Robinson's suggested fact witnesses. Trial counsel then presented

5

    testimony of those witnesses during the penalty phase at trial, *id.* at *9;

- The evidence that Mr. Robinson marshaled on post-conviction proceedings alleging that trial counsel was ineffective in his failure to investigate and rebut the government's evidence regarding future dangerousness was so contradictory that it would not have resulted in a different outcome at trial; nor did Mr. Robinson show that trial counsel handled the evidence that was presented unreasonably, *id.* at *9–11;

- Trial counsel's investigation of another aggravating factor—the attempted murder of Sarah Tucker—was not deficient where, despite Mr. Robinson's ultimate plea to a lesser count of "deadly conduct," Ms. Tucker testified at the trial that Mr. Robinson shot at her while she was in her vehicle, *id.* at *11–12;

- Trial counsel made a strategic decision not to hire a mitigation investigator where the investigation revealed no red flags that would cause them to delve further into Mr. Robinson's education background; Mr. Robinson's full-scale IQ of 107 belied his contention that counsel should have investigated his pesticide exposure and *in utero* exposure to drugs and alcohol or presented a mental health expert to testify about the impact that those exposures or Mr. Robinson's childhood had on his mental state, *id.* at *12-15;

- Trial counsel made a strategic decision not to investigate Mr. Robinson's social history more than they did because evidence about his gang involvement was more likely to alienate the jury, and, moreover, none of the information would have affected the outcome of the jury's sentencing decision, *id.* at *15–17, and;

- Trial counsel's decision not to raise a *Batson* challenge on appeal was not deficient because the prosecutor presented race-neutral reasons for striking three Black jurors, and thus the issue would not have prevailed on appeal, *id.* at *18–22.

The district court further held that Mr. Robinson's selective-prosecution claims—which argued that studies showed that the government impermissibly used ethnicity as a basis for seeking the death penalty against Black defendants—failed, as it had been previously rejected by the Fifth Circuit. *Id.*

6

at *22–23. The court found that Mr. Robinson's claim that the prosecutor pursued fundamentally inconsistent theories at seriatim capital trials by arguing that Mr. Robinson was the leader and most culpable at his trial, while then arguing the same about his co-defendant L.J. Britt at his trial, was procedurally defaulted because it could have been raised on direct appeal. *Id.* at * 23. Finally, the district court concluded that Mr. Robinson failed to make a prima facie claim under *Giglio v. United States*, 405 U.S. 150 (1972) that the government knowingly used or failed to correct false testimony during the penalty-phase aggravating factor of future dangerousness. *Id.* at *24.

### 2. Motion for reconsideration

Mr. Robinson then filed a motion for reconsideration of the order denying the motion to vacate without an evidentiary hearing under Federal Rule of Civil Procedure 59(e). *In re Robinson*, 917 F.3d at 861. The district court denied that motion and declined to issue a certificate of appealability. *Id.* The Fifth Circuit also declined to issue a certificate of appealability, and the United States Supreme Court denied Mr. Robinson's petition for writ of certiorari. *Id.;  Robinson v. United States*, 565 U.S. 827 (2011).

### 3. Rule 60(b) Motion

In 2018, Mr. Robinson filed a motion for relief from judgment under Federal Rule of Civil Procedure Rule 60(b)(6) in his § 2255 litigation. *In re Robinson*, 917 F.3d at 861. In the motion, Mr. Robinson argued that (1) both the district court and the Fifth Circuit "wrongly denied his ability to appeal" because the courts "applied an erroneously high standard for obtaining a

7

[COA]," (2) that the district court prevented him from conducting a reasonable investigation, and (3) that the district court erred when it denied his right to amend his § 2255 motion to include his defective-indictment claim. *Id.* The district court construed the motion as an unauthorized successive § 2255 motion and transferred it to the Fifth Circuit. *Id.* The Fifth Circuit denied Mr. Robinson leave to file a successive § 2255 motion, and the United States denied his petition for writ of certiorari. *Id.* at 870; *Robinson v. United States*, 140 S. Ct. 1128 (2020).

