

# UNITED STATES DISTRICT COURT
## Southern District of Indiana

**Kristine L. Seufert, Clerk of Court**

| | | | |
|---|---|---|---|
| Birch Bayh Federal Building<br>& U.S. Courthouse, Room 105<br>46 East Ohio Street<br>Indianapolis, IN 46204<br>(317) 229-3700 | U.S. Courthouse, Room 104<br>921 Ohio Street<br>Terre Haute, IN 47807<br>(812) 231-1840 | Winfield K. Denton Federal Building<br>& U. S. Courthouse, Room 304<br>101 NW Martin Luther King Blvd.<br>Evansville, IN 47708<br>(812) 434-6410 | Lee H. Hamilton Federal Building<br>& U.S. Courthouse, Room 210<br>121 West Spring Street<br>New Albany, IN 47150<br>(812) 542-4510 |

November 8, 2024

Jonathan C. Aminoff
OFFICE OF THE FEDERAL PUBLIC DEFENDER
321 E. 2nd Street
Los Angeles, CA 90012

Jonathan Glen Bradshaw
DEPARTMENT OF JUSTICE
1100 Commerce Street
Suite 300
Dallas, TX 75242

RE:  JULIUS OMAR ROBINSON v. WARDEN

CAUSE NO:  2:20-cv-00640-JPH-MG

Dear Appellant and Appellee:

Please be advised that the Notice of Appeal filed in 2:20-cv-00640-JPH-MG has been forwarded to the United States Court of Appeals for the Seventh Circuit. The Clerk of the Seventh Circuit will assign an appellate case number, docket the appeal, and notify case participants of the Seventh Circuit case number assigned to this matter.

Please review Seventh Circuit Rule 10 (enclosed) for guidance regarding record preparation.

Please contact the Clerk's office with any questions or concerns.

Sincerely,
Kristine L. Seufert
Clerk of Court

By Karen Angermeier, Deputy Clerk
8122311842

## <u>Selected Rules for Reference</u>

**CIRCUIT RULE 10. Preparation and Accessibility of Record in District Court Appeals**

**(a) Record Preparation Duties.**

   **(1) Within 14 days of filing the notice of appeal the district court must ensure the district court docket is complete and made available electronically to the court of appeals.**

   **(2) The clerk of the district court must prepare and hold any confidential record or exhibit not available electronically on the district court docket until requested by the court of appeals.**

   **(3) Counsel must ensure, within 21 days of filing the notice of appeal, that all electronic and non electronic documents necessary for review on appeal are on the district court docket.**

   (b) *Correction or Modification of Record.* A motion to correct or modify the record pursuant to Rule 10(e), Fed. R. App. P., or a motion to strike matter from the record on the ground that it is not properly a part thereof must be presented first to the district court. That court's order ruling on the motion must be included as part of the record and a notice of the order must be sent to the court of appeals.

   (c) *Order or Certification with Regard to Transcript.* Counsel and court reporters are to utilize the form prescribed by this court when ordering transcripts or certifying that none will be ordered. For specific requirements, see Rules 10(b) and 11(b), Fed. R. App. P.

   (d) *Ordering Transcripts in Criminal Cases.*

   (1) *Transcripts in Criminal Justice Act Cases.* At the time of the return of a verdict of guilty or, in the case of a bench trial, an adjudication of guilt in a criminal case in which the defendant is represented by counsel appointed under the Criminal Justice Act (C.J.A.), counsel for the defendant must request a transcript of testimony and other relevant proceedings by completing a C.J.A. Form No. 24 and giving it to the district judge. If the district judge believes an appeal is probable, the judge must order transcribed so much of the proceedings as the judge believes necessary for an appeal. The transcript must be filed with the clerk of the district court within 40 days after the return of a verdict of guilty or, in the case of a bench trial, the adjudication of guilt or within seven days after sentencing, whichever occurs later. If the district judge decides not to order the transcript at that time, the judge must retain the C.J.A. Form No. 24 without ruling. If a notice of appeal is filed later, appointed counsel or counsel for a defendant allowed after trial to proceed on appeal in forma pauperis must immediately notify the district judge of the filing of a notice of appeal and file or renew the request made on C.J.A. Form No. 24 for a free transcript.

   (2) *Transcripts in Other Criminal Cases.* Within 14 days after filing the notice of appeal in other criminal cases, the appellant or appellant's counsel must deposit with the court reporter the estimated cost of the transcript ordered pursuant to Rule 10(b), Fed. R. App. P., unless the district court orders that the transcript be paid for by the United States. A non-indigent appellant must pay a pro rata share of the cost of a transcript prepared at the request of an indigent co-defendant under the Criminal Justice Act unless the district court determines that fairness requires a different division of the cost. Failure to comply with this paragraph will be cause for dismissal of the appeal.

   (e) *Indexing of Transcript.* The transcript of proceedings to be part of the record on appeal (and any copies prepared for the use of the court or counsel in the case on appeal) must be bound by the reporter, with the pages consecutively numbered throughout. The transcript of proceedings must contain a suitable index, as well as the following information:

(1) An alphabetical list of witnesses, giving the pages on which the direct and each other examination of each witness begins.

(2) A list of exhibits by number, with a brief description of each exhibit indicating the nature of its contents, and with a reference to the pages of the transcript where each exhibit has been identified, offered, and received or rejected.

(3) A list of other significant portions of the trial such as opening statements, arguments to the jury, and instructions, with a reference to the page where each begins.

When the record includes transcripts of more than one trial or other distinct proceeding, and it would be cumbersome to apply this paragraph to all the transcripts taken together as one, the rule may be applied separately to each transcript of one trial or other distinct proceeding.

(f) *Presentence Reports.* The presentence report is part of the record on appeal in every criminal case. The district court must maintain this report under seal, unless it has already been placed in the public record in the district court. If the report is under seal, the report may not be included in the appendix to the brief or the separate appendix under Fed. R. App. P. 30 and Circuit Rule 30. Counsel of record may review the presentence report but may not review the probation officer's written comments and any other portion submitted in camera to the trial judge.

(g) *Effect of Omissions from the Record on Appeal.* When a party's argument is countered by a contention of waiver for failure to raise the point in the trial court or before an agency, the party opposing the waiver contention must give the record cite where the point was asserted and also ensure that the record before the court of appeals contains the relevant document or transcript.

NOTE:   The complete Federal Rules of Appellate Procedure & Rules of the 7th Circuit Court of Appeals are available at: http://www.ca7.uscourts.gov/Rules/Rules/rules.pdf

## THE SETTLEMENT CONFERENCE PROGRAM
## U.S. COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Pursuant to Rule 33 of the Federal Rules of Appellate Procedure[1] and Circuit Rule 33, the Court conducts conferences with counsel and clients to encourage and facilitate the settlement of civil appeals. Rule 33 conferences are conducted in all types of fully-counseled civil appeals except immigration, social security, habeas corpus, prisoners' civil rights, sentencing, and mandamus cases. The Court spontaneously notices most eligible appeals for Rule 33 conferences. Attorneys for one or more parties may also request that a conference be conducted in any eligible case.

Counsel and clients are well-advised to explore opportunities for settlement at the appellate level.Regardless of how unlikely it may seem, the fact is that many cases can be settled at this stage, substituting a certain and acceptable outcome for the risk and expense of further litigation. The Court's Settlement Conference Office has assisted counsel in settling many appeals without unduly delaying the progress of those appeals which do not yield to settlement efforts.     The following information is intended to assist practitioners and their clients in understanding how the Seventh Circuit's settlement conference program works and how they can make the best use of it to achieve favorable results.

- **How do counsel learn that a Rule 33 conference will be conducted in their appeal?**
  A Notice of Rule 33 Settlement Conference is posted on the docket. The Notice is an order of the Court advising counsel of the date and time of the conference, whether it is to be in person or by telephone, and how they and their clients are expected to prepare.