### 4. § 2241 Petition

In 2020, Mr. Robinson filed a 28 U.S.C. § 2241 petition for a writ of habeas corpus in this Court. The petition raises five claims:

1. the trial court lacked jurisdiction over any death-eligible offenses because they were not charged in the indictment;

2. the prosecutor presented false and misleading evidence, and trial counsel was ineffective for failing to challenge it;

3. counsel was ineffective for failing to challenge racially motivated peremptory strikes on appeal;

4. trial counsel was ineffective at the penalty phase; and

5. Mr. Robinson's convictions and sentences should be vacated based on violations of the American Declaration of the Rights and Duties of Man.

Dkt. 4 at 28–161.[1]

After the Court denied the government's motion to dismiss, dkt. 22, the government filed a response to the § 2241 petition, arguing that the Court has

---

[1] Where the parties' page numbering is inconsistent with CM-ECF page numbering, this Order refers to the CM-ECF page numbers.

no jurisdiction to adjudicate most of Mr. Robinson's claims and that all the claims lack merit, dkt. 27.  Mr. Robinson filed a reply.  Dkt. 31.  After the petition was fully briefed, Mr. Robinson filed a notice of supplemental authority arguing that his petition is not subject to dismissal under *Jones v. Hendrix*, 599 U.S. 465 (2023).  Dkt. 33.

## II.

## Applicable Law

The Court begins its analysis by examining the statutory framework governing federal prisoners' collateral attacks on their convictions or sentences.  It then discusses Seventh Circuit precedent involving the narrow scope of claims that could proceed under the saving clause, and the recent Supreme Court opinion in *Jones v. Hendrix* which further narrowed the scope of available claims.  The Court then addresses Mr. Robinson's arguments that he is entitled to have the Court consider the merits of his claims under § 2241.

### A. Statutory Framework

The primary vehicle for a collateral attack on a federal conviction or sentence is a motion in the sentencing court pursuant to 28 U.S.C. § 2255.  *Shepherd v. Krueger*, 911 F.3d 861, 862 (7th Cir. 2018).  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Congress placed limitations on a federal prisoner's ability to bring a § 2255 action.  First, such action can only be brought in the court which imposed the sentence.  28 U.S.C. § 2255(a).  Second, a federal prisoner is limited to bringing one § 2255 motion,

9

unless the court of appeals for the district where the action is filed determines that a second or successive motion contains:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h).

Congress created within § 2255 a narrow exception to the "general rule" that requires a federal prisoner to bring a collateral attack under § 2255. A petitioner may seek relief by filing a § 2241 habeas corpus petition if "the remedy by motion is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). This provision is referred to as the "saving clause." *See Jones*, 599 U.S. at 471.

### B. Seventh Circuit Precedent Pre-*Jones*

Before June 2023, the Seventh Circuit and other courts had applied the saving clause to allow an individual to attack his conviction or sentence in a § 2241 petition if this vehicle was the only "reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." *In re Davenport*, 147 F.3d 605, 609 (7th Cir. 1998); *see Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015) (en banc) ("[T]here must be some

10

kind of structural problem with section 2255 before section 2241 becomes available.").

The Seventh Circuit had identified three sets of claims that satisfy § 2255(e)'s saving clause. *See Davenport*, 147 F.3d at 611–12 (claim based upon new statutory interpretation made retroactive by Supreme Court); *Webster*, 784 F.3d at 1140 (claim relying on newly available evidence that existed at the time of trial and could show that petitioner is categorically ineligible for death penalty); *Garza v. Lappin*, 253 F.3d 918, 920–21 (7th Cir. 2001) (claim based on ruling of international tribunal issued after petitioner's original § 2255 motion had been resolved). The Seventh Circuit later clarified that these categories did not "rigidly describe the outer limits" of claims that might satisfy the saving clause. *Purkey v. United States*, 964 F.3d 603, 611–12 (7th Cir. 2020).