- **How can a Rule 33 conference be requested?**
  Counsel are invited to request a Rule 33 conference by contacting the Settlement Conference Office, U.S. Court of Appeals for the Seventh Circuit, 219 S. Dearborn, Room 1120, Chicago, Illinois 60604-1705 (Tel. (312) 435-6883/Fax (312) 435-6888/E-mail: settlement@ca7.uscourts.gov ). At the request of any party or parties in an eligible appeal, the Settlement Conference Office will schedule a Rule 33 conference if its calendar permits. Counsel are then advised by notice that a conference will be held.

- **Do other parties have to be informed that a conference was requested?**
  No. If a party prefers to keep its request confidential, the Settlement Conference Office will not disclose to other parties or to the Court that the conference was requested.

- **Is participation in Rule 33 conferences optional?**
  No. When a Rule 33 conference is scheduled, participation is mandatory.

- **Are clients required to attend?**
  Clients and insurance representatives are required to attend Rule 33 conferences whenever the Settlement Conference Office so directs. When clients or insurance representatives have not been directed to attend the initial conference, they must be available by phone – with full settlement authority – for the duration of the conference.

- **Is it mandatory to settle?**
  No. Whether to settle is ultimately for the parties and their counsel to decide. However, counsel and parties are required to participate with the utmost diligence and good faith. Experience shows that settlements can often be achieved when neither side thought it possible.

---

[1] FRAP Rule 33 provides: "Appeal Conferences. The Court may direct the attorneys, and in appropriate cases the parties, to participate in one or more conferences to address any matter that may aid in the disposition of the proceedings, including the simplification of the issues and the possibility of settlement. A conference may be conducted in person or by telephone and be presided over by a judge or other person designated by the court for that purpose. Before a settlement conference, attorneys must consult with their clients and obtain as much authority as feasible to settle the case. As a result of a conference, the court may enter an order controlling the course of the proceedings or implementing any settlement agreement."

- **Who conducts Rule 33 conferences?**
  The Court has delegated the responsibility for conducting Rule 33 conferences to three full-time conference attorneys: Joel N. Shapiro, Rocco J. Spagna, and Jillisa Brittan. All were civil litigators in private practice prior to their appointment by the Court.

- **Is there a fee for the services of the conference attorney?**
  No. The assistance of the Settlement Conference Office is available to appellate litigants at no charge.

- **Must each party's lead attorney attend the Rule 33 conference?**
  Yes. It is essential that each party be represented at the Rule 33 conference by an attorney who not only is conversant with the case but is the attorney on whose advice the party relies. If more than one attorney meets these criteria, either of them may represent the client in the Rule 33 conference.

- **How is it decided whether a Rule 33 conference will be conducted by telephone or in person?**
  When all participants reside in the Chicago metropolitan area, Rule 33 conferences are usually held in the Settlement Conference Office at the United States Courthouse. Otherwise, conferences are generally conducted by telephone. The telephone equipment used in these conferences can accommodate more than a dozen separate lines and enables the conference attorney to speak privately with any combination of participants. Experience indicates that telephone conferences are generally as effective as in-person conferences in fostering settlements.

- **Are in-person conferences ever held outside Chicago?**
  Because the resources of the settlement conference program are limited, in-person conferences cannot routinely be held throughout the Circuit. However, from time to time in-person conferences are conducted at locations other than Chicago. If the participants believe that an in-person conference outside Chicago would be more productive than a conference by telephone, they are welcome to suggest it.

- **Are Rule 33 conferences confidential?**
  Yes. The Court requires all participants to keep what is said in these conferences strictly confidential. Communications, oral and written, which take place in the course of Rule 33 proceedings may not be disclosed to anyone other than the litigants, their counsel, and the conference attorney.

- **Do judges of the Court of Appeals learn what has happened at a Rule 33 conference?**
  No. Participants in Rule 33 conferences, including the conference attorney, are forbidden to impart to any judge or other court personnel, in the Court of Appeals or elsewhere, what has been communicated in these conferences.

- **What occurs at a Rule 33 conference?**
  Rule 33 conferences are official proceedings of the Court but are off-the-record and relatively informal. Discussion is conversational rather than argumentative. The focus is on realistically assessing the prospects of the appeal, the risks and costs of further litigation, the interests of the parties, and the benefits each side can gain through settlement. The conference attorney ordinarily meets with counsel both together and separately. Settlement proposals are discussed. A resolution may or may not be reached during the initial conference. Often, follow-up conferences or shuttle negotiations are conducted. Letters or draft proposals may be exchanged. By the conclusion of the Rule 33 process, the parties will have either reached an agreement to settle or learned how far apart they are and what are the remaining obstacles to settlement.

- **Is discussion of settlement limited to the appeal itself?**
  Not necessarily. If settlement of the appeal will not dispose of the entire case, or if related litigation is pending in other forums, the parties are invited and encouraged to explore the possibility of a global settlement.

- **Is briefing deferred when a Notice of Rule 33 Conference is issued?**
  Briefing is usually postponed until after the initial conference. If further modification of the briefing schedule would be conducive to settlement, an order to that effect may later be entered. What preparation is required of

counsel? In preparation for the initial Rule 33 conference, attorneys are required to consult rigorously with their clients and obtain as much authority as feasible to settle the case. Counsel must also review their legal and factual contentions with a view to being able to discuss candidly the prospects of the appeal and the case as a whole. If the conference attorney requests copies of pleadings, hearing transcripts, or other material in anticipation of the conference, counsel are expected to provide it promptly.

- **What is the role of the conference attorney?**
  Because the format of Rule 33 conferences is flexible and each appeal is dealt with on its own terms, the conference attorney plays a variety of roles. He or she acts as moderator, facilitator, and intermediary. The conference attorney serves as a neutral evaluator and a reality check. He or she may suggest terms of settlement. Without being coercive, the conference attorney acts as a determined advocate for settlement.

- **What can counsel expect of the conference attorney**?
  Before the initial conference, the conference attorney will have familiarized him or herself with the history of the litigation, the posture of the case, and the issues on appeal. During the conference, the conference attorney will seek additional information about the background of the dispute and the parties' interests, claims and defenses in order to explore all possibilities for a voluntary resolution. The conference attorney is strictly impartial. He or she does not advocate for any party and avoids making comments that could advantage one side or another in arguing the issues on appeal. The conference attorney will disclose any affiliation or prior representation of which he or she is aware that could call his or her neutrality into question. The conference attorney does not force any party to settle or to accept terms it is not willing to accept. While he or she urges parties to take advantage of opportunities to settle favorably, the conference attorney recognizes that settlement is not always possible.

- **How can counsel make best use of the Rule 33 conference to benefit their clients?**
  Recognize that the Rule 33 conference is an opportunity to achieve a favorable outcome for your client. Without laying aside the advocate's responsibility, approach the conference as essentially cooperative rather than adversarial. Help your client make settlement decisions based not on overconfidence or wishful thinking, but on a realistic assessment of the case; not on emotion, however justified it may be, but on rational self-interest. Suggest terms of settlement that maximize the benefits of settlement for all parties. Take advantage of the opportunity to talk confidentially and constructively with counsel for the other parties and, if clients are present, to address them respectfully but convincingly. Let the conference attorney know how he or she can help you obtain a satisfactory resolution. Be candid. Don't posture. Listen closely to what other participants have to say. Give the process a chance to work.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JULIUS OMAR ROBINSON,<br><br>Petitioner<br><br>v.<br><br>T.J. WATSON, WARDEN,<br>FEDERAL CORRECTIONAL<br>COMPLEX (FCC) TERRE HAUTE;<br>UNITED STATES OF AMERICA,<br><br>Respondents. | **CAPITAL CASE**<br><br>Case No. 20-cv-00640-JPH-DLP |

## NOTICE OF APPEAL

CUAUHTEMOC ORTEGA (No. 257443)
Federal Public Defender
JONATHAN C. AMINOFF
(Cal. Bar No. 259290)
(E-Mail: jonathan_aminoff@fd.org)
MICHAEL B. PETERSEN
(Cal. Bar No. 311729)
(E-Mail: michael_petersen@fd.org)
Deputy Federal Public Defenders
Office of the Federal Public Defender
321 East Second Street
Los Angeles, California 90012
Telephone:  (213) 894-2854
Facsimile:  (213) 894-0081
Attorneys for Petitioner

Attorneys for Petitioner
**JULIUS OMAR ROBINSON**

PLEASE TAKE NOTICE that Petitioner, Julius Omar Robinson, by his undersigned counsel, hereby appeals to the United States Court of Appeals for the Seventh Circuit from the Opinion and Order of the District Court, Hon. James Patrick Hanlon, United States District Judge, denying Petitioner's Petition for Writ of Habeas Corpus, and judgment thereon, entered on September 30, 2024. (Dkts. 34 & 35).