### C. *Jones v. Hendrix*

In *Jones*, the Supreme Court held that "§ 2255(e)'s saving clause does not permit a prisoner asserting an intervening change in statutory interpretation to circumvent AEDPA's restrictions on a second or successive § 2255 motion by filing a § 2241 petition." 599 U.S. at 471. The Court thus abrogated *Davenport* and precedent from other circuits that had permitted petitioners to bring statutory claims under § 2241. The Court determined that both the text and structure of AEDPA demonstrate that § 2255(e) does not expand § 2255(h)'s narrow exceptions for when a petitioner may bring a second or successive collateral attack on his conviction or sentence:

11

> We now hold that the saving clause does not authorize such an end-run around AEDPA. In § 2255(h), Congress enumerated two—and only two—conditions in which a second or successive § 2255 motion may proceed. Because § 2255 is the ordinary vehicle for a collateral attack on a federal sentence, the straightforward negative inference from § 2255(h) is that **a second or successive collateral attack on a federal sentence is not authorized unless one of those two conditions is satisfied**. . . . The saving clause does not undermine this strong negative inference.

*Jones*, 599 U.S. at 477–78 (emphasis added).

Thus, if § 2255(h) is the only obstacle to a petitioner bringing a collateral attack on his conviction or sentence in a § 2255 motion, then § 2255(e) does not permit the petitioner to instead bring the collateral attack in a § 2241 petition. *Jones*, 599 U.S. at 478 ("Basic principles of statutory interpretation require that we construe the saving clause and § 2255(h) in harmony, not set them at cross-purposes."); *see Voneida v. Johnson*, 88 F.4th 233, 237 (3d Cir. 2023) ("§ 2255(h) 'specifies the two circumstances under which a second or successive collateral attack on a federal sentence' via § 2241 'is available. . . .'").

As the Court explained in *Jones*, a § 2241 petition may be used for a collateral attack on a sentence or conviction only "in cases where unusual circumstances make it impossible or impracticable to seek relief in the sentencing court." *Jones*, 599 U.S. at 478. The Court observed that "[t]he clearest such circumstance is the sentencing court's dissolution; a motion in a court that no longer exists is obviously 'inadequate or ineffective' for any purpose." *Id.* at 474 (citing cases where court-martial, the District Court of the Canal Zone, and an Alaska territorial court were dissolved). As another

example, "[t]he saving clause might also apply when 'it is not practicable for the prisoner to have his motion determined in the trial court because of his inability to be present at the hearing, or for other reasons." *Id.* at 475.

Finally, the Court observed that, "AEDPA's second-or-successive restrictions . . . embody Congress' judgment regarding the central policy question of postconviction remedies—the appropriate balance between finality and error correction." *Id.* at 491.

### III.
### Discussion

This Court lacks jurisdiction to adjudicate Mr. Robinson's § 2241 petition because Mr. Robinson cannot satisfy the saving clause. He sets forth several arguments for doing so, but none is persuasive.

**A.  Adequacy and Effectiveness of § 2255 for Persons Challenging Death Sentences in the Fifth Circuit**

Mr. Robinson contends that § 2255 is inadequate or ineffective to test the legality of his detention because he was forced to litigate his § 2255 motion in the Fifth Circuit, which he contends does not afford adequate or effective process to § 2255 petitioners who face death sentences. Dkt. 4 at 14−27; dkt. 31 at 9 (arguing that "courts in the Fifth Circuit, both systemically and specifically in his case, deny petitioners a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of their conviction and sentence" (cleaned up)).

In support of this argument, Mr. Robinson cites his own analysis of capital § 2255 proceedings in the Fifth Circuit. Dkt. 4 at 15−22. For example,

13

Mr. Robinson asserts that of the 39 federal prisoners whose convictions and death sentences were affirmed on direct appeal and whose § 2255 motions have been processed through appeal, 31 of the 39 (approximately 80%) were granted evidentiary hearings in the district court and/or a certificate of appealability.  *Id.* at 16-17.  The final eight were provided neither, and seven of those eight were individuals sentenced to death in the Fifth Circuit.  *Id.* at 17.  He also cites a statement regarding the denial of certiorari from a Fifth Circuit § 2255 decision, where Justice Sotomayor criticized the Fifth Circuit's Rule 60(b)(6) jurisprudence.  Dkt. 4 at 27; *Crutsinger v. Davis,* 140 S. Ct. 2 (2019) (Sotomayor, J., respecting the denial of certiorari).  But even if courts in the Fifth Circuit were sufficiently out of step with other courts as to call into doubt the procedures afforded to § 2255 petitioners—and this Court makes no such finding—a § 2241 petition would not be the vehicle to resolve the issue.  *Vialva v. Watson,* 975 F.3d 664, 666 (7th Cir. 2020) ("[A] § 2241 proceeding is not an authorized way to contest the procedure the Fifth Circuit used."); *see also Von Kahl v. Segal,* 19 F.4th 987, 988 (7th Cir. 2021) ("Section 2241 is not a means to get a second opinion in a different circuit.").