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

Dated: November 8, 2024      By */s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
MICHAEL PETERSEN
Deputy Federal Public Defenders
Office of the Federal Public Defender
Central District of California
321 E. 2nd Street
Los Angeles, CA 90012
Telephone:  (213) 894-5374
Facsimile:  (213) 894-0310
jonathan_aminoff@fd.org
michael_petersen@fd.org
Attorneys for Julius Omar Robinson

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Indiana using the CM/ECF system on November 8, 2024. I certify that all the participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: November 8, 2024          By /s/ Jonathan C. Aminoff
                                     JONATHAN C. AMINOFF
                                     MICHAEL PETERSEN
                                     Deputy Federal Public Defenders
                                     Office of the Federal Public Defender
                                     Central District of California
                                     321 E. 2nd Street
                                     Los Angeles, CA 90012
                                     Telephone: (213) 894-5374
                                     Facsimile: (213) 894-0310
                                     jonathan_aminoff@fd.org
                                     michael_petersen@fd.org
                                     Attorneys for Julius Omar Robinson

3

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JULIUS OMAR ROBINSON,<br><br>                Petitioner<br><br>     v.<br><br>T.J. WATSON, WARDEN,<br>FEDERAL CORRECTIONAL<br>COMPLEX (FCC) TERRE HAUTE;<br>UNITED STATES OF AMERICA,<br><br>                Respondents. | **CAPITAL CASE**<br><br>Case No. 20-cv-00640-JPH-DLP |

**DOCKETING STATEMENT**

Pursuant to Rules 3(c)(1) and 28(a) of the Circuit Rules for the United States Court of Appeals for the Seventh Circuit, Petitioner-Appellant Julius Omar Robinson hereby submits his Docketing Statement:

(1) The jurisdiction of the United States District Court for the Southern District of Indiana in the above-captioned matter is based upon 28 U.S.C. § 2241.

(2) The United States Court of Appeals for the Seventh Circuit has appellate jurisdiction over this matter pursuant to 28 U.S.C. § 2253(a),

1

in that this is an appeal from a final judgment and order in a habeas corpus proceeding. The order sought to be reviewed, and judgment thereon, were entered on September 30, 2024 (Dkts. 34 & 35). The Notice of Appeal in this matter was filed on November 8, 2024.

This appeal is from a final judgment.

(4) There are no prior related appellate proceedings

(5) There is no prior litigation in the district court.

(6) Mr. Robinson is currently confined at the United States Penitentiary at Terre Haute, Indiana.

///

(7) This appeal does not require a certificate of appealability. 28 U.S.C. § 2253; Fed. R. App. P. 22(b); *Bush v. Pitzer*, 133 F.3d 455, 456 (7th Cir. 1997) (certificate of appealability not required for federal prisoner appealing denial of writ of habeas corpus under 28 U.S.C. § 2241; "Under 28 U.S.C. § 2253(c)(1)(B), a federal prisoner needs a certificate of appealability only when appealing from the denial of relief under 28 U.S.C. § 2255.")

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

Dated: November 8, 2024      By */s/ Jonathan C. Aminoff*
                             JONATHAN C. AMINOFF
                             MICHAEL PETERSEN
                             Deputy Federal Public Defenders
                             Office of the Federal Public Defender
                             Central District of California
                             321 E. 2nd Street
                             Los Angeles, CA 90012
                             Telephone:  (213) 894-5374
                             Facsimile:  (213) 894-0310
                             jonathan_aminoff@fd.org
                             michael_petersen@fd.org
                             Attorneys for Julius Omar Robinson

3

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Indiana using the CM/ECF system on November 8, 2024. I certify that all the participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: November 8, 2024     By */s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
MICHAEL PETERSEN
Deputy Federal Public Defenders
Office of the Federal Public Defender
Central District of California
321 E. 2nd Street
Los Angeles, CA 90012
Telephone:  (213) 894-5374
Facsimile:  (213) 894-0310
jonathan_aminoff@fd.org
michael_petersen@fd.org
Attorneys for Julius Omar Robinson

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JULIUS OMAR ROBINSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00640-JPH-MG |
| | ) | |
| WARDEN, et al. | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Julius Omar Robinson is a federal prisoner on death row. After a jury found Mr. Robinson guilty, his convictions and sentence were affirmed on direct appeal, his § 2255 petition for post-conviction relief was denied and that decision was affirmed on appeal, and Mr. Robinson's petitions for certiorari to the United States Supreme Court were denied. Before the Court is Mr. Robinson's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. Mr. Robinson alleges that his convictions and sentence violate the Constitution, and that § 2255 is inadequate and ineffective to test the legality of his convictions and sentence. Because § 2255(e) precludes the Court from adjudicating the petition, it is **DISMISSED** for lack of jurisdiction.

**I.
Background**

**A. Mr. Robinson's Conviction at Trial and Direct Appeal**

**1. Trial proceedings**

While the details of Mr. Robinson's offenses of conviction are not relevant to the ultimate resolution of his legal claims, a brief summary is appropriate for

1

context. Mr. Robinson was indicted in the Northern District of Texas for numerous crimes related to drug trafficking, unlawful use of firearms, and murder. A jury found him guilty of having personally murdered two people: Johnny Lee Shelton, who Mr. Robinson murdered because he mistakenly believed that Mr. Shelton was responsible for an armed hijacking that cost him $30,000, and Juan Reyes, who Mr. Robinson murdered in retaliation for a fraudulent drug transaction that cost Mr. Robinson $17,000. *United States v. Robinson*, 367 F.3d 278, 282-83 (5th Cir. 2004). The jury also found Mr. Robinson guilty of being part of a conspiracy that was responsible for the murder of Rudolfo Resendez. *Id.* at 283; *see* dkt. 16 at 35–36.

The indictment charging Mr. Robinson did not allege any statutory aggravating factors required for death penalty eligibility. *Robinson*, 367 F.3d at 283 ("[T]he government concedes the indictment is constitutionally deficient because it fails to allege the statutory aggravating factors that make Robinson eligible for the death penalty."). Nevertheless, he received three death sentences for two counts of murder in the course of using or carrying a firearm during a drug trafficking crime and one count of murder while engaging in a continuing criminal enterprise. *Id.* at 282.

### 2. Direct Appeal

On direct appeal, Mr. Robinson argued, among other things, that his death sentences, combined with the omission of aggravating factors in his indictment, violated the Sixth Amendment. *Id.* at 284. The Fifth Circuit agreed that Mr. Robinson's indictment was deficient under *Ring v. Arizona*, 536 U.S.

2

584 (2002) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), but held that the error was not structural and was harmless beyond a reasonable doubt. *Robinson*, 367 F.3d at 285–89. In reaching that conclusion, the Court analyzed whether the two primary functions of an indictment—(1) that the indictment provided requisite notice of the crime for which the defendant had been charged, and (2) that the public is involved in "the charging decision, such that a defendant is not subject to jeopardy for a crime alleged only by the prosecution"—were met in this case. *Id.* at 287.