     Mr. Robinson attempts to distinguish *Vialva* by noting that he, unlike the petitioner in *Vialva,* alleges a systemic lack of process in the Fifth Circuit, not just an individual lack of process.  Dkt. 31 at 13 ("Robinson does not simply argue that the Fifth Circuit erroneously denied him a COA and therefore he is entitled to Section 2241 review; rather, Robinson establishes that the Fifth

14

Circuit routinely misapplies the COA standard generally, thereby depriving post-conviction litigants, including himself, of meaningful appellate review.").

But the reasoning in *Vialva* applies equally to Mr. Robinson's argument. Regardless of whether the error is isolated or systemic, it is not this Court's role to review the Fifth Circuit's processes. *See Vialva*, 975 F.3d at 666 ("[W]e do not sit in judgment on the decisions of our sister circuits. That power belongs to the Supreme Court."). Further, the argument that § 2241 should be available if the § 2255 court misapplies substantive law was considered and rejected by the Court in *Jones*:

> This argument ignores that the saving clause is concerned with the adequacy or effectiveness of the remedial *vehicle* . . ., not any court's asserted errors of law. . . . Even when *circuit law* is inadequate or deficient because a Court of Appeals' precedents have resolved a legal issue incorrectly, that is not a fault in the § 2255 remedial vehicle itself.

599 U.S. at 480–81 (cleaned up, emphases in *Jones*).

Finally, setting aside Mr. Robinson's concerns about systemic deficiencies in the Fifth Circuit's handling of § 2255 capital cases, he has not shown that there was any structural problem with § 2255 when applied to the facts of his case. A structural problem requires "something more than a lack of success with a section 2255 motion." *Webster*, 784 F.3d at 1136. It must "foreclose[ ] even one round of effective collateral review, unrelated to the petitioner's own mistakes." *Poe v. LaRiva*, 834 F.3d 770, 772 (7th Cir. 2016) (internal quotation omitted).

15

Here, Mr. Robinson presented his jurisdictional challenge regarding the

indictment on direct appeal and six issues in his § 2255 motion (including an

ineffective assistance of counsel claim with many subparts).  Further, the

district court explained that, while it did not hold an evidentiary hearing, it

treated Mr. Robinson's factual assertions as true or based on legal rather than

factual bases.  *Robinson*, 2008 WL 4906272, at *25.  The district court

thoroughly explained why it rejected each of Mr. Robinson's claims presented

in his motion.  *Id.* at *8–24.  Mr. Robinson's subsequent challenges to the

adequacy of the § 2255 proceedings were raised and rejected by both the

district court and the Fifth Circuit.  The Supreme Court declined to hear Mr.

Robinson's case on three separate occasions.  Thus, the record demonstrates

that Mr. Robinson had "a reasonable opportunity in a prior § 2255 proceeding

to obtain a reliable judicial determination of the fundamental legality of his

conviction and sentence."  *Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019)

(cleaned up).  This is not an "unusual circumstance[ ] in which it [was]

impossible or impracticable" for Mr. Robinson to obtain relief in the sentencing

court.  *Jones*, 599 U.S. at 474.

## B.    Trial Court's Jurisdiction over Capital Charges

Mr. Robinson contends that because his indictment did not include

aggravating factors as required for imposition of a death sentence, the trial

court lacked jurisdiction to adjudicate the charges for which he was sentenced

to death.  Dkt. 4 at 28–35.  He argues that this claim satisfies § 2255(e)

because (1) § 2255(h) prevents him from raising the claim in a successive

16

§ 2255 motion and (2) his claim challenges the sentencing court's jurisdiction. Dkt. 4 at 38–43; dkt. 33 at 3.

Neither of these arguments provides a basis for jurisdiction over the § 2241 petition. Section 2255(h) allows a petitioner to bring a successive § 2255 motion in two situations. *Jones* makes clear that where § 2255(h) is the only barrier to raising the claim in a § 2255 motion, the saving clause does not open the door to bringing the claim in a § 2241 petition. 599 U.S. at 478; *see Voneida*, 88 F.4th at 237–38.