As to the first function, the Court concluded that Mr. Robinson received adequate notice because the government had filed notice under 18 U.S.C. § 3593(a) of intent to seek a death sentence four months before trial, and Mr. Robinson did not argue that the content or timing of the notice rendered him unable to prepare a defense. *Id.*

As to the second function, the Court applied the test announced in *Chapman v. California*, 386 U.S. 18, 23 (1967), which asked "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Id.* at 286–87. The Fifth Circuit concluded that the indictment error was harmless beyond a reasonable doubt. It explained:

> No categorical rule is needed to convince us that any rational grand jury would find probable cause to charge Robinson with at least one of the statutory aggravating factors omitted from his indictment. In addition to the petit jury's unanimous findings—which we consider to be, at minimum, persuasive evidence of how a grand jury would find—the evidence overwhelmingly shows that

3

there existed probable cause to charge Robinson with the aggravating factors used in his sentencing.

All three death sentences involved the aggravating factor that in the killings of Shelton and Reyes, Robinson "knowingly created a grave risk of death to one or more persons in addition to ... the victim." *Cf.* 18 U.S.C. § 3592(c)(5). Robinson killed Shelton by firing an AK–47 assault rifle from the window of a moving vehicle on a public highway, directly endangering Shelton's passenger and anyone else in range. The record also shows that in the course of killing Reyes, Robinson and his co-assailant managed to shoot Rodriguez three times and to fire enough times at Marques's car fleeing the scene to leave it riddled with bullets. All this took place in a residential neighborhood in close proximity to at least two adolescent eyewitnesses playing on a nearby porch, and across the street from a barbecue attended by at least ten people.

No rational grand jury would fail to find that this evidence constituted anything less than probable cause to believe that, in the course of committing each murder, Robinson created a grave risk of death to someone other than the victim. As a result, and beyond a reasonable doubt, the failure to charge those factors in an indictment did not contribute to Robinson's conviction or death sentence.

The United States Supreme Court denied Mr. Robinson's petition for writ of certiorari. *Robinson v. United States*, 543 U.S. 1005 (2004).

## B. Mr. Robinson's § 2255 Proceedings

### 1. Initial § 2255 Motion

In 2005, Mr. Robinson filed a 28 U.S.C. § 2255 motion challenging his convictions and sentences. *See In re Robinson*, 917 F.3d 856, 860 (5th Cir. 2019). In that motion, Mr. Robinson raised the following issues: (1) ineffective assistance of counsel during the penalty phase; (2) a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), to the prosecutor's use of peremptory challenges; (3) a claim that the Federal Death Penalty Act, as applied in Texas, violated the Equal Protection Clause; (4) a claim of ineffective

assistance of counsel on appeal; (5) a due process claim related to the prosecutor's alleged pursuit of inconsistent theories at seriatim capital trials; and (6) a due process claim related to the prosecutor's alleged use of false and misleading testimony during the penalty phase. *Id.* Mr. Robinson then tried to amend his motion to add a seventh ground of relief—a claim that the indictment was defective because the prosecutor failed to include aggravating factors for the capital charge. The district court denied permission to add that claim because it had been decided on direct appeal, but it permitted the amendment insofar as it allowed Mr. Robinson to "add documentary evidence and corresponding argument relating back to his original petition." *Id.*

The district court denied Mr. Robinson's request for an evidentiary hearing, finding that "the record before [it], including the exhibits submitted by Robinson with his motion, do[es] not create any contested fact issues that must be resolved in order to decide Robinson's claims." *Id.* In deciding Mr. Robinson's claims, the court assumed that Mr. Robinson's factual contentions were true, or that his claims were "based on legal, not factual bases." *Id.*

The district court denied the petition, finding that his claims lacked merit. *Robinson v. United States*, 2008 WL 4906272, at *8–25 (N.D. Tex. Nov. 7, 2008) (unreported). The court found that Mr. Robinson's ineffective assistance of trial counsel claims failed for the following reasons:

- Mr. Robinson's claim that trial counsel failed to hire a skilled investigator was contradicted by the fact that counsel retained an investigator with whom the team had worked on previous occasions, and that investigator interviewed Mr. Robinson and Mr. Robinson's suggested fact witnesses. Trial counsel then presented

5

testimony of those witnesses during the penalty phase at trial, *id.* at *9;

- The evidence that Mr. Robinson marshaled on post-conviction proceedings alleging that trial counsel was ineffective in his failure to investigate and rebut the government's evidence regarding future dangerousness was so contradictory that it would not have resulted in a different outcome at trial; nor did Mr. Robinson show that trial counsel handled the evidence that was presented unreasonably, *id.* at *9–11;

- Trial counsel's investigation of another aggravating factor—the attempted murder of Sarah Tucker—was not deficient where, despite Mr. Robinson's ultimate plea to a lesser count of "deadly conduct," Ms. Tucker testified at the trial that Mr. Robinson shot at her while she was in her vehicle, *id.* at *11–12;

- Trial counsel made a strategic decision not to hire a mitigation investigator where the investigation revealed no red flags that would cause them to delve further into Mr. Robinson's education background; Mr. Robinson's full-scale IQ of 107 belied his contention that counsel should have investigated his pesticide exposure and *in utero* exposure to drugs and alcohol or presented a mental health expert to testify about the impact that those exposures or Mr. Robinson's childhood had on his mental state, *id.* at *12-15;

- Trial counsel made a strategic decision not to investigate Mr. Robinson's social history more than they did because evidence about his gang involvement was more likely to alienate the jury, and, moreover, none of the information would have affected the outcome of the jury's sentencing decision, *id.* at *15–17, and;

- Trial counsel's decision not to raise a *Batson* challenge on appeal was not deficient because the prosecutor presented race-neutral reasons for striking three Black jurors, and thus the issue would not have prevailed on appeal, *id.* at *18–22.

The district court further held that Mr. Robinson's selective-prosecution claims—which argued that studies showed that the government impermissibly used ethnicity as a basis for seeking the death penalty against Black defendants—failed, as it had been previously rejected by the Fifth Circuit. *Id.*

6

at *22–23.  The court found that Mr. Robinson's claim that the prosecutor pursued fundamentally inconsistent theories at seriatim capital trials by arguing that Mr. Robinson was the leader and most culpable at his trial, while then arguing the same about his co-defendant L.J. Britt at his trial, was procedurally defaulted because it could have been raised on direct appeal.  *Id.* at * 23.  Finally, the district court concluded that Mr. Robinson failed to make a prima facie claim under *Giglio v. United States*, 405 U.S. 150 (1972) that the government knowingly used or failed to correct false testimony during the penalty-phase aggravating factor of future dangerousness.  *Id.* at *24.

### 2.    Motion for reconsideration

Mr. Robinson then filed a motion for reconsideration of the order denying the motion to vacate without an evidentiary hearing under Federal Rule of Civil Procedure 59(e).  *In re Robinson*, 917 F.3d at 861.  The district court denied that motion and declined to issue a certificate of appealability. *Id.* The Fifth Circuit also declined to issue a certificate of appealability, and the United States Supreme Court denied Mr. Robinson's petition for writ of certiorari.  *Id.; Robinson v. United States*, 565 U.S. 827 (2011).

### 3. Rule 60(b) Motion

In 2018, Mr. Robinson filed a motion for relief from judgment under Federal Rule of Civil Procedure Rule 60(b)(6) in his § 2255 litigation. *In re Robinson*, 917 F.3d at 861.  In the motion, Mr. Robinson argued that (1) both the district court and the Fifth Circuit "wrongly denied his ability to appeal" because the courts "applied an erroneously high standard for obtaining a

[COA]," (2) that the district court prevented him from conducting a reasonable investigation, and (3) that the district court erred when it denied his right to amend his § 2255 motion to include his defective-indictment claim. *Id.* The district court construed the motion as an unauthorized successive § 2255 motion and transferred it to the Fifth Circuit. *Id.* The Fifth Circuit denied Mr. Robinson leave to file a successive § 2255 motion, and the United States denied his petition for writ of certiorari. *Id.* at 870; *Robinson v. United States*, 140 S. Ct. 1128 (2020).