Here, Mr. Robinson contends that *Jones* left open the possibility of bringing a § 2241 petition alleging that the sentencing court lacked jurisdiction. Dkt. 33 at 3. But *Jones* explained that, so long as judgment was imposed by a court with "general criminal jurisdiction," a traditional habeas corpus court "had no power to look beyond the judgment to re-examine the charges on which it was rendered for substantive errors of law." 599 U.S. at 483 (cleaned up). Mr. Robinson does not contend that the sentencing court here lacked general criminal jurisdiction. He has therefore failed to demonstrate that he may circumvent the statutory limits on § 2255 motions by bringing his claim in a § 2241 petition.

**C.   Newly Discovered Evidence and Ineffective Assistance of Counsel**

Mr. Robinson contends that some of his ineffective assistance of counsel claims satisfy the saving clause because the supporting evidence was either unavailable or excluded from his § 2255 proceedings. Dkt. 4 at 78–80, 95–98, 153–60. Much of this argument overlaps with Mr. Robinson's arguments

17

about systemic lack of process in the Fifth Circuit and its district courts. To the extent Mr. Robinson relies on the path outlined in *Webster*—newly available evidence showing the petitioner is categorically ineligible for the death penalty—he still fails to satisfy the saving clause.

Section 2255(h)(1) sets statutory limits on the types of newly discovered evidence claims that can be brought in a second or successive collateral attack on a conviction or sentence. If Mr. Robinson can satisfy § 2255(h)(1), he may seek leave from the Fifth Circuit to file a successive § 2255 motion. But as nothing other than § 2255(h) bars him from bringing the claim in a § 2255 motion, he may not bring it in a § 2241 petition. *Jones*, 599 U.S. at 480 ("The inability of a prisoner . . . to satisfy [§ 2255(h)] does not mean that he can bring his claim in a habeas petition under the saving clause. It means that he cannot bring it at all. Congress has chosen finality over error correction in his case.").

### D. The American Declaration of the Rights and Duties of Man

Before *Jones*, the Seventh Circuit held that a petitioner whose claim was based on violations of international law that could not have been raised on direct appeal or in the petitioner's initial § 2255 motion could bring the claim in a § 2241 petition. *Garza*, 253 F.3d at 923.

As Mr. Robinson points out, dkt. 33 at 4, *Jones* did not expressly abrogate *Garza*. Still, *Jones* leaves no room for *Garza*'s application of the saving clause. In *Garza*, the Seventh Circuit—relying heavily on *Davenport*—held that because the petitioner could not have brought his claim on direct appeal or in his original § 2255 motion, and because § 2255(h) barred the

18

petitioner from bringing his claim in a successive motion, the saving clause permitted him to bring it in a § 2241 petition. *Garza*, 253 F.3d at 923. That is not enough after *Jones*. A petitioner's inability to satisfy § 2255(h) means that he cannot bring a second or successive[2] challenge to his conviction or sentence, either in a § 2255 motion or in a § 2241 petition.[3] *Jones*, 599 U.S. at 478; *see Voneida*, 88 F.4th at 237–38.

## IV.
## Conclusion

Mr. Robinson has not satisfied § 2255(e)'s saving clause, so this Court lacks jurisdiction to review the merits of his arguments challenging his conviction and sentence. The § 2241 petition is therefore **DISMISSED** for lack of jurisdiction. Final judgment shall now issue.

**SO ORDERED.**

Date: 9/30/2024

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

---

[2] Whether Mr. Robinson could now raise his treaty claim in an "original" § 2255 motion is a question for the sentencing court. *See Garza*, 253 F.3d at 923–24 (questioning whether Garza's petition was truly "second or successive" for purposes of § 2255(h), but deferring to the law of the case and not resolving the question independently).

[3] Because the Court does not have jurisdiction to adjudicate any of Mr. Robinson's claims, it need not resolve the parties' dispute about whether a court has jurisdiction over an entire § 2241 petition that satisfies the saving clause as to only one claim. *See* dkt. 4 at 161; dkt. 27 at 32–40.