### 4. § 2241 Petition

In 2020, Mr. Robinson filed a 28 U.S.C. § 2241 petition for a writ of habeas corpus in this Court. The petition raises five claims:

1.  the trial court lacked jurisdiction over any death-eligible offenses because they were not charged in the indictment;

2.  the prosecutor presented false and misleading evidence, and trial counsel was ineffective for failing to challenge it;

3.  counsel was ineffective for failing to challenge racially motivated peremptory strikes on appeal;

4.  trial counsel was ineffective at the penalty phase; and

5.  Mr. Robinson's convictions and sentences should be vacated based on violations of the American Declaration of the Rights and Duties of Man.

Dkt. 4 at 28–161.[1]

After the Court denied the government's motion to dismiss, dkt. 22, the government filed a response to the § 2241 petition, arguing that the Court has

---

[1] Where the parties' page numbering is inconsistent with CM-ECF page numbering, this Order refers to the CM-ECF page numbers.

no jurisdiction to adjudicate most of Mr. Robinson's claims and that all the claims lack merit, dkt. 27. Mr. Robinson filed a reply. Dkt. 31. After the petition was fully briefed, Mr. Robinson filed a notice of supplemental authority arguing that his petition is not subject to dismissal under *Jones v. Hendrix*, 599 U.S. 465 (2023). Dkt. 33.

## II.

## Applicable Law

The Court begins its analysis by examining the statutory framework governing federal prisoners' collateral attacks on their convictions or sentences. It then discusses Seventh Circuit precedent involving the narrow scope of claims that could proceed under the saving clause, and the recent Supreme Court opinion in *Jones v. Hendrix* which further narrowed the scope of available claims. The Court then addresses Mr. Robinson's arguments that he is entitled to have the Court consider the merits of his claims under § 2241.

### A. Statutory Framework

The primary vehicle for a collateral attack on a federal conviction or sentence is a motion in the sentencing court pursuant to 28 U.S.C. § 2255. *Shepherd v. Krueger*, 911 F.3d 861, 862 (7th Cir. 2018). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Congress placed limitations on a federal prisoner's ability to bring a § 2255 action. First, such action can only be brought in the court which imposed the sentence. 28 U.S.C. § 2255(a). Second, a federal prisoner is limited to bringing one § 2255 motion,

9

unless the court of appeals for the district where the action is filed determines

that a second or successive motion contains:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h).

Congress created within § 2255 a narrow exception to the "general rule"

that requires a federal prisoner to bring a collateral attack under § 2255.  A

petitioner may seek relief by filing a § 2241 habeas corpus petition if "the

remedy by motion is inadequate or ineffective to test the legality of his

detention."  28 U.S.C. § 2255(e).  This provision is referred to as the "saving

clause."  *See Jones*, 599 U.S. at 471.

### B. Seventh Circuit Precedent Pre-*Jones*

Before June 2023, the Seventh Circuit and other courts had applied the

saving clause to allow an individual to attack his conviction or sentence in a

§ 2241 petition if this vehicle was the only "reasonable opportunity to obtain a

reliable judicial determination of the fundamental legality of his conviction and

sentence."  *In re Davenport*, 147 F.3d 605, 609 (7th Cir. 1998); *see Webster v.*

*Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015) (en banc) ("[T]here must be some

kind of structural problem with section 2255 before section 2241 becomes available.").

The Seventh Circuit had identified three sets of claims that satisfy § 2255(e)'s saving clause.  *See Davenport*, 147 F.3d at 611–12 (claim based upon new statutory interpretation made retroactive by Supreme Court); *Webster*, 784 F.3d at 1140 (claim relying on newly available evidence that existed at the time of trial and could show that petitioner is categorically ineligible for death penalty); *Garza v. Lappin*, 253 F.3d 918, 920–21 (7th Cir. 2001) (claim based on ruling of international tribunal issued after petitioner's original § 2255 motion had been resolved).  The Seventh Circuit later clarified that these categories did not "rigidly describe the outer limits" of claims that might satisfy the saving clause.  *Purkey v. United States*, 964 F.3d 603, 611–12 (7th Cir. 2020).

### C. *Jones v. Hendrix*

In *Jones*, the Supreme Court held that "§ 2255(e)'s saving clause does not permit a prisoner asserting an intervening change in statutory interpretation to circumvent AEDPA's restrictions on a second or successive § 2255 motion by filing a § 2241 petition."  599 U.S. at 471.  The Court thus abrogated *Davenport* and precedent from other circuits that had permitted petitioners to bring statutory claims under § 2241.  The Court determined that both the text and structure of AEDPA demonstrate that § 2255(e) does not expand § 2255(h)'s narrow exceptions for when a petitioner may bring a second or successive collateral attack on his conviction or sentence:

11

> We now hold that the saving clause does not authorize such an end-run around AEDPA.  In § 2255(h), Congress enumerated two—and only two—conditions in which a second or successive § 2255 motion may proceed. Because § 2255 is the ordinary vehicle for a collateral attack on a federal sentence, the straightforward negative inference from § 2255(h) is that **a second or successive collateral attack on a federal sentence is not authorized unless one of those two conditions is satisfied**. . . . The saving clause does not undermine this strong negative inference.

*Jones*, 599 U.S. at 477–78 (emphasis added).

Thus, if § 2255(h) is the only obstacle to a petitioner bringing a collateral attack on his conviction or sentence in a § 2255 motion, then § 2255(e) does not permit the petitioner to instead bring the collateral attack in a § 2241 petition.  *Jones*, 599 U.S. at 478 ("Basic principles of statutory interpretation require that we construe the saving clause and § 2255(h) in harmony, not set them at cross-purposes."); *see Voneida v. Johnson*, 88 F.4th 233, 237 (3d Cir. 2023) ("§ 2255(h) 'specifies the two circumstances under which a second or successive collateral attack on a federal sentence' via § 2241 'is available. . . .'").

As the Court explained in *Jones*, a § 2241 petition may be used for a collateral attack on a sentence or conviction only "in cases where unusual circumstances make it impossible or impracticable to seek relief in the sentencing court."  *Jones*, 599 U.S. at 478.  The Court observed that "[t]he clearest such circumstance is the sentencing court's dissolution; a motion in a court that no longer exists is obviously 'inadequate or ineffective' for any purpose."  *Id.* at 474 (citing cases where court-martial, the District Court of the Canal Zone, and an Alaska territorial court were dissolved).  As another

12

example, "[t]he saving clause might also apply when 'it is not practicable for the prisoner to have his motion determined in the trial court because of his inability to be present at the hearing, or for other reasons." *Id.* at 475.

Finally, the Court observed that, "AEDPA's second-or-successive restrictions . . . embody Congress' judgment regarding the central policy question of postconviction remedies—the appropriate balance between finality and error correction." *Id.* at 491.

### III.
### Discussion

This Court lacks jurisdiction to adjudicate Mr. Robinson's § 2241 petition because Mr. Robinson cannot satisfy the saving clause. He sets forth several arguments for doing so, but none is persuasive.

### A.    Adequacy and Effectiveness of § 2255 for Persons Challenging Death Sentences in the Fifth Circuit

Mr. Robinson contends that § 2255 is inadequate or ineffective to test the legality of his detention because he was forced to litigate his § 2255 motion in the Fifth Circuit, which he contends does not afford adequate or effective process to § 2255 petitioners who face death sentences. Dkt. 4 at 14–27; dkt. 31 at 9 (arguing that "courts in the Fifth Circuit, both systemically and specifically in his case, deny petitioners a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of their conviction and sentence" (cleaned up)).

In support of this argument, Mr. Robinson cites his own analysis of capital § 2255 proceedings in the Fifth Circuit. Dkt. 4 at 15–22. For example,

13

Mr. Robinson asserts that of the 39 federal prisoners whose convictions and death sentences were affirmed on direct appeal and whose § 2255 motions have been processed through appeal, 31 of the 39 (approximately 80%) were granted evidentiary hearings in the district court and/or a certificate of appealability. *Id.* at 16–17. The final eight were provided neither, and seven of those eight were individuals sentenced to death in the Fifth Circuit. *Id.* at 17. He also cites a statement regarding the denial of certiorari from a Fifth Circuit § 2255 decision, where Justice Sotomayor criticized the Fifth Circuit's Rule 60(b)(6) jurisprudence. Dkt. 4 at 27; *Crutsinger v. Davis,* 140 S. Ct. 2 (2019) (Sotomayor, J., respecting the denial of certiorari). But even if courts in the Fifth Circuit were sufficiently out of step with other courts as to call into doubt the procedures afforded to § 2255 petitioners—and this Court makes no such finding—a § 2241 petition would not be the vehicle to resolve the issue. *Vialva v. Watson,* 975 F.3d 664, 666 (7th Cir. 2020) ("[A] § 2241 proceeding is not an authorized way to contest the procedure the Fifth Circuit used."); *see also Von Kahl v. Segal,* 19 F.4th 987, 988 (7th Cir. 2021) ("Section 2241 is not a means to get a second opinion in a different circuit.").

Mr. Robinson attempts to distinguish *Vialva* by noting that he, unlike the petitioner in *Vialva,* alleges a systemic lack of process in the Fifth Circuit, not just an individual lack of process. Dkt. 31 at 13 ("Robinson does not simply argue that the Fifth Circuit erroneously denied him a COA and therefore he is entitled to Section 2241 review; rather, Robinson establishes that the Fifth

14

Circuit routinely misapplies the COA standard generally, thereby depriving post-conviction litigants, including himself, of meaningful appellate review.").

But the reasoning in *Vialva* applies equally to Mr. Robinson's argument. Regardless of whether the error is isolated or systemic, it is not this Court's role to review the Fifth Circuit's processes. *See Vialva*, 975 F.3d at 666 ("[W]e do not sit in judgment on the decisions of our sister circuits. That power belongs to the Supreme Court."). Further, the argument that § 2241 should be available if the § 2255 court misapplies substantive law was considered and rejected by the Court in *Jones*:

> This argument ignores that the saving clause is concerned with the adequacy or effectiveness of the remedial *vehicle* . . ., not any court's asserted errors of law. . . . Even when *circuit law* is inadequate or deficient because a Court of Appeals' precedents have resolved a legal issue incorrectly, that is not a fault in the § 2255 remedial vehicle itself.

599 U.S. at 480–81 (cleaned up, emphases in *Jones*).

Finally, setting aside Mr. Robinson's concerns about systemic deficiencies in the Fifth Circuit's handling of § 2255 capital cases, he has not shown that there was any structural problem with § 2255 when applied to the facts of his case. A structural problem requires "something more than a lack of success with a section 2255 motion." *Webster*, 784 F.3d at 1136. It must "foreclose[ ] even one round of effective collateral review, unrelated to the petitioner's own mistakes." *Poe v. LaRiva*, 834 F.3d 770, 772 (7th Cir. 2016) (internal quotation omitted).

15

Here, Mr. Robinson presented his jurisdictional challenge regarding the indictment on direct appeal and six issues in his § 2255 motion (including an ineffective assistance of counsel claim with many subparts). Further, the district court explained that, while it did not hold an evidentiary hearing, it treated Mr. Robinson's factual assertions as true or based on legal rather than factual bases. *Robinson*, 2008 WL 4906272, at *25. The district court thoroughly explained why it rejected each of Mr. Robinson's claims presented in his motion. *Id.* at *8–24. Mr. Robinson's subsequent challenges to the adequacy of the § 2255 proceedings were raised and rejected by both the district court and the Fifth Circuit. The Supreme Court declined to hear Mr. Robinson's case on three separate occasions. Thus, the record demonstrates that Mr. Robinson had "a reasonable opportunity in a prior § 2255 proceeding to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." *Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019) (cleaned up). This is not an "unusual circumstance[ ] in which it [was] impossible or impracticable" for Mr. Robinson to obtain relief in the sentencing court. *Jones*, 599 U.S. at 474.

## B.     Trial Court's Jurisdiction over Capital Charges

Mr. Robinson contends that because his indictment did not include aggravating factors as required for imposition of a death sentence, the trial court lacked jurisdiction to adjudicate the charges for which he was sentenced to death. Dkt. 4 at 28–35. He argues that this claim satisfies § 2255(e) because (1) § 2255(h) prevents him from raising the claim in a successive

16

§ 2255 motion and (2) his claim challenges the sentencing court's jurisdiction. Dkt. 4 at 38–43; dkt. 33 at 3.

Neither of these arguments provides a basis for jurisdiction over the § 2241 petition.  Section 2255(h) allows a petitioner to bring a successive § 2255 motion in two situations. *Jones* makes clear that where § 2255(h) is the only barrier to raising the claim in a § 2255 motion, the saving clause does not open the door to bringing the claim in a § 2241 petition.  599 U.S. at 478; *see Voneida*, 88 F.4th at 237–38.

Here, Mr. Robinson contends that *Jones* left open the possibility of bringing a § 2241 petition alleging that the sentencing court lacked jurisdiction.  Dkt. 33 at 3.  But *Jones* explained that, so long as judgment was imposed by a court with "general criminal jurisdiction," a traditional habeas corpus court "had no power to look beyond the judgment to re-examine the charges on which it was rendered for substantive errors of law."  599 U.S. at 483 (cleaned up).  Mr. Robinson does not contend that the sentencing court here lacked general criminal jurisdiction.  He has therefore failed to demonstrate that he may circumvent the statutory limits on § 2255 motions by bringing his claim in a § 2241 petition.

### C.   Newly Discovered Evidence and Ineffective Assistance of Counsel

Mr. Robinson contends that some of his ineffective assistance of counsel claims satisfy the saving clause because the supporting evidence was either unavailable or excluded from his § 2255 proceedings.  Dkt. 4 at 78–80, 95–98, 153–60.  Much of this argument overlaps with Mr. Robinson's arguments

17

about systemic lack of process in the Fifth Circuit and its district courts. To the extent Mr. Robinson relies on the path outlined in *Webster*—newly available evidence showing the petitioner is categorically ineligible for the death penalty—he still fails to satisfy the saving clause.

Section 2255(h)(1) sets statutory limits on the types of newly discovered evidence claims that can be brought in a second or successive collateral attack on a conviction or sentence. If Mr. Robinson can satisfy § 2255(h)(1), he may seek leave from the Fifth Circuit to file a successive § 2255 motion. But as nothing other than § 2255(h) bars him from bringing the claim in a § 2255 motion, he may not bring it in a § 2241 petition. *Jones*, 599 U.S. at 480 ("The inability of a prisoner . . . to satisfy [§ 2255(h)] does not mean that he can bring his claim in a habeas petition under the saving clause. It means that he cannot bring it at all. Congress has chosen finality over error correction in his case.").

**D.      The American Declaration of the Rights and Duties of Man**

Before *Jones*, the Seventh Circuit held that a petitioner whose claim was based on violations of international law that could not have been raised on direct appeal or in the petitioner's initial § 2255 motion could bring the claim in a § 2241 petition. *Garza*, 253 F.3d at 923.

As Mr. Robinson points out, dkt. 33 at 4, *Jones* did not expressly abrogate *Garza*. Still, *Jones* leaves no room for *Garza*'s application of the saving clause. In *Garza*, the Seventh Circuit—relying heavily on *Davenport*—held that because the petitioner could not have brought his claim on direct appeal or in his original § 2255 motion, and because § 2255(h) barred the

petitioner from bringing his claim in a successive motion, the saving clause permitted him to bring it in a § 2241 petition. *Garza*, 253 F.3d at 923. That is not enough after *Jones*. A petitioner's inability to satisfy § 2255(h) means that he cannot bring a second or successive[2] challenge to his conviction or sentence, either in a § 2255 motion or in a § 2241 petition.[3] *Jones*, 599 U.S. at 478; *see Voneida*, 88 F.4th at 237–38.

### IV.
### Conclusion

Mr. Robinson has not satisfied § 2255(e)'s saving clause, so this Court lacks jurisdiction to review the merits of his arguments challenging his conviction and sentence. The § 2241 petition is therefore **DISMISSED** for lack of jurisdiction. Final judgment shall now issue.

**SO ORDERED.**

Date: 9/30/2024

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

---

[2] Whether Mr. Robinson could now raise his treaty claim in an "original" § 2255 motion is a question for the sentencing court. *See Garza*, 253 F.3d at 923–24 (questioning whether Garza's petition was truly "second or successive" for purposes of § 2255(h), but deferring to the law of the case and not resolving the question independently).

[3] Because the Court does not have jurisdiction to adjudicate any of Mr. Robinson's claims, it need not resolve the parties' dispute about whether a court has jurisdiction over an entire § 2241 petition that satisfies the saving clause as to only one claim. *See* dkt. 4 at 161; dkt. 27 at 32–40.

19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

JULIUS OMAR ROBINSON,                    )
                                         )
                    Petitioner,          )
                                         )
        v.                               )        No. 2:20-cv-00640-JPH-MG
                                         )
WARDEN USP-Terre Haute,                  )
UNITED STATES OF AMERICA,                )
                                         )
                    Respondents.         )

**FINAL JUDGMENT**

The Court now enters final judgment. The action is dismissed for lack of jurisdiction.

Date:  __9/30/2024__

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Roger A.G. Sharpe, Clerk of Court

By:  ___Lana Harves___
        Deputy Clerk

Distribution:

All Electronically Registered Counsel

1

# *** PUBLIC DOCKET ***

APPEAL,HABEAS,CLOSED

## U.S. District Court
## Southern District of Indiana (Terre Haute)
## CIVIL DOCKET FOR CASE #: 2:20-cv-00640-JPH-MG

ROBINSON V. WARDEN                          Date Filed: 12/03/2020
Assigned to: Judge James Patrick Hanlon     Date Terminated: 09/30/2024
Referred to: Magistrate Judge Mario Garcia  Jury Demand: None
Cause: 28:2241 Petition for Writ of Habeas Corpus    Nature of Suit: 535 Death Penalty - Habeas Corpus
                                            Jurisdiction: Federal Question

**Petitioner**

**JULIUS OMAR ROBINSON**          represented by    **Celeste Bacchi**
                                                    FEDERAL PUBLIC DEFENDER
                                                    321 E. 2nd Street
                                                    Los Angeles, CA 90012
                                                    213-894-2854
                                                    Fax: 213-894-0081
                                                    Email: celeste_bacchi@fd.org
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Jonathan C. Aminoff**
                                                    OFFICE OF THE FEDERAL PUBLIC DEFENDER
                                                    321 E. 2nd Street
                                                    Los Angeles, CA 90012
                                                    213-894-5374
                                                    Fax: 213-894-0310
                                                    Email: jonathan_aminoff@fd.org
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Michael Petersen**
                                                    Office of the Federal Public Defender
                                                    Central District of California
                                                    321 E. 2nd Street
                                                    Los Angeles, CA 90012
                                                    213-894-1844
                                                    Email: michael_petersen@fd.org
                                                    *ATTORNEY TO BE NOTICED*

V.

**Respondent**

**WARDEN**
*USP-Terre Haute*

represented by  **Jonathan Glen Bradshaw**
DEPARTMENT OF JUSTICE
1100 Commerce Street
Suite 300
Dallas, TX 75242
214-659-8835
Email: jonathan.bradshaw@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Respondent**

**UNITED STATES OF AMERICA**      represented by  **Jonathan Glen Bradshaw**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/03/2020 | 1 | ***Amended Petition at 4 *** PETITION for Writ of Habeas Corpus , filed by JULIUS OMAR ROBINSON. (No fee paid with this filing) (Attachments: # 1 Exhibit 1-14, # 2 Exhibit 15-30, # 3 Exhibit 31-40, # 4 Exhibit 41-50, # 5 Exhibit 51-61, # 6 Exhibit 62, # 7 Exhibit 63-76, # 8 Civil Cover Sheet)(Aminoff, Jonathan) Modified on 12/4/2020 (RSF). (Entered: 12/03/2020) |
| 12/04/2020 | 2 | MOTION for Leave to Proceed in forma pauperis , filed by Petitioner JULIUS OMAR ROBINSON. (Aminoff, Jonathan) (Entered: 12/04/2020) |
| 12/04/2020 | 3 | PRACTICES AND PROCEDURES before Judge James Patrick Hanlon. (RSF) (Entered: 12/04/2020) |
| 12/04/2020 | 4 | *Amended Petition*, filed by Petitioner JULIUS OMAR ROBINSON. (Aminoff, Jonathan) Modified on 12/4/2020 - created link to 1 (RSF). (Entered: 12/04/2020) |
| 12/04/2020 | 5 | EXHIBIT re 4 *Amended Petition* by JULIUS OMAR ROBINSON. (Attachments: # 1 Exhibit 1-14, # 2 Exhibit 15-30, # 3 Exhibit 31-40, # 4 Exhibit 41-50, # 5 Exhibit 51-61, # 6 Exhibit 62, # 7 Exhibit 63-76)(Aminoff, Jonathan) Modified on 12/4/2020 (RSF). (Entered: 12/04/2020) |
| 12/04/2020 | 6 | Submission of Proposed Order , re 2 MOTION for Leave to Proceed in forma pauperis , filed by Petitioner JULIUS OMAR ROBINSON. (Aminoff, Jonathan) (Entered: 12/04/2020) |
| 12/04/2020 | 7 | NOTICE of Appearance by Jonathan C. Aminoff on behalf of Petitioner JULIUS OMAR ROBINSON. (Aminoff, Jonathan) (Entered: 12/04/2020) |
| 12/04/2020 | 8 | NOTICE of Appearance by Celeste Bacchi on behalf of Petitioner JULIUS OMAR ROBINSON. (Bacchi, Celeste) (Entered: 12/04/2020) |
| 12/07/2020 | 9 | NOTICE of Appearance by Jonathan Glen Bradshaw on behalf of Respondents UNITED STATES OF AMERICA, WARDEN. (Bradshaw, Jonathan) (Entered: 12/07/2020) |
| 01/04/2021 | 10 | ORDER GRANTING PETITIONER'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND DIRECTING RESPONDENT TO SHOW CAUSE - Mr. Robinson's motion for leave to proceed in forma pauperis, dkt. 2 , is GRANTED. The respondent shall have through March 1, 2021, to answer the amended petition, dkt. 4 , or otherwise show cause why relief should not be granted. The petitioner shall have through April 1, 2021, to file a reply. Signed by Judge James Patrick Hanlon on 1/4/2021.(KAA) (Entered: 01/04/2021) |

| 01/04/2021 | 11 | ***PLEASE DISREGARD_ DUPLICATE ENTRY*** ORDER GRANTING PETITIONER'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND DIRECTING RESPONDENT TO SHOW CAUSE - Mr. Robinson's motion for leave to proceed in forma pauperis, dkt. 2 , is GRANTED. The respondent shall have through March 1, 2021, to answer the amended petition, dkt. 4 , or otherwise show cause why relief should not be granted. The petitioner shall have through April 1, 2021, to file a reply. Signed by Judge James Patrick Hanlon on 1/4/2021.(RSF) Modified on 1/4/2021 (RSF). (Entered: 01/04/2021) |
|---|---|---|
| 02/22/2021 | 12 | MOTION for Extension of Time to March 31, 2021 in which to 1 Petition for Writ of Habeas Corpus , filed by Respondent WARDEN. (Bradshaw, Jonathan) (Entered: 02/22/2021) |
| 02/23/2021 | 13 | Submission of Proposed Order , re 12 MOTION for Extension of Time to March 31, 2021 in which to 1 Petition for Writ of Habeas Corpus , filed by Respondent WARDEN. (Bradshaw, Jonathan) (Entered: 02/23/2021) |
| 02/25/2021 | 14 | ORDER granting 12 Motion for Extension of Time to File. The government shall file its response no later than March 31, 2021. Signed by Judge James Patrick Hanlon on 2/25/2021. (KAA) (Entered: 02/25/2021) |
| 03/31/2021 | 15 | MOTION to Dismiss *and Response to Robinson's 28 U.S.C. § 2241 Petition*, filed by Respondents UNITED STATES OF AMERICA, WARDEN. (Bradshaw, Jonathan) (Entered: 03/31/2021) |
| 03/31/2021 | 16 | Appendix of Exhibits in Support of Motion re 15 MOTION to Dismiss *and Response to Robinson's 28 U.S.C. § 2241 Petition* , filed by Respondents UNITED STATES OF AMERICA, WARDEN. (Bradshaw, Jonathan) (Entered: 03/31/2021) |
| 04/05/2021 | 17 | Reassignment of Case to Magistrate Judge Mario Garcia. Magistrate Judge Doris L. Pryor is no longer assigned to this case. Please include the new case number (2:20-cv-640-JPH-MG), which includes the initials of the newly assigned judge, on all future filings in this matter. (JD) (Entered: 04/05/2021) |
| 04/23/2021 | 18 | MOTION for Extension of Time to July 1, 2021 *in which to file Petitioner's Reply in support of Petition for Writ of Habeas Corpus*, filed by Petitioner JULIUS OMAR ROBINSON. (Aminoff, Jonathan) (Entered: 04/23/2021) |
| 04/23/2021 | 19 | Submission of Proposed Order , re 18 MOTION for Extension of Time to July 1, 2021 *in which to file Petitioner's Reply in support of Petition for Writ of Habeas Corpus*, filed by Petitioner JULIUS OMAR ROBINSON. (Aminoff, Jonathan) (Entered: 04/23/2021) |
| 05/03/2021 | 20 | ORDER granting 18 Motion for Extension of Time to File a Reply in Support of Petition to 7/1/21. Signed by Judge James Patrick Hanlon on 5/3/2021. (JRB) (Entered: 05/03/2021) |
| 07/01/2021 | 21 | Brief *Traverse and Opposition* re 15 MOTION to Dismiss *and Response to Robinson's 28 U.S.C. § 2241 Petition* by JULIUS OMAR ROBINSON. (Aminoff, Jonathan) (Entered: 07/01/2021) |
| 01/10/2022 | 22 | ORDER denying 15 Motion to Dismiss and Response to Robinson's 28 U.S.C. § 2241 Petition. The Court will allow the respondent, however, to file an amended response to Mr. Robinson's amended petition. The respondent shall have 60 days from the entry of this Order to file an amended response. Mr. Robinson shall have 30 days from the docketing of the amended response to file a reply. Signed by Judge James Patrick Hanlon on 1/10/2022. (TPS) (Entered: 01/10/2022) |
| 03/01/2022 | 23 | Unopposed MOTION for Extension of Time to May 10, 2022 in which to 4 Submission, 22 Order on Motion to Dismiss , filed by Respondent UNITED STATES OF AMERICA. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Text of Proposed Order Proposed Order)(Bradshaw, Jonathan) (Entered: 03/01/2022) |
| 03/07/2022 | 24 | ORDER granting 23 Motion for Extension of Time to File Amended Response. The government shall have through May 10, 2022, to file an amended response to the petition for writ of habeas corpus. Signed by Judge James Patrick Hanlon on 3/7/2022. (TPS) (Entered: 03/08/2022) |
| 04/26/2022 | 25 | Unopposed MOTION for Extension of Time to July 11, 2022 *to file its Amended Response to Petitioner's Amended 2241 Petition*, filed by Respondent UNITED STATES OF AMERICA. (Attachments: # 1 Text of Proposed Order)(Bradshaw, Jonathan) (Entered: 04/26/2022) |
| 05/03/2022 | 26 | ORDER granting 25 Motion for Extension of Time to File amended response to Robinson's amended petition. Accordingly, the government shall file its response no later than July 11, 2022. Signed by Judge James Patrick Hanlon on 5/3/2022. (KAA) (Entered: 05/03/2022) |
| 07/08/2022 | 27 | RESPONSE re 26 Order on Motion for Extension of Time to File, 22 Order on Motion to Dismiss , filed by Respondent UNITED STATES OF AMERICA. (Bradshaw, Jonathan) (Entered: 07/08/2022) |
| 07/08/2022 | 28 | APPENDIX re 27 Response by UNITED STATES OF AMERICA. (Bradshaw, Jonathan) (Entered: 07/08/2022) |
| 08/05/2022 | 29 | Unopposed MOTION for Extension of Time to October 10, 2022 *to file Reply to Respondent's Amended Response*, filed by Petitioner JULIUS OMAR ROBINSON. (Attachments: # 1 Text of Proposed Order)(Aminoff, Jonathan) (Entered: 08/05/2022) |
| 08/16/2022 | 30 | ORDER GRANTING MOTION FOR EXTENSION OF TIME - Petitioner's unopposed motion for extension of time, dkt. 29 , is GRANTED. Petitioner shall have through October 10, 2022, to file a reply to the respondent's amended response to the petition for writ of habeas corpus. Signed by Judge James Patrick Hanlon on 8/16/2022. (KAA) (Entered: 08/16/2022) |
| 10/12/2022 | 31 | Brief *(Reply)* re 4 Submission by JULIUS OMAR ROBINSON. (Aminoff, Jonathan) (Entered: 10/12/2022) |
| 03/22/2023 | 32 | NOTICE of Appearance by Michael Petersen on behalf of Petitioner JULIUS OMAR ROBINSON. (Petersen, Michael) (Entered: 03/22/2023) |
| 07/13/2023 | 33 | NOTICE *OF SUPPLEMENTAL AUTHORITY*, filed by Petitioner JULIUS OMAR ROBINSON (Aminoff, Jonathan) (Entered: 07/13/2023) |
| 09/30/2024 | 34 | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - Mr. Robinson has not satisfied § 2255(e)'s saving clause, so this Court lacks jurisdiction to review the merits of his arguments challenging his conviction and sentence. The § 2241 petition is therefore DISMISSED for lack of jurisdiction. Final judgment shall now issue. (See Order.) Signed by Judge James Patrick Hanlon on 09/30/2024. (AJG) (Entered: 09/30/2024) |
| 09/30/2024 | 35 | FINAL JUDGMENT - The Court now enters final judgment. The action is dismissed for lack of jurisdiction. Signed by Judge James Patrick Hanlon on 09/30/2024. (AJG) (Entered: 09/30/2024) |
| 11/08/2024 | 36 | NOTICE OF APPEAL as to 35 Closed Judgment, 34 Order, filed by Petitioner JULIUS OMAR ROBINSON. (No fee paid with this filing) (Aminoff, Jonathan) (Entered: 11/08/2024) |
| 11/08/2024 | 37 | DOCKETING STATEMENT by JULIUS OMAR ROBINSON re 36 Notice of Appeal (Aminoff, Jonathan) (Entered: 11/08/2024) |

| 11/08/2024 | 38 | MOTION for Leave to Proceed in forma pauperis , filed by Petitioner JULIUS OMAR ROBINSON. (Attachments: # 1 Text of Proposed Order)(Aminoff, Jonathan) (Entered: 11/08/2024) |

**Case #: 2:20-cv-00640-JPH-MG**